## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HANOVER INSURANCE COMPANY,**            **CIVIL ACTION**
    **Plaintiff**

                                      **No. 11-2375 c/w**
**VERSUS**                                               **14-1930, 14-1933**

**SUPERIOR LABOR SERVICES,**             **SECTION "E"**
**INC., ET AL.,**
    **Defendants**

***Applies to:*** **11-2375**

### ORDER AND REASONS

Before the Court is Hanover's motion for partial summary judgment seeking a declaration that Hanover has no duty to defend Superior and no duty to defend Allied as an additional insured.[1] For the reasons set forth below, Hanover's motion is **DENIED**.

### BACKGROUND

A. State-Court Lawsuits

This is a consolidated action. The case originates from two personal-injury actions ("State-Court Lawsuits") filed in state court against Allied Shipyard, Inc. ("Allied"): *Adams, et al. v. Allied Shipyard, Inc., et al.* and *St. Pierre, et al. v. Allied Shipyard, Inc.*[2] The plaintiffs in the State-Court Lawsuits allege Allied negligently performed sandblasting activities, causing dangerous silica dust and other hazardous substances to permeate the plaintiffs' neighborhood.[3] The plaintiffs seek damages for physical pain and suffering, medical expenses, property damage, and other damages as a result of their

---

[1] R. Doc. 227. Unless otherwise indicated, "R. Doc." refers to record documents in No. 11-2375.
[2] The original and amended petitions for damages from each State-Court Lawsuit are attached to Hanover's motion for summary judgment. *See* R. Docs. 227-5, 227-6.
[3] *See* R. Docs. 227-5, 227-6.

exposure to the hazardous substances.[4] The two cases were consolidated in state court on September 9, 2013.[5]

In both State-Court Lawsuits, Allied filed third-party demands against its contractors that performed the sandblasting jobs, including Superior Labor Services, Inc. ("Superior")[6] and Masse Contracting, Inc. ("Masse").[7] Specifically, Allied alleges that Superior and Masse contracted with Allied to perform certain job responsibilities and to indemnify Allied under master work contracts.[8] Allied seeks indemnity from Superior and from Masse with respect to the claims in the State-Court Lawsuits.[9] Allied has also alleged the right to additional assured status and coverage on all insurance policies issued to Superior and to Masse for any liability in the State-Court Lawsuits.[10]

The plaintiffs in *Adams* amended their petition to name Superior, Masse, other subcontractors, and Gray Insurance Company as direct defendants.[11]

The contractors against which Allied brought third-party demands "in turn sought coverage, defense and/or indemnity from their various insurers for the periods of time when these jobs were allegedly performed, which prompted the insurers to file lawsuits in federal courts."[12]

B. <u>Declaratory Actions in Federal Court</u>

Three federal actions related to the State-Court lawsuits are pending in this Court. The Court consolidated the three cases on November 21, 2014.[13]

---

[4] *See* R. Docs. 227-5, 227-6.
[5] *See* R. Doc. 259-5.
[6] R. Doc. 69 at ¶¶ 13–16; R. Docs. 227-5, 227-6.
[7] R. Docs. 228-6, 228-7.
[8] R. Doc. 227-8 at 1 (Superior); R. Doc. 228-6 at 2 (Masse).
[9] R. Doc. 227-8 at 2 (Superior); R. Doc. 228-6 at 3–4 (Masse).
[10] No. 14-1930, R. Doc. 1 at ¶¶ 12–13, 19 (Superior); No. 14-1933, R. Doc. 1 at ¶¶ 12–13, 19 (Masse).
[11] *See* R. Doc. 227-5.
[12] R. Doc. 174-1 at 2.
[13] *See* R. Doc. 108.

1.   *No. 11-2375*

On September 21, 2011, Hanover Insurance Company ("Hanover") filed a complaint in this Court.[14] Hanover filed an amended complaint on September 27, 2012.[15] Hanover alleges it has been participating in the defense of Superior against Allied's third-party demands in the State-Court Lawsuits.[16] Hanover maintains the other insurers it names in its federal suit "are not participating in Superior's defense" in the State-Court Lawsuits.[17] Hanover seeks judgment against Superior declaring that it has no duty to defend or indemnify Superior in the State-Court Lawsuits.[18] If Hanover has a duty to defend or indemnify Superior, Hanover seeks declaratory judgment that State National Insurance Company ("State National"), Arch Insurance Company ("Arch"), and "other unidentified insurance companies collectively named as ABC Insurance Company" are liable "for their share of defense and indemnity to be paid on behalf of Superior" in the State-Court Lawsuits.[19] Hanover also seeks reimbursement, contribution, and/or damages from State National, Arch, and other unidentified insurance companies for defense costs already incurred by Hanover on behalf of Superior in the State-Court Lawsuits that, Hanover argues, should have been paid by those insurance companies.[20]

On January 14, 2015, Hanover filed a second supplemental and amending complaint naming Allied as a defendant.[21] Hanover alleges that "Allied has tendered the [State-Court Lawsuits] to Hanover for defense and indemnity in its capacity as an alleged

---

[14] *Hanover Ins. Co. v. Superior Labor Servs., Inc., et al.*, No. 11-2375.
[15] R. Doc. 69.
[16] *Id.* at ¶¶ 23–24.
[17] *Id.* at ¶ 26.
[18] *Id.* at 22–23.
[19] *Id.* at ¶ 2.
[20] *Id.* at ¶ 3.
[21] R. Doc. 125.

additional insured" under Superior's policies, and Hanover has offered to participate in Allied's defense in the State-Court Lawsuits subject to a full reservation of rights.[22] Hanover alleges that Allied is not an additional assured under Hanover's policies, and Hanover seeks judgment against Allied declaring that it has no duty to defend or indemnify Allied in the State-Court Lawsuits.[23] In the alternative, if the Court finds Hanover has a duty to defend or indemnify Allied, Hanover seeks judgment declaring that Arch, State National, other unidentified insurance companies are obligated to pay their portions of defense costs and/or indemnity incurred by Hanover on behalf of Superior and Allied in the State-Court Lawsuits.[24]

### 2. No. 14-1930

On August 22, 2014, Arch Insurance Company brought an action for declaratory judgment against Superior and Allied. Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Superior," with respect to Superior's request for defense and indemnity in the State-Court Lawsuits.[25] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional assured status under the Superior policies and defense and indemnity of Allied in the State-Court Lawsuits.[26] Arch seeks a declaration against Superior and Allied that Arch has no defense or indemnity obligation to Superior in the

---

[22] *Id.* at ¶ 79.
[23] *Id.* at 9.
[24] *Id.*
[25] No. 14-1930, R. Doc. 1 at ¶ 3.
[26] *Id.* at ¶ 4. Arch alleges that Allied is not entitled to additional assured coverage "to the extent there is no evidence that any loss occurred" while Superior was performing work for Allied and during the Arch policy periods. No. 14-1930, R. Doc. 1 at ¶¶ 20–21.

State-Court Lawsuits.[27] Arch also seeks recovery of the portion of defense costs already incurred by it on behalf of Superior.[28]

### 3. No. 14-1933

On August 22, 2014, Arch also filed an action for declaratory judgment against Masse and Allied. Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Masse," with respect to Masse's request for defense and indemnity in the State-Court Lawsuits.[29] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional assured status under the Masse policies and defense and indemnity of Allied in the State-Court Lawsuits.[30] Arch seeks a declaration against Masse and Allied that Arch has no defense or indemnity obligation to Masse in the State-Court Lawsuits.[31]

On January 14, 2015, Hanover filed a complaint in intervention in Case No. 14-1933 against Defendants Masse and Allied.[32] Hanover seeks judgment declaring that Hanover has no obligation to defend or indemnify Masse or Allied in the State-Court Lawsuits.[33]

State National Insurance Company ("State National") also filed a petition for intervention for declaratory judgment on January 14, 2015.[34] State National issued two marine general liability policies to Masse that provided coverage from November 15,

---

[27] *Id.* at ¶¶ 21, 47.
[28] *Id.* at ¶ 47.
[29] No. 14-1933, R. Doc. 1 at ¶ 3.
[30] *Id.* at ¶ 4. Arch alleges that Allied is not entitled to additional assured coverage "to the extent there is no evidence that any loss occurred" while Masse was performing work for Allied and during the Arch policy periods. No. 14-1933, R. Doc. 1 at ¶¶ 20–21.
[31] *Id.* at ¶ 46.
[32] R. Doc. 128.
[33] *Id.*
[34] R. Doc. 132.

2006, to November 15, 2007, and from November 15, 2007, to November 15, 2008.[35]
Allied seeks additional insured status under the policies issued by State National to
Masse.[36] State National seeks a judgment declaring there is no coverage afforded to Masse
under the State National policies and that State National has no duty to defend or
indemnify Masse in the State-Court Lawsuits.[37] State National also seeks a declaration
that "there is no coverage afforded to Allied under the [State National] policies as a
purported additional insured" and that State National does not owe a duty to defend or
indemnify Allied in the State-Court Lawsuits.[38]

C.   Hanover's Motion for Partial Summary Judgment

Hanover filed a motion for partial summary judgment against Superior and Allied
on July 29, 2015. Hanover argues it has no duty to defend Superior or Allied, as an
additional insured under the policies issued to Superior, in the State-Court Lawsuits for
three reasons: (1) that the plaintiffs in the State-Court Lawsuits do not allege "bodily
injury" or "property damage" that occurred during the terms of the policies Hanover
issued to Superior; (2) alternatively, that the plaintiffs in the State-Court Lawsuits seek
recovery for injuries arising out of exposure to silica dust and the Hanover policies contain
an exclusion for silica, silicon, and silicate; and (3) alternatively, the policies contain a
Pollution Buyback Endorsement that is not triggered by the State-Court Lawsuits and
thus does not extend coverage for the state-court plaintiffs' injuries.[39] In its motion, and
solely for purposes of its motion, Hanover assumes that Allied qualifies as an additional

---

[35] R. Doc. 132 at ¶ 14.
[36] *Id.* at ¶ 3.
[37] *Id.* at ¶ 19.
[38] *Id.*
[39] R. Doc. 227 at 2.

assured within the meaning of the Superior policies.[40] Whether Allied will indeed qualify as an additional assured under the policies is not addressed in this ruling.

Superior filed its opposition to Hanover's motion on December 8, 2015,[41] and Allied filed its opposition on December 14, 2015.[42] Hanover filed a reply memorandum in support of its motion on December 15, 2015.[43] After deposing Tony Boudreaux, Superior's former vice president, Superior filed a supplemental memorandum in opposition to Hanover's motion on February 29, 2016.[44]

## CONSIDERATION OF DECLARATORY JUDGMENT ACTIONS

As a preliminary matter, when considering a declaratory judgment action, a district court must engage in a three-step inquiry.[45] First, the Court must determine whether the action is justiciable.[46] Second, the Court must determine whether it has authority to grant declaratory relief.[47] Third, the Court must determine "how to exercise its broad discretion to decide or dismiss a declaratory judgment action."[48] If Hanover's claims survive this analysis, the Court will then consider whether Hanover has a duty to defend the insured under the policies at issue.

---

[40] R. Doc. 227-1 at 10 n.3.
[41] R. Doc. 259.
[42] R. Doc. 277.
[43] R. Doc. 289.
[44] R. Doc. 316.
[45] *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).
[46] *Id.*
[47] *Id.*
[48] *Id.*

A. <u>Justiciability</u>

The justiciability doctrines of standing, mootness, political question, and ripeness derive from Article III's "case or controversy" requirement.[49] In a declaratory judgment action, justiciability often turns on ripeness.[50] This case is no exception.

The ripeness doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[51] The purpose of this doctrine is to forestall "entanglement in abstract disagreements" through "avoidance of premature adjudication."[52] "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[53]

The Fifth Circuit has recognized that "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge."[54] This stems primarily from the fact that declaratory relief often involves an *ex ante* determination of rights, *i.e.*, a determination of rights before an injury has occurred, that "exists in some tension with traditional notions of ripeness."[55] Fortunately, this challenge is not presented today, because the Court's analysis is guided by a distinct subset of ripeness jurisprudence on disputes regarding the duty to defend.

---

[49] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012).
[50] *See id*; *Orix*, 212 F.3d at 895; *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989).
[51] *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).
[52] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).
[53] *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149).
[54] *Orix*, 212 F.3d at 896 (internal quotation marks omitted).
[55] *Id.*

Because the duty to defend does not depend on the outcome of the underlying law suit,[56] a duty-to-defend claim is ripe when the underlying suit is filed.[57] Accordingly, Hanover's duty-to-defend claim is ripe, and the Court finds the action is justiciable.

B. <u>Authority to Grant Declaratory Relief</u>

The Fifth Circuit has explained that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act."[58] Therefore, the district court cannot consider the merits of a declaratory judgment action when (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff; (2) the state case involves the same issues as those involved in the federal case; and (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act.[59]

In Hanover's amended complaint, Hanover alleges that, pursuant to its policies, it is participating in Superior's defense against the third-party demands in the State-Court Lawsuits "subject to a full reservation of rights."[60] Hanover does not assert that it is a party in the State-Court Lawsuits, and the Court is not aware of any state-court proceedings involving the same issues now being examined. Therefore, the Court finds

---

[56] *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 52 (La. 2005).

[57] *See Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 110 (5th Cir. 2008) ("An actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's *duty to defend*.") (emphasis in original); *Morad v. Aviz*, No. 12-2190, 2013 WL 1403298, at *2 (E.D. La. Apr. 5, 2013) ("Courts have routinely held that courts may determine an insurer's duty to defend even before the underlying suit is decided."); *Greenwich Ins. Co. v. Capsco Indus., Inc.*, No. 1:14CV297-LG-JCG, 2014 WL 5025856, at *2 (S.D. Miss. Oct. 8, 2014).

[58] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). The Anti-Injunction Act states, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

[59] *Travelers*, 996 F.2d at 776; *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 388 (5th Cir. 2003).

[60] R. Doc. 69 at 2.

that the Anti-Injunction Act does not apply, as there is no pending state-court action between Hanover and any of the defendants in this case.[61]

Accordingly, the Court's authority to grant declaratory relief on the duty-to-defend claim turns on whether subject-matter jurisdiction is proper.[62] Hanover asserts the Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).[63] 28 U.S.C. § 1332(a) provides that jurisdiction is proper where (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000.[64]

The parties are completely diverse when "the citizenship of each plaintiff is diverse from the citizenship of each defendant."[65] All of the parties in this action are corporations.[66] For purposes of diversity jurisdiction, a corporation is a citizen of (1) its state of incorporation, and (2) the state in which its principal place of business is located.[67] According to the amended complaint, Hanover is a citizen of New Hampshire, the state of its incorporation, and Massachusetts, the state in which its principal place of business is located.[68] Defendant Superior is a citizen of Louisiana, the state of its incorporation and the state in which its principal place of business is located.[69] Defendant Arch is a citizen of Missouri, the state of its incorporation, and New Jersey, the state in

---

[61] *See Sherwin-Williams*, 343 F.3d at 387–88 ("The district court also properly concluded that it had the authority to decide the declaratory judgment suit. Diversity jurisdiction was present and the Anti-Injunction Act did not apply because there was no pending state court action between Sherwin-Williams and any of the declaratory judgment defendants."); *Hudson Specialty Ins. Co. v. King Investments of Louisiana, Inc.*, No. 13-5990, 2014 WL 108402, at *3 (E.D. La. Jan. 10, 2014); *Nat'l Cas. Co. v. Tom's Welding, Inc.*, No. 11-3101, 2012 WL 2064451, at *5 (E.D. La. June 7, 2012).
[62] *See Sherwin-Williams*, 343 F.3d at 387–88.
[63] R. Doc. 69 at ¶ 9.
[64] *See* 28 U.S.C. § 1332(a).
[65] *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The parties have not disputed complete diversity. Nonetheless, the Court has a duty to examine all aspects of subject matter jurisdiction *sua sponte. See Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).
[66] *See* R. Doc. 69.
[67] 28 U.S.C. § 1332(c)(1).
[68] R. Doc. 69 at ¶ 4.
[69] *Id.* at ¶ 5.

which its principal place of business is located.[70] Defendant State National is a citizen of Texas, the state of its incorporation and the state in which its principal place of business is located.[71] Because none of the defendants is a citizen of New Hampshire or Massachusetts, the states in which Hanover is a citizen, there is complete diversity.

In addition to complete diversity, Section 1332(a) requires that the amount in controversy exceed $75,000. As the party invoking federal jurisdiction, Hanover bears the burden of establishing the amount in controversy by a preponderance of the evidence.[72]  In order to determine whether that burden has been met, the Court first inquires whether it is "facially apparent" from the complaint that the amount in controversy exceeds $75,000.[73]  If not, the Court may examine summary judgment-type evidence.[74]

When an insurer seeks a declaratory judgment on coverage issues, the amount in controversy is equal to the "insurer's potential liability under the policy, plus potential attorneys' fees, penalties, statutory damages, and punitive damages."[75]  As set forth in the complaint in this case and the petitions from the State-Court Lawsuits, the state-court plaintiffs allege they have suffered property damage and severe bodily injury and have contracted diseases, including silicosis, Chronic Obstructive Pulmonary Disease, Wegener's granulomatosis. Superior's potential liability for these injuries—and thus Hanover's liability to indemnify Superior— easily could exceed $75,000.[76] When coupled

---

[70] *Id.* at ¶ 6.

[71] *Id.* at ¶ 7.

[72] *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 639 (5th Cir. 2003).

[73] *See Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

[74] *Id.*

[75] *Id.* (internal quotation marks omitted).  Unless the insurer seeks to void the entire insurance contract, the amount in controversy is not measured by the face amount of the policy.  *Id.* at 911.

[76] The question arises whether Hanover's indemnity claim can count toward the amount in controversy. The Fifth Circuit has held that the amount in controversy is equal to the insurer's "*potential* liability under

with Hanover's potential defense obligations, the Court concludes the amount in controversy exceeded the jurisdictional amount at the time this action was filed.[77]

Therefore, because the Court has diversity jurisdiction over this matter and the Anti-Injunction action does not apply, the Court finds it has the authority to grant declaratory relief in this case.[78]

C. <u>Discretion to Exercise Jurisdiction</u>

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," even when subject-matter jurisdiction is otherwise proper.[79] The Fifth Circuit has developed seven factors—the so-called "*Trejo* factors"—that a district court should consider when deciding whether to exercise jurisdiction over a declaratory judgment action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;

---

[the] policy." *See St. Paul Reinsurance Co. Ltd.*, 134 F.3d 1250, 1253 (5th Cir. 1998) (emphasis added); *Hartford Ins. Grp.*, 293 F.3d at 912.

[77] Jurisdictional facts are judged as of the time the complaint is filed. *St. Paul*, 134 F.3d at 1253.

[78] *See U.S. Fire Ins. Co. v. A-Port, LLC*, No. 14-441, 2015 WL 1416490, at *3 (E.D. La. Mar. 26, 2015); *Hudson*, 2014 WL 108402, at *3 (E.D. La. Jan. 10, 2014); *Nat'l Cas. Co.*, 2012 WL 2064451, at *5.

[79] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[80]

As set forth below, the *Trejo* factors weigh in favor of exercising jurisdiction. Accordingly, the Court will exercise jurisdiction over this matter.

### 1.   *Nature of Pending State Court Action*

The first *Trejo* factor requires comparison of the declaratory judgment action with the underlying state-court action.[81] If the declaratory judgment action presents the same issues as the state-court action, involves the same parties, and is not governed by federal law, the federal court should generally decline to exercise jurisdiction.[82] If, on the other hand, the state-court action is not truly parallel because it does not involve all the same parties or issues as the declaratory judgment action, a federal court should consider the degree of similarity between the two actions.[83]

Hanover is not a party to the State-Court Lawsuits. Moreover, whereas the State-Court Lawsuits involve issues of fact, fault, and causation, the determination of whether there is a duty to defend involves a straightforward examination of the state-court pleadings and the insurance policies Hanover issued to the state-court defendants. Resolution of the State-Court Lawsuits has no bearing on Hanover's duty to defend. The

---

[80] *Sherwin-Williams*, 343 F.3d at 388.

[81] *See id.* at 393–94.

[82] *See id.*; *Wilton*, 515 U.S. at 283 ("[W]here another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed.") (second alteration in original) (internal citation omitted) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).

[83] *See Sherwin-Williams*, 343 F.3d at 394 n.5.

state and federal proceedings are clearly not parallel. "[T]he lack of a pending parallel state proceeding . . . weighs strongly against dismissal."[84] The first *Trejo* factor weighs in favor of exercising jurisdiction.

### 2.    Order of Filing

The *St. Pierre* lawsuit was filed on December 8, 2010,[85] and the *Adams* lawsuit was filed on December 28, 2010.[86] Hanover filed the lawsuit presently before this Court on September 21, 2011.[87] Hanover likely was aware that its insurance coverage of Superior and Masse would become an issue in the pending State-Court Lawsuits. Therefore, Hanover may have filed this declaratory judgment action in anticipation of becoming a party to the pending State-Court Lawsuits.[88] The second *Trejo* factor weighs against exercising jurisdiction.[89]

### 3.    Forum Shopping

That Hanover could have intervened and requested declaratory judgment in the State-Court Lawsuits does not necessarily demonstrate forum shopping.[90] As a preliminary matter, there is no guarantee Hanover would have been allowed to intervene in the State-Court Lawsuits.[91] Moreover, courts are less likely to find forum shopping where, as here, (1) a foreign insurer files a diversity action in federal court, and (2) the

---

[84] *Id.* at 394. *See also Fed. Ins. Co. v. Sw. Materials, Inc.*, No. 02-1787, 2003 WL 21634945, at *3 (E.D. La. July 3, 2003) (finding abstention unwarranted in similar circumstances).

[85] R. Doc. 227-6 at 3.

[86] R. Doc. 227-5 at 5.

[87] R. Doc. 1.

[88]  *See Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *4 (E.D. La. Oct. 23, 2013) (noting the plaintiff "was aware the issue of its insurance coverage of [the defendant] would be at issue in the pending state court proceeding," concluding that "it can be assumed that [the plaintiff] filed for Declaratory Judgment on June 10, 2013 in anticipation of becoming a party to that pending state court action," and finding the second *Trejo* factor weighs against exercising jurisdiction).

[89] *See U.S. Fire*, 2015 WL 1416490, at *4.

[90] *See id.*

[91] *See* LA. CODE CIV. PROC. art. 1091 ("A third person having an interest therein may intervene in a pending action *to enforce a right related to or connected with the object of the pending action* against one or more of the parties thereto." (emphasis added)).

14

selection of the federal forum does not change the applicable law.[92] "The record does not support a finding that [Hanover] engaged in impermissible forum shopping by filing this declaratory judgment suit."[93] The third *Trejo* factor weighs in favor of exercising jurisdiction.

### 4.  Inequities

The Court cannot conceive of any inequities that flow from allowing Hanover to proceed in this action while the State-Court Lawsuits remain pending. As explained above, the State-Court Lawsuits and this action are not parallel in any material sense. No party will be prejudiced if this action is resolved before the State-Court Lawsuits. The fourth *Trejo* factor weighs in favor of exercising jurisdiction.

### 5.  Convenience of Federal Forum

The State-Court Lawsuits are pending in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[94] The state courthouse for the 17th Judicial District Court for Lafourche Parish is approximately 60 miles west of the federal courthouse in New Orleans. No party argues that this forum is inconvenient or that either forum is more convenient than the other for the parties or for the witnesses. This factor is neutral.[95]

---

[92] *See Sherwin-Williams*, 343 F.3d at 399.

[93] *Id.* at 400. *See also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015) (per curiam).

[94] *See* R. Docs. 228-5, 228-6.

[95] *See GlobalSantaFe Drilling Co. v. Quinn*, No. 12-1987, 2012 WL 4471578, at *4 (E.D. La. Sept. 26, 2012) ("It does not appear that the Eastern District of Louisiana is any more convenient or less convenient of a forum; the parties are located outside the state but the witnesses are located within. Therefore, this factor is neutral." (citations omitted)); *Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *5 (E.D. La. Oct. 23, 2013); *Gemini Ins. Co. v. Turner Indus. Grp., LLC*, No. 13-05922, 2014 WL 3530475, at *5 (E.D. La. July 16, 2014).

6.      *Judicial Economy*

This action has been pending for more than four years. The duty-to-defend issue has been fully briefed before this Court. It would be a waste of judicial resources to dismiss this action and require Hanover to refile in another forum. Exercising jurisdiction is clearly in the interest of judicial economy.[96] This factor weighs in favor of exercising jurisdiction.

7.      *Interpretation of Decree from Parallel State Proceeding*

Again, the State-Court Lawsuits and this action are clearly not parallel. This Court need not interpret any decree issued in the State-Court Lawsuits to determine whether Hanover has a duty to defend. The seventh *Trejo* factor weighs in favor of exercising jurisdiction.[97]

Five of the *Trejo* factors weigh in favor of exercising jurisdiction, while one weighs against and another is neutral. Accordingly, the Court will exercise its jurisdiction over this matter.

## LAW AND ANALYSIS

A.  The "Eight-Corners Rule"

Under Louisiana law, an insurance policy is a contract and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[98] A liability insurer's duty to defend and the scope of its coverage are separate and

---

[96] *See Ironshore*, 624 F. App'x at 168 (finding that the judicial economy factor weighed against dismissal when the parties had "already fully briefed the insurance coverage issues to the district court and entered into extensive factual stipulations"); *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373 (5th Cir. 1998) (finding that judicial economy weighed against dismissal in part because "there [were] no factual disputes between the parties and . . . they have fully briefed the merits of the insurance issues").

[97] *Ironshore*, 624 F. App'x at 168 ("The seventh and last factor . . . weighs against dismissal. There is no need to construe a state judicial decree to resolve the issues in this case."). *See also U.S. Fire*, 2015 WL 1416490, at *5.

[98] *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 192, *on reh'g in part* (July 7, 2008).

distinct issues.[99] Under Louisiana law, an insurer's duty to defend is broader than its obligation to indemnify for damage claims.[100] Louisiana courts apply the "eight-corners rule" to determine whether a liability insurer has the duty to defend a civil action against its insured; courts look to the "four corners" of the plaintiff's petition in the civil action and the "four corners" of the insurance policy to determine whether the insurer owes its insured a duty to defend.[101] One Louisiana court explained as follows:

> Under [the "eight-corners"] analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded.[102]

The duty to defend "arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[103] The insurer has a duty to defend unless the allegations in the petition for damages, as applied to the policy, unambiguously preclude coverage.[104] "Once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside the policy's coverage."[105]

When a party files a motion for summary judgment regarding the duty to defend, the Court may consider only the plaintiff's petition and the face of the policies; the parties

---

[99] *Mossy Motors, Inc. v. Cameras Am.*, 2004-0726 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606, *writ denied*, 2005-1181 (La. 12/9/05), 916 So. 2d 1057.
[100] *Henly v. Phillips Abita Lumber Co.*, 2006-1856 (La. App. 1 Cir. 10/3/07), 971 So. 2d 1104, 1109.
[101] *Mossy*, 898 So. 2d at 606.
[102] *Id.* (citations omitted).
[103] *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So. 2d 1213, 1218. *See also United Nat'l Ins. Co. v. Paul and Mar's Inc.*, No. 10-799, 2010 WL 2690615, at *2 (E.D. La. July 11, 2011).
[104] *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).
[105] *Treadway v. Vaughn*, 633 So. 2d 626, 628 (La. Ct. App. 1993), *writ denied*, 635 So. 2d 233 (La. 1994).

cannot present any evidence such as affidavits or depositions.[106] Factual inquiries beyond the petition for damages and the relevant insurance policy are prohibited with respect to the duty to defend.[107] Any ambiguities within the policy are resolved in favor of the insured to effect, not deny, coverage.[108]

B.  The Policies

Hanover issued two commercial lines policies to Superior: one that provided coverage from July 11, 2009, through July 11, 2010,[109] and another that provided coverage from July 11, 2010, through July 11, 2011.[110] The policies provide that Hanover "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury [and] . . . property damage to which this insurance applies, caused by an occurrence, and [Hanover] shall have the right and duty to defend any suit against the insured seeking damages . . . ."[111] The policies define "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."[112] The policies define "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy

---

[106] *Milano v. Bd. of Comm'rs of Orleans Levee Dist.*, 96-1368 (La. App. 4 Cir. 3/26/97), 691 So. 2d 1311, 1314.
[107] *Martco*, 588 F.3d at 872.
[108] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124. Hanover argues that "neither Allied nor Superior has can sustain their burden of establishing" that the state-court plaintiffs' bodily injuries or property damage occurred during Hanover's policy periods. R. Doc. 227-1 at 10–11. This, however, is not the correct standard for motions for summary judgment on the duty to defend.
[109] R. Doc. 227-9.
[110] R. Doc. 227-10.
[111] R. Doc. 227-9 at 17; R. Doc. 227-10 at 16.
[112] R. Doc. 227-9 at 11; R. Doc. 227-10 at 10.

period."[113] The policies define "occurrence" as "an accident, including continuous or repeated exposure in conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[114]

Both policies contain an exclusion for silicon, silica, and silicate:

1. This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of Silicon.
2. This insurance does not apply to any loss, cost or expense arising out of any:
   a. Request, demand, order or regulatory or statutory requirement that any assured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Silicon[;] or
   b. Claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Silicon.

   As used in this exclusion, Silicon means the element Silicon, including silica and other silicate compounds, or its presence or use in any other alloy, by-product, compound or other material or waste. Waste includes material to be recycled, reconditioned or reclaimed.[115]

The policies also contain a Pollution Buyback Endorsement. In relevant part, the endorsement states as follows:

It is hereby understood and agreed that this policy shall not apply to any claim arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including all oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants or upon land, the atmosphere, or any watercourse or body of water.

This exclusion shall not apply, however, provided that the Assured establishes that all of the following conditions have been met[:]

(a) the occurrence was accidental and was neither expected nor intended by the assured. An occurrence shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the assured.

---

[113] R. Doc. 227-9 at 13; R. Doc. 227-10 at 12.
[114] R. Doc. 227-9 at 13; R. Doc. 227-10 at 12.
[115] R. Doc. 227-9 at 44; R. Doc. 227-10 at 43.

      (b) the occurrence can be identified as commencing at a specific time and date during the term of the policy.

      (c) the occurrence became known to the assured within 72 hours after it's [sic] commencement.

      (d) the occurrence was reported in writing to these underwriter [sic] within 30 days after having become known to the assured.

      (e) the occurrence did not result from the assured's intentional and willful violation of any government statute, rule or regulations.[116]

## C.  The Allegations of the State-Court Lawsuits

In *Adams, et al. v. Allied Shipyard, Inc., et al.*, the plaintiffs allege they "are residents of a neighborhood that borders" Allied's shipyard.[117] They further allege that Allied, whose shipyard has been operating since the 1960s, has been operating "for decades without appropriate borders to stop the resulting dangerous silica dust produced by its sandblasting from permeating the neighborhood."[118] Allied's alleged negligence has "expos[ed] the residents to dust containing silica sand, a very dangerous substance, as well as other toxic substances."[119] The petition alleges that the plaintiffs' "long, consistent and protracted" exposure and "inhalation of the silica dust" has caused the plaintiffs to contract severe diseases and illnesses "that are painful and disabling," including Wegener's granulomatosis, rheumatoid arthritis, silicosis, and Chronic Obstructive Pulmonary Disease.[120] In the plaintiffs' third amended petition for damages, the plaintiffs named Superior as a defendant.[121] The plaintiffs allege that Superior has "conducted sandblasting and painting operations and [has] allowed dangerous byproduct to drift into

---

[116] R. Doc. 227-9 at 34; R. Doc. 227-10 at 33.
[117] R. Doc. 227-5 at 1.
[118] *Id.* at 2.
[119] *Id.*
[120] *Id.* at 2–3.
[121] *Id.* at 12–13.

the neighborhood," which "caused both personal injuries and property damages to all Plaintiffs."[122]

In *St. Pierre, et al. v. Allied Shipyard, Inc.*, the plaintiffs allege they lived in a residence near Allied's shipyard for approximately eight years preceding 2010.[123] The *St. Pierre* plaintiffs allege that Allied was negligent when performing its operations, which "resulted in the release into the atmosphere and environment in the neighborhoods surrounding the shipyard of hazardous substances, including, but not limited to, paint, sand and silica."[124] The petition alleges that, as a result, the plaintiffs were exposed to the hazardous substances and "have suffered personal injury, mental anguish, health problems, inconvenience, distress, loss of consortium, fear of disease, and other damages."[125]

D. <u>Hanover Argues the Damages Did Not Occur during the Policy Periods and, Thus, Recovery is Unambiguously Excluded under the Policies</u>

The Hanover policies impose on Hanover a duty to pay on behalf of its insured any sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" and to which the policies apply.[126] The bodily injury or property damage, however, must "occur[] during the policy period."[127]

Hanover argues that it has no duty to defend Superior or Allied because the State-Court Lawsuits do not allege "bodily injury" or "property damage" that "occurred" during the policy periods.[128] Hanover argues, "[N]either underlying plaintiffs nor Allied have

---

[122] *Id.* at 13.
[123] R. Doc. 227-6 at 1.
[124] *Id.*
[125] *Id.*
[126] R. Doc. 227-9 at 17; R. Doc. 227-10 at 16.
[127] R. Doc. 227-9 at 11, 13; R. Doc. 227-10 at 10, 12.
[128] R. Doc. 227-1 at 10–11.

alleged any injuries during Hanover's Policy periods, much less that Superior was actually performing any work at Allied's shipyard during Hanover's Policy periods that could have caused underlying plaintiffs' alleged damages during the relevant periods."[129] As previously explained, however, Hanover misstates the standard for a motion for summary judgment on the duty to defend.[130] To prevail on a motion for summary judgment that it has no duty to defend, an insurer must establish that coverage is unambiguously precluded based on review of the four corners of the petition for damages and the four corners of the complaint.[131]

The Hanover policy periods span July 11, 2009, through July 11, 2011.[132] The *Adams* lawsuit was filed on December 28, 2010.[133] The petition in *Adams* notes that Allied has operated "for decades without appropriate borders" to prevent dangerous silica dust from permeating the neighborhood and that the exposure has been "prolonged" and "long, consistent and protracted."[134] Thus, the *Adams* plaintiffs' allege their exposure occurred over decades. The *Adams* plaintiffs also allege that they contracted illnesses and diseases as a result of the exposure and that "[t]he dust is so constant and voluminous that residents must continuously wash their cars and houses, almost on a daily basis."[135] They seek damages for medical expenses, loss of income, property damage, and loss of value of property.[136]

---

[129] R. Doc. 227-1 at 10–11.
[130] *See supra* Part A (The "Eight-Corners Rule").
[131] *Id.*
[132] R. Doc. 227-9 at 1; R. Doc. 227-10 at 1.
[133] *See* R. Doc. 227-5 at 5.
[134] R. Doc. 227-5 at 2, 3.
[135] R. Doc. 227-5 at 2–3.
[136] *Id.* at 4.

The *St. Pierre* lawsuit was filed on December 8, 2010.[137] The *St. Pierre* petition alleges that "[f]or approximately eight (8) years, the plaintiffs have lived in a residence . . . located near the shipyard," and during that time, they were exposed to the hazardous substances released by Allied.[138] Based on the allegations in the *St. Pierre* lawsuit, the *St. Pierre* plaintiffs' exposure began in 2002, eight years prior to the suit's filing, and continued at least until 2010, when the petition was filed. The *St. Pierre* plaintiffs allege that, as a result of the exposure, they "have suffered personal injury, mental anguish, health problems," and other damages.[139] They seek damages for physical and mental pain and suffering, medical expenses, damage to personal property.[140]

Although the state-court petitions do not identify a precise time period during which the plaintiffs were exposed to the hazardous substances causing bodily injury and property damage, a review of the petitions and the policies does not unambiguously preclude a finding that the exposure occurred during the policy periods. "An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[141] The petitions clearly allege exposure that was ongoing and continuous for years, even decades in *Adams*. The plaintiffs in *St. Pierre* allege that they were exposed to the hazardous substances from 2002 to 2010.[142] The

---

[137] *See* R. Doc. 227-6 at 3.
[138] R. Doc. 227-6 at 1.
[139] *Id.*
[140] *Id.* at 2.
[141] *Steptore*, 643 So. at 1218.
[142] To determine when property damage or bodily injury "occurs" due to long-term exposure to harmful substances, Louisiana courts apply the exposure theory. *See Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076–77 (La. 1992); *Norfolk S. Corp. v. California Union Ins. Co.*, 2002-0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 192, *writ denied*, 2003-2742 (La. 12/19/03), 861 So. 2d 579; *Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05), 919 So. 2d 758, 765. The parties do not dispute that the exposure theory applies. Under the exposure theory, "[e]ven where the damage or injury was not manifested until after an insurer's policy period, if the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable." *Oxner v. Montgomery*, 34,727 (La. App. 2 Cir. 8/1/01), 794 So. 2d 86, 93, *writ denied*, 803 So. 2d 36 (La. 2001). Thus, applying the exposure theory, the state-court plaintiffs' bodily injuries and property damage "occurred" "during the entire course of [the plaintiffs'] exposure."[142] Thus, "if

policies Hanover issued to Superior provide coverage during these time periods.[143] The eight corners of the state-court petitions and the policies do not unambiguously preclude the possibility that the exposure causing the plaintiffs' personal injuries and property damage occurred during Hanover's policy periods.[144]

E.  Hanover Argues the Policies' Silicon, Silica, and Silicate Exclusion Unambiguously Excludes Coverage

Hanover argues separately and alternatively that the eight corners of the petition and the silicon, silica, and silicate exclusion included in its policies taken together unambiguously bar coverage for any liability of the state-court plaintiffs' injuries.[145]

The silicon, silica, and silicate exclusion precludes coverage for any liability or loss "arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of Silicon."[146]

In their original petition for damages, the *Adams* plaintiffs allege that their exposure to "silica sand . . . as well as other toxic substances"[147] and "silica dust and other

---

the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable." *Id.*

[143] R. Doc. 227-9 at 1; R. Doc. 227-10 at 1.

[144] R. Doc. 227-5 at 1, 2; R. Doc. 227-6 at 1. *See also Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc.*, 611 So. 2d 158, 161–62 (La. App. 3 Cir. 1992) (From a common sense reading of the plaintiffs' petition, we cannot say that the allegations unambiguously rest on an occurrence which began before the policy period. Plaintiffs' petition generally alleges a period of time when acts of liability took place. However, no particular accident is detailed, and no specific allegation is made that the plaintiffs were repeatedly exposed to the same harmful condition prior to the effective date of Lloyd's policies. . . . Accordingly, because plaintiffs' petition does not unambiguously exclude that the occurrence began during the policy period, Lloyd's must defend NPACT. . . ."); *Steptore*, 643 So. 2d at 1218 (The "duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."); *United Nat'l Ins.*, 2010 WL 2690615, at *2 ("The duty to defend analysis begins with an examination of whether any of the facts pleaded in the complaint possibly fall within matters covered under the insuring clause. . . . The duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy." (citations omitted) (internal quotation marks omitted)); *Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 638 So. 2d 1132, 1135 (La. App. 1 Cir. 1994) ("The absence of detailed times, dates, and places in the petition does not defeat our conclusion that the allegations state, at least rudimentarily, a claim which may be covered by the insurance contract.").

[145] R. Doc. 227-1 at 12–13.

[146] R. Doc. 227-9 at 44.

[147] R. Doc. 227-5 at 2.

harmful products" caused their injuries.[148] The plaintiffs' third amended petition for damages alleges that the defendants "have conducted sandblasting and painting operations and have allowed dangerous byproduct to drift into the neighborhood" and "[t]he byproduct caused both personal injuries and property damages to all Plaintiffs."[149] The plaintiffs allege their exposure to hazardous substances, in addition to silica dust, caused their personal injuries and property damage. The petition for damages does not unambiguously limit the cause of their injuries to "contaminative, pathogenic, toxic or other hazardous properties of Silicon," to which the exclusion applies.[150]

The *St. Pierre* petition for damages also does not unambiguously limit the cause of the plaintiffs' injuries to the hazardous properties of silicon, silica, or silicate. The *St. Pierre* plaintiffs allege that Allied's operations "resulted in the release into the atmosphere and environment in the neighborhoods surrounding the shipyard of hazardous substances, including, but not limited to, paint, sand and silica,"[151] which caused the plaintiffs' personal injuries and property damage.[152]

Considering the *Adams* petitions for damages, the *St. Pierre* petition for damages, and the language of the exclusion found in the policies, the Court does not find that the silicon, silica, and silicate exclusion unambiguously bars coverage of the damages alleged in the State-Court Lawsuits.

---

[148] *Id.* at 3.
[149] *Id.* at 13.
[150] R. Doc. 227-9 at 44.
[151] R. Doc. 227-6 at 1.
[152] *Id.* at 2.

F. <u>Hanover Argues the Pollution Buyback Endorsement Unambiguously Excludes Coverage</u>

Hanover further argues separately and alternatively that the eight corners of the petitions and the Pollution Buyback Endorsement found in its policies unambiguously preclude coverage.[153] The Pollution Buyback Endorsement excludes coverage for "any claim arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including all oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water."[154] The insured may still be entitled to coverage, however, if it establishes five conditions.[155] The endorsement is a total pollution exclusion on damages caused by pollutants, with time-element exceptions.[156] Hanover must establish that the exclusion unambiguously precludes coverage before the Court may consider whether the time-element conditions have been met.[157]

The Louisiana Supreme Court has ruled that a literal application of a total pollution exclusion "would lead to . . . absurd results" and explained that, "[i]n light of the origin of pollution exclusions, as well as the ambiguous nature and absurd consequences which

---

[153] R. Doc. 227-1 at 13–17.

[154] R. Doc. 227-9 at 34; R. Doc. 227-10 at 33.

[155] R. Doc. 227-9 at 34; R. Doc. 227-10 at 33.

[156] *See* R. Doc. 227-9 at 34 ("This exclusion shall not apply, however, provided that the Assured establishes that all of the following conditions have been met . . . ."); R. Doc. 227-10 at 33 (same). *See also In re Matter of Complaint of Settoon Towing, L.L.C.*, 720 F.3d 268, 278 (5th Cir. 2013) (interpreting a pollution buyback provision as establishing conditions precedent for an exclusion to not apply, noting the insured must "'establish' that the 'conditions' have been met in order for the absolute pollution exclusion not to apply); *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*, 941 F. Supp. 623, 629 (S.D. Tex. 1996), *aff'd*, 112 F.3d 184 (5th Cir. 1997) (applying Texas law) ("The Court observes that [the pollution buyback] clause is not itself an exclusion . . . but rather serves merely to reinstate coverage that has been found to be excluded.").

[157] *See Martco*, 588 F.3d at 880, 883–84 ("[The insurer] bears the burden of proving the applicability of an exclusionary clause within the Policy. If [the insurer] cannot unambiguously show an exclusion applies, the Policy must be construed in favor of coverage." (citations omitted)).

attend a strict reading of these provisions," a total pollution exclusion is "neither designed nor intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind."[158] As a result, the Louisiana Supreme Court has instructed that courts must "attempt to determine the true meaning and interpretation of [the] pollution exclusion."[159] In *Doerr v. Mobil Oil Corporation*, the Louisiana Supreme Court explained that the applicability of such an exclusion in any given case must necessarily turn on three considerations: (1) whether the insured is a "polluter" within the meaning of the exclusion; (2) whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and (3) whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.[160] If the insurer fails to show these three questions are answered in the affirmative, the total pollution exclusion is not applicable and the court need not examine whether the time-element conditions, or exceptions, contained in the endorsement are met.[161] The Louisiana Supreme Court expressly stated that these factors must be considered "in any given case,"[162] which this Court construes to include decisions involving a motion for

---

[158] *Doerr*, 774 So. 2d at 135.

[159] *Id.* at 125.

[160] *Id.* The exclusion in *Doerr* precluded coverage for bodily or personal injury, advertising injury, or property damage that "would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." *Doerr*, 774 So. 2d at 122. The *Doerr* policy defined "pollutants" as "solid[,] liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste." *Id.* The court instead found it was "appropriate to construe a pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution, and under such interpretation, the clause will not be applied to all contact with substances that may be classified as pollutants." *Id.* at 135.

[161] *See Smith v. Reliance Ins. Co. of Illinois*, 01-888 (La. App. 5 Cir. 1/15/02), 807 So. 2d 1010, 1020 ("[I]n light of the recent pronouncement by the Supreme Court in *Doerr* and after consideration of the above-mentioned factors, we conclude that the insurer in this case failed to meet its burden of proving the applicability of Exclusion 10 of the policy, the total pollution exclusion. Additionally, although the parties extensively dispute the applicability of the limited buy-back endorsement to this exclusion, we find it unnecessary to reach this issue based on our holding that Exclusion 10 does not unambiguously exclude coverage based on the facts alleged in this case.").

[162] *Doerr*, 774 So. 2d at 135.

summary judgment on the duty to defend, as well as motions involving the duty to indemnify.

Although the *Doerr* factors should be considered in the duty-to-defend context, the Court is nevertheless limited to the eight corners of the petitions and the policies when deciding whether to apply a total pollution exclusion as written. This is borne out by an examination of Louisiana state court cases facing this issue. In *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*,[163] for example, a Louisiana appellate court found that, considering the four corners of the underlying petitions and the four corners of the time-element pollution exclusion, the insurer had no duty to defend because the exclusion unambiguously precluded coverage.[164] The court in *Lodwick* addressed *Doerr* as "the seminal case addressing pollution exclusions" and applied the *Doerr* factors using only the four corners of the plaintiffs' petition for damages.[165] For example, the court found that the insureds were "'polluters' under the *Doerr* test" because "[t]hroughout the plaintiffs' petition for damages, all defendants . . . are alleged to be oil field operators and producers."[166] The court also found that the substances that caused the plaintiffs' injuries were "pollutants" within the meaning of the total pollution exclusion because the plaintiffs "allege[d] that their property was contaminated by . . . [substances that] qualify as chemicals, contaminants, irritants, or waste under the various exclusions."[167] The court concluded that "[p]laintiffs' allegations make it clear that all three *Doerr* factors are met."[168] The

---

[163] *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*, 48,312 (La. App. 2 Cir. 10/2/13), 126 So. 3d 544, *writ denied*, 2013-2898 (La. 2/28/14), 134 So. 3d 1176. The plaintiffs in *Lodwick* alleged that the activities of nearby oil and gas operators "caused pollution damages on or adjacent to their property." *Id.* at 547.
[164] R. Doc. 227-1 at 16.
[165] *Lodwick*, 126 So. 3d at 560. Hanover incorrectly argues that the court in *Lodwick* "not[ed] that *Doerr* did not apply." R. Doc. 227-1 at 16.
[166] *Id.* at 561.
[167] *Id.*
[168] *Id.*

court thus found that the pollution exclusion in the policies at issue did unambiguously exclude coverage and granted summary judgment declaring that the insurers had no duty to defend.[169]

In *Smith v. Reliance Insurance Company of Illinois*, the plaintiffs alleged that the release of noxious odors carried by the wind to the plaintiffs' homes and properties caused their damages.[170] Before the *Smith* court was a motion for partial summary judgment on the insurer's duty to defend.[171] When ruling on the motion, the court used the eight-corners rule and examined a pollution exclusion with a buyback endorsement similar to the exclusion and endorsement currently before this Court as well as the allegations contained in the plaintiff's petition.[172] The court applied the *Doerr* factors based on the facts alleged in the petition and concluded that the insurer "failed to meet its burden of proving the applicability" of the pollution exclusion.[173] The court explained that, "although the parties extensively dispute[d] the applicability of the limited buy-back endorsement to th[e] exclusion," it was unnecessary to reach the issue of whether the buyback endorsement applied because the court found the exclusion itself did not unambiguously exclude coverage given the *Doerr* analysis.[174] The court affirmed the judgment of the trial court, which found that the insurer had a duty to defend.[175]

To apply the *Doerr* factors in this case, the Court must first determine whether the insured is a "polluter" within the meaning of the exclusion, using the eight corners of the

---

[169] *Id.*
[170] *Smith*, 807 So. 2d at 1013.
[171] *Id.*
[172] *Id.* at 1019–20. *See also id.* at 1015 (explaining that the insurer's duty to defend "is determined by the allegations of the plaintiff's petition with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage").
[173] *Id.* at 1020.
[174] *Id.*
[175] *Id.* at 1013.

petitions and the policies. The *Doerr* court described this issue as a fact-based determination for which courts should consider "the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion."[176] Hanover is unable to establish from the eight corners that Superior is a "polluter" within the meaning of the exclusion. For example, Hanover is unable to point to any information within the eight corners regarding the nature of Superior's business, whether that type of business presents a risk of pollution, and whether Superior has a separate pollution policy. Accordingly, the Court is unable to conclude that Superior is a "polluter" within the meaning of the exclusion.

Second, the Court must determine whether the injury-causing substance is a "pollutant" within the meaning of the exclusion. The Court should consider "the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion."[177] Hanover is unable to establish from the eight corners that the substances the State-Court Lawsuit plaintiffs allege caused their personal injuries and property damage are "pollutants" within the meaning of the exclusion such that the exclusion unambiguously

---

[176] *Doerr*, 774 So. 2d at 135.
[177] *Id.*

precludes coverage. In the *Adams* and *St. Pierre* petitions for damages, the plaintiffs broadly describe the substances causing their injuries. The *Adams* plaintiffs, for example, allege that "silica dust *and other harmful products*"[178] and "dangerous byproduct"[179] caused their injuries. The *St. Pierre* plaintiffs allege that "hazardous substances, including, but not limited to, paint, sand and silica" caused their injuries.[180] The Court is unable to determine the nature of the injury-causing substances, their typical usages, the quantity of any discharges, whether the substances were being used for their intended purpose when the injury took place, or whether the substances are ones that would be viewed as pollutants as the term is generally understood. The Court reiterates that "any ambiguity should be interpreted in favor of the insured."[181] Hanover has failed to establish that the injury-causing substance is a "pollutant" within the meaning of the exclusion.

Finally, the Court must consider whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy, a fact-based determination.[182] The Court "should consider whether the pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were active or passive, and any other factor the trier of fact deems relevant."[183] The Court is unable to determine from the eight corners whether a pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, or whether the actions of the alleged polluter were active or passive. Hanover has failed to establish that there was a

---

[178] R. Doc. 227-5 at 3 (emphasis added).
[179] *Id.* at 13.
[180] R. Doc. 227-6 at 1.
[181] *Doerr*, 774 So. 2d at 125.
[182] *Id.* at 135.
[183] *Id.* at 136.

discharge, dispersal, seepage, migration, release or escape of a pollutant by the insured within the meaning of the policy.

Because Hanover has failed to establish that Superior is a polluter, that the substance or substances to which the plaintiffs were exposed were pollutants, or that there was a discharge within the meaning of the policies, Hanover has failed to establish that the pollution exclusion unambiguously precludes coverage. Therefore, the Court need not reach the issue of whether Superior met the time-element conditions necessary to establish the exception to the pollution exclusion.[184] Hanover's motion for summary judgment on its duty to defend is denied.

The Court notes that Hanover argues *Doerr* does not apply to this case because the exclusion in Hanover's policies is not a total pollution exclusion as was the provision examined by the court in *Doerr*.[185] Hanover cites *Bridger Lake, LLC v. Seneca Insurance Company, Inc.* in support of its position, but this case is distinguishable from the matter before the Court.[186] In *Bridger Lake*, the Western District of Louisiana found that the pollution exclusion for damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'" applied to a case in which a crude oil pipeline ruptured, causing the release of more than 3,000 barrels of crude oil

---

[184] *See Smith*, 807 So. 2d at 1020 ("[I]n light of the recent pronouncement by the Supreme Court in *Doerr* and after consideration of the above-mentioned factors, we conclude that the insurer in this case failed to meet its burden of proving the applicability of Exclusion 10 of the policy, the total pollution exclusion. Additionally, although the parties extensively dispute the applicability of the limited buy-back endorsement to this exclusion, we find it unnecessary to reach this issue based on our holding that Exclusion 10 does not unambiguously exclude coverage based on the facts alleged in this case.").

[185] R. Doc. 227-1 at 16–18.

[186] *Bridger Lake, LLC v. Seneca Ins. Co.*, No. 11-0342, 2013 WL 2458758 (W.D. La. June 6, 2013).

into the environment.[187] The court, however, applied Wyoming law and thus was not bound by, and did not consider, the Louisiana Supreme Court's decision in *Doerr*.[188]

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Hanover's motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, this 30th day of March, 2016.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[187] *Id.* at *5.
[188] *See id.* Hanover also cites *Lodwick*, but as explained *supra*, *Lodwick* indeed applied the *Doerr* factors when considering a motion for summary judgment on the duty to defend.