**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HANOVER INSURANCE COMPANY,**<br>     **Plaintiff** | **CIVIL ACTION** |
| | **No. 11-2375 c/w** |
| **VERSUS** | **14-1930, 14-1933** |
| **SUPERIOR LABOR SERVICES,**<br>**INC., ET AL.,**<br>     **Defendants** | **SECTION "E"** |

***Applies to:*** **11-2375, 14-1933**

## ORDER AND REASONS

Before the Court are four motions for summary judgment filed by State National Insurance Company regarding its duty to defend Superior and Masse as insureds and Allied as an additional insured under Superior's and Masse's policies.[1]

## BACKGROUND

A.  <u>State-Court Lawsuits</u>

This is a consolidated action. The case originates from two personal-injury actions ("State-Court Lawsuits") filed in state court against Allied Shipyard, Inc. ("Allied"): *Adams, et al. v. Allied Shipyard, Inc., et al.* and *St. Pierre, et al. v. Allied Shipyard, Inc.*[2] The plaintiffs in the State-Court Lawsuits allege Allied negligently performed sandblasting activities, causing dangerous silica dust and other hazardous substances to permeate the plaintiffs' neighborhood.[3] The plaintiffs seek damages for physical pain and

---

[1] R. Docs. 242, 243, 244, 245. Unless otherwise indicated, "R. Doc." refers to record documents in the consolidated matter, No. 11-2375.

[2] The petitions for damages from each State-Court Lawsuit are attached to State National's motions for summary judgment. *See* R. Docs. 242-7, 244-7 (*Adams* Petition for Damages); R. Docs. 242-8, 244-8 (*Adams* First Amended Petition for Damages); R. Docs. 242-9, 244-9 (*Adams* Second Amended Petition for Damages); R. Docs. 242-10, 244-10 (*Adams* Third Amended Petition for Damages); R. Docs. 242-11, 244-11 (*Adams* Fourth Amended Petition for Damages); R. Docs. 243-7, 245-7 (*St. Pierre* Petition for Damages).

[3] *See* R. Docs. 242-7, 244-7, 243-7, 245-7.

suffering, medical expenses, property damage, and other damages as a result of their exposure to the hazardous substances.[4] The two cases were consolidated in state court on September 9, 2013.[5]

In both State-Court Lawsuits, Allied filed third-party demands against its contractors that performed the sandblasting jobs, including Superior Labor Services, Inc. ("Superior")[6] and Masse Contracting, Inc. ("Masse").[7] Specifically, Allied alleges that Superior and Masse contracted with Allied to perform certain job responsibilities and to indemnify Allied under master work contracts.[8] Allied seeks indemnity from Superior and from Masse with respect to the claims in the State-Court Lawsuits.[9] Allied has also alleged the right to additional insured status and coverage on all insurance policies issued to Superior and to Masse for any liability in the State-Court Lawsuits.[10]

The plaintiffs in *Adams* amended their petition to name Superior, Masse, other subcontractors, and Gray Insurance Company as direct defendants.[11]

The contractors against which Allied brought third-party demands "in turn sought coverage, defense and/or indemnity from their various insurers for the periods of time when these jobs were allegedly performed, which prompted the insurers to file lawsuits in federal courts."[12]

---

[4] *See* R. Docs. 242-7, 244-7, 243-7, 245-7.
[5] *See* R. Doc. 261-5.
[6] *See* R. Docs. 244-12, 245-8.
[7] *See* R. Docs. 242-12, 242-13, 243-8, 243-9.
[8] *See* R. Docs. 242-12, 242-13, 243-8, 243-9, 244-12, 245-8.
[9] *See* R. Docs. 242-12, 242-13, 243-8, 243-9, 244-12, 245-8.
[10] *See* R. Docs. 242-12, 242-13, 243-8, 243-9, 244-12, 245-8. *See also* R. Doc. 135 at ¶¶ 50–53.
[11] *See* R. Doc. 242-10, 244-10.
[12] R. Doc. 174-1 at 2.

2

B. <u>Declaratory Actions in Federal Court</u>

Three federal actions related to the State-Court lawsuits are pending in this Court. The Court consolidated the three cases on November 21, 2014.[13]

*1. No. 11-2375*

On September 21, 2011, Hanover Insurance Company ("Hanover") filed a complaint in this Court.[14] Hanover filed an amended complaint on September 27, 2012.[15] Hanover alleges it has been participating in the defense of Superior against Allied's third-party demands in the State-Court Lawsuits.[16] Hanover maintains the other insurers it names in its federal suit "are not participating in Superior's defense" in the State-Court Lawsuits.[17] Hanover seeks judgment against Superior declaring that it has no duty to defend or indemnify Superior in the State-Court Lawsuits.[18] If Hanover has a duty to defend or indemnify Superior, Hanover seeks declaratory judgment that State National Insurance Company ("State National"), Arch Insurance Company ("Arch"), and "other unidentified insurance companies collectively named as ABC Insurance Company" are liable "for their share of defense and indemnity to be paid on behalf of Superior" in the State-Court Lawsuits.[19] Hanover also seeks reimbursement, contribution, and/or damages from State National, Arch, and other unidentified insurance companies for defense costs already incurred by Hanover on behalf of Superior in the State-Court Lawsuits that, Hanover argues, should have been paid by those insurance companies.[20]

---

[13] *See* R. Doc. 108.
[14] *Hanover Ins. Co. v. Superior Labor Servs., Inc., et al.*, No. 11-2375.
[15] R. Doc. 69.
[16] *Id.* at ¶¶ 23–24.
[17] *Id.* at ¶ 26.
[18] *Id.* at 22–23.
[19] *Id.* at ¶ 2.
[20] *Id.* at ¶ 3.

On January 14, 2015, Hanover filed a second supplemental and amending complaint naming Allied as a defendant.[21] Hanover alleges that "Allied has tendered the [State-Court Lawsuits] to Hanover for defense and indemnity in its capacity as an alleged additional insured" under Superior's policies, and Hanover has offered to participate in Allied's defense in the State-Court Lawsuits subject to a full reservation of rights.[22] Hanover alleges that Allied is not an additional assured under Hanover's policies, and Hanover seeks judgment against Allied declaring that it has no duty to defend or indemnify Allied in the State-Court Lawsuits.[23] In the alternative, if the Court finds Hanover has a duty to defend or indemnify Allied, Hanover seeks judgment declaring that Arch, State National, and other unidentified insurance companies are obligated to pay their portions of defense costs and/or indemnity incurred by Hanover on behalf of Superior and Allied in the State-Court Lawsuits.[24]

On March 8, 2012, State National filed a crossclaim for declaratory judgment against Superior.[25] State National filed its first amended crossclaim for declaratory judgment on September 27, 2012.[26] State National filed a second amended crossclaim for declaratory judgment on January 14, 2015, naming Allied as a defendant-in-crossclaim.[27] State National seeks judgment declaring that there is no coverage afforded to Superior under the State National policies issued to Superior and that State National has no duty to defend or indemnify Superior in the State-Court Lawsuits.[28] State National also seeks

---

[21] R. Doc. 125.
[22] *Id.* at ¶ 79.
[23] *Id.* at 9.
[24] *Id.*
[25] R. Doc. 29.
[26] R. Doc. 67.
[27] R. Doc. 135.
[28] *Id.* at ¶ 19.

a declaration that the State National policies afford no coverage to Allied as a purported additional insured and that State National does not owe a duty to defend or indemnify Allied in the State-Court Lawsuits.[29]

### 2. No. 14-1930

On August 22, 2014, Arch Insurance Company brought an action for declaratory judgment against Superior and Allied. Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Superior," with respect to Superior's request for defense and indemnity in the State-Court Lawsuits.[30] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional assured status under the Superior policies and defense and indemnity of Allied in the State-Court Lawsuits.[31] Arch seeks a declaration against Superior and Allied that Arch has no defense or indemnity obligation to Superior in the State-Court Lawsuits.[32] Arch also seeks recovery of the portion of defense costs already incurred by it on behalf of Superior.[33]

### 3. No. 14-1933

On August 22, 2014, Arch also filed an action for declaratory judgment against Masse and Allied. Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Masse," with respect to Masse's request for defense and indemnity in the State-Court Lawsuits.[34] Arch also seeks a declaration of its rights

---

[29] *Id.*

[30] No. 14-1930, R. Doc. 1 at ¶ 3.

[31] *Id.* at ¶ 4. Arch alleges that Allied is not entitled to additional assured coverage "to the extent there is no evidence that any loss occurred" while Superior was performing work for Allied and during the Arch policy periods. *Id.* at ¶¶ 20–21.

[32] *Id.* at ¶¶ 21, 47.

[33] *Id.* at ¶ 47.

[34] No. 14-1933, R. Doc. 1 at ¶ 3.

and responsibilities with respect to Allied's request for additional assured status under the Masse policies and defense and indemnity of Allied in the State-Court Lawsuits.[35] Arch seeks a declaration against Masse and Allied that Arch has no defense or indemnity obligation to Masse in the State-Court Lawsuits.[36]

On January 14, 2015, Hanover filed a complaint in intervention in Case No. 14-1933 against Defendants Masse and Allied.[37] Hanover seeks judgment declaring that Hanover has no obligation to defend or indemnify Masse or Allied in the State-Court Lawsuits.[38]

State National Insurance Company ("State National") also filed a petition for intervention for declaratory judgment on January 14, 2015.[39] State National issued two marine general liability policies to Masse that provided coverage from November 15, 2006, to November 15, 2007, and from November 15, 2007, to November 15, 2008.[40] Allied seeks additional insured status under the policies issued by State National to Masse.[41] State National seeks a judgment declaring there is no coverage afforded to Masse under the State National policies and that State National has no duty to defend or indemnify Masse in the State-Court Lawsuits.[42] State National also seeks a declaration that "there is no coverage afforded to Allied under the [State National] policies as a

---

[35] *Id.* at ¶ 4. Arch alleges that Allied is not entitled to additional assured coverage "to the extent there is no evidence that any loss occurred" while Masse was performing work for Allied and during the Arch policy periods. *Id.* at ¶¶ 20–21.
[36] *Id.* at ¶ 46.
[37] R. Doc. 128.
[38] *Id.*
[39] R. Doc. 132.
[40] *Id.* at ¶ 14.
[41] *Id.* at ¶ 3.
[42] *Id.* at ¶ 19.

purported additional insured" and that State National does not owe a duty to defend or indemnify Allied in the State-Court Lawsuits.[43]

C. <u>State National's Motions for Summary Judgment</u>

State National filed four motions for summary judgment on December 1, 2015, regarding its duty to defend Masse and Superior as insureds and Allied as an additional insured under the policies issued to Masse and Superior.[44]

The first motion pertains to State National's duty to defend Masse and Allied in the *Adams* lawsuit.[45] State National argues it has no duty to defend Masse or Allied in *Adams* under the policies.[46] State National argues in the alternative that, if the Court finds State National has a duty to defend Masse or Allied, the duty is subject to the rule of proration requiring allocation of defense costs based on the insurer's time on the risk only.[47]

The second motion pertains to State National's duty to defend Masse and Allied in the *St. Pierre* lawsuit.[48] State National argues it has no duty to defend Masse or Allied in *St. Pierre* under the policies.[49] State National argues in the alternative that, if the Court finds State National has a duty to defend Masse or Allied, the duty is subject to the rule of proration requiring allocation of defense costs based on the insurer's time on the risk only.[50]

The third motion pertains to State National's duty to defend Superior and Allied in the *Adams* lawsuit.[51] State National argues it has no duty to defend Superior or Allied in

---

[43] *Id.*
[44] R. Docs. 242, 243, 244, 245.
[45] R. Doc. 242.
[46] R. Doc. 242-1 at 23.
[47] *Id.* The Court defers ruling on whether the rule of proration applies.
[48] R. Doc. 243.
[49] *Id.* at 24.
[50] *Id.*
[51] R. Doc. 243.

*Adams* under the policies.[52] State National argues in the alternative that, if the Court finds State National has a duty to defend Superior or Allied, the duty is subject to the rule of proration requiring allocation of defense costs based on the insurer's time on the risk only.[53]

The fourth motion pertains to State National's duty to defend Superior and Allied in the *St. Pierre* lawsuit.[54] State National argues that it has no duty to defend Superior or Allied in *St. Pierre* under the policies.[55] State National argues in the alternative that, if the Court finds State National has a duty to defend Superior or Allied, the duty is subject to the rule of proration requiring allocation of defense costs based on the insurer's time on the risk only.[56]

On December 8, 2015, Masse and Superior filed their respective oppositions.[57] Allied filed an opposition to the motions on December 14, 2015, adopting the oppositions filed by Masse and Superior.[58] State National filed a reply in support of its motions for summary judgment on December 15, 2015.[59] After deposing Anthony Boudreaux, Allied's vice president of operations and Superior's former vice president, Masse filed a memorandum to supplement its opposition on February 29, 2016.[60] State National filed a response on March 1, 2016, arguing that the deposition of Anthony Boudreaux has no bearing on the four pending motions for summary judgment.[61]

---

[52] *Id.* at 23.
[53] *Id.*
[54] R. Doc. 245.
[55] *Id.* at 23.
[56] *Id.*
[57] R. Doc. 258 (Masse's Opposition); R. Doc. 261 (Superior's Opposition).
[58] R. Doc. 280.
[59] R. Doc. 295.
[60] R. Doc. 312.
[61] R. Doc. 319.

## STATE NATIONAL'S INTERVENTION

The Court must determine whether State National's intervention in No. 14-1933 is permissible under Rule 24. Rule 24(a) provides for intervention as of right, while Rule 24(b) provides for permissive intervention. State National filed a supplemental memorandum on March 29, 2016, arguing intervention is proper under both Rule 24(a) and Rule 24(b).[62] Masse argues the intervention is improper.[63]

A.  Intervention of Right

Rule 24(a) provides that the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[64]

State National points to no federal statute giving it an unconditional right to intervene. "Absent a statute giving a right to intervene, Rule 24(a) imposes four requirements for intervention as of right: (1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties."[65]

---

[62] R. Doc. 335.

[63] R. Doc. 337. State National filed an *ex parte* motion for leave to file a complaint in intervention on January 12, 2015. R. Doc. 118. Masse and Arch had no opposition to the intervention. R. Doc. 118 at 3. The Court granted the motion for leave to intervene on January 14, 2015, R. Doc. 131, and State National filed its complaint in intervention against Masse and Allied in No. 14-1933 on January 14, 2015. R. Doc. 132.

[64] FED. R. CIV. P. 24(a).

[65] *Vallejo v. Garda CL Sw., Inc.*, No. 12-0555, 2013 WL 391163, at *5 (S.D. Tex. Jan. 30, 2013). *See also In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009).

To show it has an interest relating to the subject matter of the main action, State National must demonstrate it has "a direct, substantial, legally protectable interest in the action, meaning 'that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant.'"[66] State National argues that it has shown it has an interest relating to the subject matter of the main action because it "asserts coverage defenses against Masse arising out of the same *Adams* and *St. Pierre* underlying lawsuits for which Arch seeks to deny coverage."[67] State National argues, "[s]hould coverage be found under the [State National] policies, then [State National] has an interest in making sure coverage also exists under the Arch policies to support its arguments on allocation or to subsequently pursue contribution and subrogation claims against Arch and/or potential reimbursement claims against Arch and Masse."[68] State National fails to show, however, that it "has a stake in the matter that goes beyond a generalized preference that the case come out a certain way."[69] State National's purported interest is insufficient to establish an "interest" relating to the subject matter of the main action under Rule 24(a).[70]

State National also fails to show that its interest would be at least potentially impaired if the action is resolved without it. "Impairment exists when the decision of a legal question would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding."[71] State National has failed to establish that its interest would be potentially impaired if the main action is resolved without it, as State National has not

---

[66] *In re Lease Oil*, 570 F.3d at 250 (quoting *Cajun Elect. Power Coop. v. Gulf States Utils., Inc.*, 940 F.2d 117, 119 (5th Cir. 1991)).
[67] R. Doc. 335 at 7.
[68] *Id.* at 7–8.
[69] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).
[70] *See id.* at 657–60.
[71] *Vallejo*, 2013 WL 391163, at *5.

10

demonstrated that "the disposition of [the main] suit will . . . bar [State National] from asserting [its] rights in a separate action."[72]

Because State National fails to demonstrate at least two of the four prongs necessary to establish intervention of right, the Court finds State National is not entitled to intervention of right under Rule 24(a).

## B. Permissive Intervention

Rule 24(b) provides that courts may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact.[73] "Even if not warranted as a matter of right, the Court has broad discretion to allow permissive intervention where, as here, the parties seeking to intervene assert claims with a common question of fact or law in connection with the main action."[74] If the intervenor has a claim or defense that shares with the main action a common question of law or fact, district courts have "broad discretion" in allowing intervention.[75] "A court possesses the discretion to determine whether to permit permissive intervention and must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"[76] The rule on permissive intervention "should be liberally construed."[77]

---

[72] *Id.* ("If the disposition of a suit will not bar a proposed intervenor from asserting his or her rights in a separate action, the 'impairment' prong of Rule 24(a) typically is not met.").

[73] FED. R. CIV. P. 24(b)(1).

[74] *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, No. 15-34, 2016 WL 554830, at *6 (E.D. Va. Feb. 9, 2016).

[75] *Sec. & Exch. Comm'n. v. Mutuals.com, Inc.*, No. 03-2912, 2004 WL 1629929, at *2 (N.D. Tex. July 20, 2004) (citing *League of United Latin Am. Citizens, Council No. 4434 v. Clements,* 884 F.2d 185, 189 (5th Cir. 1989)); *Vallejo,* 2013 WL 391163, at *10.

[76] *Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, No. 11-2405, 2013 WL 5175620, at *3 (E.D. La. Sept. 12, 2013) (quoting FED. R. CIV. P. 24(b)(3)). *See also Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-0366, 2015 WL 893447, at *8 (E.D. La. Mar. 2, 2015); *J.M. Smith Corp. v. Ciolino Pharmacy Wholesale Distributors, LLC*, No. 10-1483, 2013 WL 1344557, at *1 (E.D. La. Apr. 3, 2013).

[77] *Moore v. Tangipahoa Parish Sch. Bd.*, 298 F. Supp. 288, 292 (E.D. La. 1969).

In *Pennsylvania National Mutual Casualty Insurance Co. v. Perlberg*, the district court for the District of Maryland allowed an insurer to intervene permissively under Rule 24(b)(1)(B) in a situation similar to that currently before this Court.[78] In *Perlberg*, Penn National issued a commercial general liability policy to the Perlbergs, defendants in an underlying personal injury lawsuit.[79] Penn National filed a federal declaratory judgment action against the Perlbergs, seeking a declaration that it owed no duty to defend or indemnify the Perlbergs in the underlying lawsuit.[80] New Hampshire, another insurer that provided a separate commercial general liability policy to the Perlbergs, had been defending the Perlbergs in the underlying lawsuit.[81] New Hampshire filed a motion to intervene in Penn National's declaratory judgment action to protect its potential contribution rights.[82] The court granted the motion to intervene, concluding that permissive intervention under Rule 24(b) was appropriate.[83] The court explained that the lawsuit could determine both Penn National's declaratory judgment action and New Hampshire's contribution claim in one proceeding while allowing all parties to be heard.[84] The court also explained that the intervention would avoid a competing suit in state court.[85]

Several issues of law and fact in State National's declaratory judgment action against Masse and Allied are common to those in Arch's declaratory judgment action against those same entities. Both Arch and State National seek declaratory judgment that

---

[78] *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Perlberg*, 268 F.R.D. 218, 226 (D. Md. 2010).
[79] *Id.* at 220.
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] *Id.* at 226.
[84] *Id.*
[85] *Id.*

they have no duty to defend or indemnify Masse or Allied in the State-Court Lawsuits.[86] The allegations of the underlying State-Court Lawsuits are the same with respect to both declaratory judgment actions. Although the relevant provisions of the policies issued to Masse by Arch and by State National are not identical, the material factual disputes will most certainly overlap and the legal issues surrounding the application of the silica and pollution exclusions in the policies will be substantially similar. As in *Perlberg*, this lawsuit can be used to determine Arch's declaratory judgment action and State National's declaratory judgment action in one proceeding while allowing all parties to be heard. The Court finds the application of the approach taken by the court in *Perlberg* to this case to be common-sense and well within the Court's discretion under Rule 24(b).

Courts should also consider whether permissive intervention will achieve judicial economy.[87] The Court finds that judicial economy will be served by allowing State National to intervene in this action and that allowing State National's claim in intervention to proceed will not unduly delay or prejudice any parties.[88] Although the Arch declaratory judgment action has been pending for some time, there has been virtually no activity in the case other than motions for summary judgment on the duty to defend, as the parties have been focusing on the underlying State-Court Lawsuits. Further, the issue of whether State National has a duty to defend Masse and Superior as

---

[86] R. Doc. 132; No. 14-1933, R. Doc. 1.

[87] *United States v. Texas Educ. Agency (Lubbock Indep. Sch. Dist.)*, 138 F.R.D. 503, 508 (N.D. Tex.), *aff'd sub nom. United States v. Texas Educ. Agency*, 952 F.2d 399 (5th Cir. 1991) ("[J]udicial economy is a relevant consideration in deciding a motion for permissive intervention." (quoting *Venegas v. Skaggs*, 867 F.2d 527, 529–31 (9th Cir. 1989))).

[88] *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994) ("The intervention rule is intended to prevent multiple lawsuits where common questions of law or fact are involved."); *In re Enron Corp. Sec., Derivative & "ERISA'" Litig.*, 229 F.R.D. 126, 129 (S.D. Tex. 2005) (allowing permissive intervention where the Court found the intervenor did "not seek to create a whole new suit by its intervention, but for pragmatic reasons [sought] to preserve judicial economy by sharing discovery materials that overlap with its own investigation . . . ."); *Texas Educ. Agency*, 138 F.R.D. at 508.

insureds and Allied as an additional insured is fully briefed before this Court. State National's claim in intervention is permissible under Rule 24(b), and the Court will exercise its broad discretion by allowing the claim in intervention to proceed, as "[i]ntervention should generally be allowed where no one would be hurt and greater justice could be attained."[89]

C.  Independent Basis for Jurisdiction

State National must also establish an independent basis for jurisdiction to intervene in No. 14-1933. "It is well-established . . . that a party must have independent jurisdictional grounds to intervene permissively under Rule 24(b)."[90] State National avers that this Court has subject-matter jurisdiction over its intervention pursuant to 28 U.S.C. § 1332(a).[91] 28 U.S.C. § 1332(a) provides that jurisdiction is proper where (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000.[92]

The parties are completely diverse when "the citizenship of each plaintiff is diverse from the citizenship of each defendant."[93] State National, Superior, and Allied are all

---

[89] *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (internal quotation marks omitted).

The Court notes that it dismissed Masse's third-party demands as improper under Rule 14. R. Doc. 321. Rule 14, which governs impleader, sets forth a different standard than the standard for intervention set forth in Rule 24. Rule 14 requires that liability of the third-party defendant "be 'dependent' or 'in some way derivative' of the outcome of the main claim," *Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 265 F.R.D. 266, 272 (E.D. La. 2010), while Rule 24 requires only that the party seeking permissive intervention have "a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B).

[90] *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (internal quotation marks omitted). *See also E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("The first requirement for permissive intervention—an independent basis for jurisdiction—stems not from any explicit language in Rule 24(b), but rather from the basic principle that a court may not adjudicate claims over which it lacks subject matter jurisdiction." (citing FED. R. CIV. P. 82)).

[91] R. Doc. 132 at ¶ 6.

[92] *See* 28 U.S.C. § 1332(a).

[93] *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The parties have not disputed complete diversity. Nonetheless, the Court has a duty to examine all aspects of subject matter jurisdiction *sua sponte. See Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

corporations.[94] For purposes of diversity jurisdiction, a corporation is a citizen of (1) its state of incorporation, and (2) the state in which its principal place of business is located.[95] According to the complaint in intervention, State National is a citizen of Texas, the state of its incorporation and the state in which its principal place of business is located.[96] Defendant-in-intervention Masse is a citizen of Louisiana, the state of its incorporation and the state in which its principal place of business is located.[97] Defendant-in-intervention Allied is a citizen of Louisiana, the state of its incorporation and the state in which its principal place of business is located.[98] Because neither defendant-in-intervention is a citizen of Texas, the state in which State National is a citizen, there is complete diversity.

In addition to complete diversity, Section 1332(a) requires that the amount in controversy exceed $75,000. As the party invoking federal jurisdiction, State National bears the burden of establishing the amount in controversy by a preponderance of the evidence.[99]  In order to determine whether that burden has been met, the Court first inquires whether it is "facially apparent" from the complaint that the amount in controversy exceeds $75,000.[100]  If not, the Court may examine summary judgment-type evidence.[101]

When an insurer seeks a declaratory judgment on coverage issues, the amount in controversy is equal to the "[insurer's] potential liability under the policy, plus potential

---

[94] *See* R. Doc. 135.
[95] 28 U.S.C. § 1332(c)(1).
[96] R. Doc. 132 at ¶ 4.
[97] *Id.* at ¶ 5.
[98] *Id.*
[99] *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 639 (5th Cir. 2003).
[100] *See Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).
[101] *Id.*

attorneys' fees, penalties, statutory damages, and punitive damages."[102]  As set forth in the complaint in this case and the petitions from the State-Court Lawsuits, the state-court plaintiffs allege they have suffered property damage and severe bodily injury and have contracted diseases, including silicosis, Chronic Obstructive Pulmonary Disease, Wegener's granulomatosis. Masse's potential liability for these injuries—and thus State National's derivative indemnity liability—could easily exceed $75,000. When coupled with State National's potential defense obligations, the Court concludes the amount in controversy exceeded the jurisdictional amount at the time this action was filed.[103]

Therefore, the Court has an independent basis for jurisdiction over State National's complaint in intervention pursuant to 28 U.S.C. § 1332(a).

## CONSIDERATION OF DECLARATORY JUDGMENT ACTIONS

State National has intervened to assert a declaratory judgment action against Masse and Allied. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[104]

The Fifth Circuit has explained that, when considering a declaratory judgment action, a district court must engage in a three-step inquiry to determine whether to decide or dismiss a complaint for declaratory relief.[105] First, the Court must determine whether the

---

[102] *Id.* (internal quotation marks omitted).  Unless the insurer seeks to void the entire insurance contract, the amount in controversy is not measured by the face amount of the policy.  *Id.* at 911.

[103] Jurisdictional facts are judged as of the time the complaint is filed. *St. Paul Reinsurance Co. Ltd.*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[104] 28 U.S.C. § 2201.

[105] *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). *See also Aggreko, LLC v. Am. Home Assur. Co.*, No. 14-1215, 2014 WL 6901376, at *3 (E.D. La. Dec. 5, 2014).

action is justiciable.[106] Second, the Court must determine whether it has the authority to grant declaratory relief.[107]  Third, the Court must determine "how to exercise its broad discretion to decide or dismiss a declaratory judgment action."[108]  If State National's claims survive this analysis, the Court will then consider whether State National has a duty to defend the insured under the policies at issue.

A.  Justiciability

The justiciability doctrines of standing, mootness, political question, and ripeness derive from Article III's "case or controversy" requirement.[109] In a declaratory judgment action, justiciability often turns on ripeness.[110] This case is no exception.

The ripeness doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[111]  The purpose of this doctrine is to forestall "entangl[ement] . . . in abstract disagreements" through "avoidance of premature adjudication."[112] "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[113]

The Fifth Circuit has recognized that "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge."[114] This stems primarily from the fact that declaratory relief often involves an *ex ante* determination of rights, *i.e.*, a

---

[106] *Id.*
[107] *Id.*
[108] *Id.*
[109] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012).
[110] *See id*; *Orix*, 212 F.3d at 895; *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989).
[111] *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).
[112] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).
[113] *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149).
[114] *Orix*, 212 F.3d at 896 (internal quotation marks omitted).

determination of rights before an injury has occurred, that "exists in some tension with traditional notions of ripeness."[115] Fortunately, this challenge is not presented today, because the Court's analysis is guided by a distinct subset of ripeness jurisprudence on disputes regarding the duty to defend.

Because the duty to defend does not depend on the outcome of the underlying law suit,[116] a duty-to-defend claim is ripe when the underlying suit is filed.[117] Accordingly, State National's duty-to-defend claim is ripe, and the Court finds the action is justiciable.

B. <u>Authority to Grant Declaratory Relief</u>

The Fifth Circuit has explained that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act."[118] Therefore, the district court cannot consider the merits of a declaratory judgment action when (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff; (2) the state case involves the same issues as those involved in the federal case; and (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act.[119] "The presence of all three factors mandates abstention. The want of any one factor defeats mandatory abstention."[120]

---

[115] *Id.*

[116] *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 52 (La. 2005).

[117] *See Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 110 (5th Cir. 2008) ("An actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's *duty to defend.*") (emphasis in original); *Morad v. Aviz*, No. 12-2190, 2013 WL 1403298, at *2 (E.D. La. Apr. 5, 2013) ("Courts have routinely held that courts may determine an insurer's duty to defend even before the underlying suit is decided."); *Greenwich Ins. Co. v. Capsco Indus., Inc.*, No. 1:14CV297-LG-JCG, 2014 WL 5025856, at *2 (S.D. Miss. Oct. 8, 2014).

[118] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). The Anti-Injunction Act states, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

[119] *Travelers*, 996 F.2d at 776; *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003).

[120] *AIX Specialty Ins. Co. v. W. States Asset Mgmt., Inc.*, No. 12-4342, 2013 WL 4603775, at *2 (N.D. Tex. Aug. 29, 2013).

On March 25, 2016, the Court struck from the record Masse's third-party complaint and amended third-party complaint in which Masse named several of its insurers, including State National.[121] Masse subsequently filed a third-party demand in the State-Court Lawsuits against State National and other insurers on March 28, 2016. As a result, there is a state-court proceeding that involves some of the same parties and issues currently before this Court.[122] State National's intervention against Masse, however, has been pending since January 2015.[123] Thus, there was no "previously filed" cause of action in state court against State National at the time State National filed its intervention. Because all three factors have not been met, the Court is not required to abstain from this matter.[124]

## C.  Discretion to Exercise Jurisdiction

The Court still must consider, in its discretion, whether to exercise jurisdiction over this matter. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," even when subject-matter jurisdiction is otherwise proper.[125] In

---

[121] R. Doc. 321 (Order); R. Doc. 130 (Third-Party Complaint); R. Doc. 169 (Amended Third-Party Complaint).

[122] Superior has not filed an action against State National in the State-Court Lawsuits.

[123] R. Doc. 132.

[124] *Sealed v. Sealed*, 33 F.3d 1379 (5th Cir. 1994) ("[W]e hold that the date at which appellee filed the declaratory action (July 6) is controlling as to the application of the mandatory abstention factors. Because appellant did not file its third-party demand in the state court proceeding until October 7, we find that there was no pending state court action addressing the same issue as that raised in the declaratory judgment and thus affirm the district court's decision to reject mandatory abstention."); *St. Paul Fire & Marine Ins. Co.*, No. 94-253, 1994 WL 261935, at *2 (E.D. La. June 3, 1994) ("St. Paul filed its complaint for declaratory relief before the Lupins filed their third-party demand against St. Paul in the state court action. Thus, this is not a case where the declaratory defendant has been first in raising the issue in state court against the declaratory plaintiff. Because the state court claim regarding coverage was not 'previously filed', the Court is not technically required to abstain from this case."); *Chevron U.S.A., Inc. v. Cureington*, No. 10-0764, 2011 WL 1085661, at *6 (W.D. La. Feb. 18, 2011), *report and recommendation adopted*, No. 10-0764, 2011 WL 1044639 (W.D. La. Mar. 21, 2011) ("[A]bstention is not required because [the plaintiff] filed the instant declaratory judgment action before the [defendants] commenced their suit in state court.").

[125] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

*Wilton v. Seven Falls Co.*, the Supreme Court held that the discretionary standard of *Brillhart v. Excess Ins. Co. of America*[126] governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state-court proceedings.[127] "Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard."[128] There are three overarching considerations in the Supreme Court's analysis in *Brillhart*: federalism, fairness, and efficiency.[129] "Despite the circuits' different expressions of the *Brillhart* factors, each circuit's formulation addresses the same three aspects of the analysis."[130]

The Fifth Circuit uses the Trejo factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and

---

[126] *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942).
[127] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995).
[128] *Id.* at 282.
[129] *Sherwin-Williams*, 343 F.3d at 390.
[130] *Id.*

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[131]

As set forth below, the *Trejo* factors weigh in favor of exercising jurisdiction. Accordingly, the Court will exercise jurisdiction over this matter.

### 1.   Nature of Pending State Court Action

The first *Trejo* factor requires comparison of the declaratory judgment action with the underlying state-court action.[132] "If there is a pending related state proceeding but it is not 'parallel' because it does not involve all the same parties or issues, the federal district court properly considers the extent of similarity between the pending state court and federal court cases in deciding which court should decide the dispute, rather than relying on a *per se* rule."[133]

On March 28, 2016, more than one year after State National filed its complaint in intervention against Masse and Allied in federal court, Masse filed a third-party complaint in the State-Court Lawsuits against State National and other insurers for declaratory judgment regarding the duty to defend and indemnify Masse. Whether State National has a duty to defend or indemnify Superior, however, is not before the state court; thus, the proceedings are not parallel with respect to those issues. Further, whereas the State-Court Lawsuits involve issues of fact, fault, and causation and numerous other parties, the determination of whether State National has a duty to defend Masse, Superior, or Allied as an additional insured involves a straightforward examination of the state-court petitions and the insurance policies State National issued to Masse and

---

[131] *Sherwin-Williams*, 343 F.3d at 388, 390.

[132] *See id.* at 393–94.

[133] *See Sherwin-Williams*, 343 F.3d at 394 n.5.

Superior. The issue of whether State National has a duty to defend Masse, Superior, or Allied under the policies State National issued to Masse and Superior has been fully briefed before this Court. Furthermore, the resolution of the State-Court Lawsuits, including Masse's third-party claim against State National, will not determine State National's duty to provide coverage to Superior, a determination this Court will have to make. The state and federal proceedings are clearly not parallel, as they do not involve all of the same parties and issues.[134] The extent of dissimilarity between the state and federal cases convinces the Court that it should decide the dispute before it. The first *Trejo* factor weighs in favor of exercising jurisdiction.

### 2.    Order of Filing

The *St. Pierre* lawsuit was filed on December 8, 2010,[135] and the *Adams* lawsuit was filed on December 28, 2010.[136] State National filed its crossclaim against Superior on March 8, 2012, and filed its complaint in intervention against Masse on January 14, 2015.[137] State National likely was aware that its insurance coverage of Superior and Masse would become an issue in the pending State-Court Lawsuits. Therefore, State National may have filed its crossclaim and complaint in intervention in anticipation of becoming a party to the pending State-Court Lawsuits.[138] The second *Trejo* factor weighs against exercising jurisdiction.[139]

---

[134] *Id.* at 394 (finding that the lack of a pending parallel state proceeding "weighs strongly against dismissal").

[135] R. Doc. 228-5 at 3.

[136] R. Doc. 228-4 at 5.

[137] R. Doc. 132.

[138] *See Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *4 (E.D. La. Oct. 23, 2013) (noting the plaintiff "was aware the issue of its insurance coverage of [the defendant] would be at issue in the pending state court proceeding," concluding that "it can be assumed that [the plaintiff] filed for Declaratory Judgment on June 10, 2013 in anticipation of becoming a party to that pending state court action," and finding the second *Trejo* factor weighs against exercising jurisdiction).

[139] *See U.S. Fire*, 2015 WL 1416490, at *4.

### 3. Forum Shopping

That State National could have intervened and requested declaratory judgment in the State-Court Lawsuits does not necessarily demonstrate forum shopping.[140] As a preliminary matter, there is no guarantee State National would have been allowed to intervene in the State-Court Lawsuits.[141] Moreover, courts are less likely to find forum shopping where, as here, (1) a foreign insurer files a diversity action in federal court, and (2) the selection of the federal forum does not change the applicable law.[142] "The record does not support a finding that [State National] engaged in impermissible forum shopping by filing this declaratory judgment suit."[143] The third *Trejo* factor weighs in favor of exercising jurisdiction.

### 4. Inequities

The Court cannot conceive of any inequities that flow from allowing State National to proceed in this action while the State-Court Lawsuits remain pending. No party will be prejudiced if this action is resolved before the State-Court Lawsuits. The fourth *Trejo* factor weighs in favor of exercising jurisdiction.

### 5. Convenience of Federal Forum

The State-Court Lawsuits are pending in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[144] The state courthouse for the 17th Judicial District Court for Lafourche Parish is approximately 60 miles west of the federal

---

[140] *See id.*

[141] *See* LA. CODE CIV. PROC. art. 1091 ("A third person having an interest therein may intervene in a pending action *to enforce a right related to or connected with the object of the pending action* against one or more of the parties thereto." (emphasis added)).

[142] *See Sherwin-Williams*, 343 F.3d at 399.

[143] *Id.* at 400. *See also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015) (per curiam).

[144] *See* R. Docs. 228-5, 228-6.

23

courthouse in New Orleans. No party argues that this forum is inconvenient or that either forum is more convenient than the other for the parties or for the witnesses. This factor is neutral.[145]

### 6.      *Judicial Economy*

State National's crossclaims against Superior have been pending for more than four years,[146] and its crossclaims against Allied have been pending for more than one year.[147] State National's claims in intervention against Masse have been pending for more than one year.[148] The issue of whether State National has a duty to defend Superior, Masse, or Allied as an additional insured in the State-Court Lawsuits has been fully briefed before this Court. It would be a waste of judicial resources to dismiss this action and require State National to refile in another forum. Exercising jurisdiction is clearly in the interest of judicial economy.[149] This factor weighs in favor of exercising jurisdiction.

### 7.      *Interpretation of Decree from Parallel State Proceeding*

Although some of the issues with respect to the duty to defend and provide coverage to Masse are before both the state court and this Court, there currently are no state-court rulings affecting this Court's determination of whether State National has a duty to defend or indemnify Masse. Masse only recently filed its third-party demand in

---

[145] *See GlobalSantaFe Drilling Co. v. Quinn*, No. 12-1987, 2012 WL 4471578, at *4 (E.D. La. Sept. 26, 2012) ("It does not appear that the Eastern District of Louisiana is any more convenient or less convenient of a forum; the parties are located outside the state but the witnesses are located within. Therefore, this factor is neutral." (citations omitted)); *Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *5 (E.D. La. Oct. 23, 2013); *Gemini Ins. Co. v. Turner Indus. Grp., LLC*, No. 13-05922, 2014 WL 3530475, at *5 (E.D. La. July 16, 2014).

[146] R. Doc. 29.

[147] R. Doc. 135.

[148] R. Doc. 132.

[149] *See Ironshore*, 624 F. App'x at 168 (finding that the judicial economy factor weighed against dismissal when the parties had "already fully briefed the insurance coverage issues to the district court and entered into extensive factual stipulations"); *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373 (5th Cir. 1998) (finding that judicial economy weighed against dismissal in part because "there [were] no factual disputes between the parties and . . . they have fully briefed the merits of the insurance issues").

state court on March 28, 2016. Meanwhile, the issue of whether State National has a duty to defend or indemnify Masse has been pending before this Court for more than one year, and the parties have already fully briefed the issue of whether State National has a duty to defend Masse. More importantly, the issue of whether State National owes Superior a duty to defend or indemnify is not at issue in state court, and the Court clearly will not need to interpret any decree issued in the State-Court Lawsuits with respect to Superior. The Court finds the seventh *Trejo* factor is neutral.[150]

Four of the *Trejo* factors weigh in favor of exercising jurisdiction, while one weighs against and two are neutral. Accordingly, the Court will exercise jurisdiction over this matter.[151]

## LAW AND ANALYSIS

### A.  The "Eight-Corners Rule"

Under Louisiana law, an insurance policy is a contract and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[152] A liability insurer's duty to defend and the scope of its coverage are separate and distinct issues.[153] Under Louisiana law, an insurer's duty to defend is broader than its obligation to indemnify for damage claims.[154] Louisiana courts apply the "eight-corners rule" to determine whether a liability insurer has the duty to defend a civil action against its insured; courts look to the "four corners" of the plaintiff's petition in the civil action

---

[150] *Ironshore*, 624 F. App'x at 168 ("The seventh and last factor . . . weighs against dismissal. There is no need to construe a state judicial decree to resolve the issues in this case."). *See also U.S. Fire*, 2015 WL 1416490, at *5.

[151] Applying this same analysis to the declaratory judgment action filed by Hanover against Superior and State National (No. 11-2375) and to the declaratory judgment action filed by Arch against Masse and Allied (No. 14-1933) would result in the same conclusion.

[152] *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 192, *on reh'g in part* (July 7, 2008).

[153] *Mossy Motors, Inc. v. Cameras Am.*, 2004-0726 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606, *writ denied*, 2005-1181 (La. 12/9/05), 916 So. 2d 1057.

[154] *Henly v. Phillips Abita Lumber Co.*, 2006-1856 (La. App. 1 Cir. 10/3/07), 971 So. 2d 1104, 1109.

and the "four corners" of the insurance policy to determine whether the insurer owes its insured a duty to defend.[155] One Louisiana court explained as follows:

> Under [the "eight-corners"] analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded.[156]

The duty to defend "arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[157] The insurer has a duty to defend unless the allegations in the petition for damages, as applied to the policy, unambiguously preclude coverage.[158] "Once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside the policy's coverage."[159]

When a party files a motion for summary judgment regarding the duty to defend, the Court may consider only the plaintiff's petition and the face of the policies; the parties cannot present any evidence such as affidavits or depositions.[160] Factual inquiries beyond the petition for damages and the relevant insurance policy are prohibited with respect to the duty to defend.[161] Any ambiguities within the policy are resolved in favor of the insured to effect, not deny, coverage.[162]

---

[155] *Mossy*, 898 So. 2d at 606.

[156] *Id.* (citations omitted).

[157] *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So. 2d 1213, 1218. *See also United Nat'l Ins. Co. v. Paul and Mar's Inc.*, No. 10-799, 2010 WL 2690615, at *2 (E.D. La. July 11, 2011).

[158] *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).

[159] *Treadway v. Vaughn*, 633 So. 2d 626, 628 (La. Ct. App. 1993), *writ denied*, 635 So. 2d 233 (La. 1994).

[160] *Milano v. Bd. of Comm'rs of Orleans Levee Dist.*, 96-1368 (La. App. 4 Cir. 3/26/97), 691 So. 2d 1311, 1314.

[161] *Martco*, 588 F.3d at 872.

[162] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124. Hanover argues that "neither Allied nor Masse can sustain their burden of establishing" that the state-court plaintiffs' bodily injuries or

B. The Policies

State National issued two marine general liability insurance policies to Masse: one that provided coverage from November 15, 2006, through November 15, 2007,[163] and another that provided coverage from November 15, 2007, through November 15, 2008 (collectively, "the Masse policies").[164] State National issued two marine general liability insurance policies to Superior: one that provided coverage from July 11, 2007, through July 11, 2008,[165] and another that provided coverage from July 11, 2008, through July 11, 2009 (collectively, "the Superior policies").[166]

1. General Liability

The Masse policies and the Superior policies contained the following insuring agreement for bodily injury and property damage liability:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[167]

The policies define "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies are alleged."[168] The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[169] The policies provide the following definition of "property damage": "(a) Physical injury to

---

property damage occurred during Hanover's policy periods. R. Doc. 228-1 at 11. This, however, is not the correct standard for motions for summary judgment on the duty to defend.
[163] R. Docs. 242-3, 242-4; R. Docs. 243-3, 243-4.
[164] R. Docs. 242-5, 242-6; R. Docs. 243-5, 243-6.
[165] R. Docs. 244-3, 244-4; R. Docs. 245-3, 245-4.
[166] R. Docs. 244-5, 244-6; R. Docs. 245-5, 245-6.
[167] R. Docs. 242-3 at 4, 242-5 at 4 (Masse policies); R. Docs. 244-3 at 7, 244-5 at 9 (Superior policies).
[168] R. Docs. 242-3 at 16, 242-5 at 16 (Masse policies); R. Docs. 244-3 at 19, 244-5 at 21 (Superior policies).
[169] R. Docs. 242-3 at 13, 242-5 at 13 (Masse policies); R. Docs. 244-3 at 16, 244-5 at 18 (Superior policies).

tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."[170] The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[171]

The policies further provide that they apply to bodily injury and property damage only if the bodily injury or property damage "is caused by an occurrence which takes place during the policy period regardless [of] whether such occurrence is known to the insured" and the bodily injury or property damage "first takes place during the policy period."[172] Under the policies, any property damage or bodily injury "arising from, caused by or contributed to by, or in consequence of an occurrence shall be deemed to take place at the time of the first such damage, . . . even though the occurrence causing such [b]odily [i]njury or [p]roperty [d]amage may be continuous or repeated exposure to substantially the same general harm."[173]

### 2. *Silicon, Silica, and Silicate Exclusion*

The Masse policies and the Superior policies contain the same exclusion for silica and silica-related dust:

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

---

[170] R. Docs. 242-3 at 16, 242-5 at 16 (Masse policies); R. Docs. 244-3 at 19, 244-5 at 21 (Superior policies).
[171] R. Docs. 242-3 at 15, 242-5 at 15 (Masse policies); R. Docs. 244-3 at 18, 244-5 at 20 (Superior policies).
[172] R. Docs. 242-4 at 3, 242-5 at 21 (Masse policies); R. Docs. 244-4 at 3, 244-6 at 3 (Superior policies).
[173] R. Docs. 242-4 at 3, 242-5 at 21 (Masse policies); R. Docs. 244-4 at 3, 244-6 at 3 (Superior policies).

    b.  "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    c.  Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.[174]

The exclusion defines "silica" as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds" and defines "silica-related dust" as "a mixture or combination of silica and other dust or particles."[175]

    *3.  Pollution Exclusion and Pollution Buyback Endorsement*

    The policies issued to Masse and Superior also contain the same pollution exclusion and Pollution Buyback Endorsement. The pollution exclusion provides in relevant part:

    2.  This insurance does not apply to . . .

    **f. Pollution**

    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

        (a) At or from any premises, site or location which is or was at any time owned or occupied by[,] or rented or loaned to, any insured;

        (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

        (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

---

[174] R. Docs. 242-4 at 28, 242-6 at 21 (Masse policies); R. Docs. 244-4 at 26, 244-6 at 27 (Superior policies).
[175] R. Docs. 242-4 at 28, 242-6 at 21 (Masse policies); R. Docs. 244-4 at 26, 244-6 at 27 (Superior policies).

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)     If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)    If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.[176]

The exclusion defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[177]

The Pollution Buyback Endorsement contained in the Masse and Superior policies provide in relevant part:

Notwithstanding any Pollution Exclusion attached to this policy, the exclusion(s) shall not apply provided that the insured establishes that all of the following conditions have been met:

A.  The "occurrence" was accidental and was neither expected nor intended by the Insured. An accident shall not be considered unintended or unexpected unless caused by some intervening event neither expected nor intended by the Insured.

B.  The "occurrence" can be identified as commencing at a specific time and date during the term of this policy.

C.  The "occurrence" became known to the Insured within 72 hours after its commencement and is reported to the Company within 21 days thereafter.

D.  The "occurrence" did not result from the Insured's intentional and willful violation of any government statute, rule or regulation.[178]

---

[176] R. Docs. 242-3 at 4–5, 242-5 at 4–5 (Masse policies); R. Docs. 244-3 at 7–8, 244-5 at 9–10 (Superior policies).
[177] R. Docs. 242-3 at 6, 242-5 at 6 (Masse policies); R. Docs. 244-3 at 9, 244-5 at 11 (Superior policies).
[178] R. Docs. 242-4 at 13, 242-6 at 8 (Masse policies); R. Docs. 244-4 at 13, 244-6 at 14 (Superior policies).

C.  The Allegations of the State-Court Lawsuits

In *Adams, et al. v. Allied Shipyard, Inc., et al.*, the plaintiffs allege they "are residents of a neighborhood that borders" Allied's shipyard.[179] They further allege that Allied, whose shipyard has been operating since the 1960s, has been operating "for decades without appropriate borders to stop the resulting dangerous silica dust produced by its sandblasting from permeating the neighborhood."[180] Allied's alleged negligence has "expos[ed] the residents to dust containing silica sand, a very dangerous substance, as well as other toxic substances."[181] The petition alleges that the plaintiffs' "long, consistent and protracted" exposure and "inhalation of the silica dust" has caused the plaintiffs to contract severe diseases and illnesses "that are painful and disabling," including Wegener's granulomatosis, rheumatoid arthritis, silicosis, and Chronic Obstructive Pulmonary Disease.[182] In the plaintiffs' third amended petition for damages, the plaintiffs named Masse as a defendant.[183] The plaintiffs allege that Masse has "conducted sandblasting and painting operations and [has] allowed dangerous byproduct to drift into the neighborhood," which "caused both personal injuries and property damages to all Plaintiffs."[184]

In *St. Pierre, et al. v. Allied Shipyard, Inc.*, the plaintiffs allege they lived in a residence near Allied's shipyard for approximately eight years preceding 2010.[185] The *St. Pierre* plaintiffs allege that Allied was negligent when performing its operations, which "resulted in the release into the atmosphere and environment in the neighborhoods

---

[179] R. Doc. 242-7 at 2.
[180] *Id.* at 3.
[181] *Id.*
[182] *Id.* at 3–4.
[183] R. Doc. 242-10.
[184] *Id.* at 4.
[185] R. Doc. 243-7 at 2.

surrounding the shipyard of hazardous substances, including, but not limited to, paint, sand and silica."[186] The petition alleges that, as a result, the plaintiffs were exposed to the hazardous substances and "have suffered personal injury, mental anguish, health problems, inconvenience, distress, loss of consortium, fear of disease, and other damages."[187]

**D.** **State National Argues that Allied's Third-Party Demands Against Masse and Superior Do Not Allege an "Occurrence" and, Thus, Coverage is Unambiguously Excluded**

The State National policies apply to bodily injury and property damage only if the bodily injury or property damage "is caused by an occurrence which takes place during the policy period regardless [of] whether such occurrence is known to the insured."[188] The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[189] The policies do not define the term "accident."

Allied filed third-party demands against Masse and Superior in both the *Adams* and *St. Pierre* lawsuits. State National argues that Allied's third-party demands against Masse and Superior in the State-Court Lawsuits do not allege an "occurrence" within the meaning of the policies because they do not allege an "accident" and, therefore, that coverage for Masse and Superior is unambiguously excluded.[190] In effect, State National is asking that the Court consider not only the petitions filed in *Adams* and *St. Pierre* but also the third-party demands filed by Allied. In Louisiana, the issue of whether an insurer has a duty to defend is determined solely by the "'four corners' of the plaintiff's petition

---

[186] *Id.*
[187] *Id.*
[188] R. Docs. 242-4 at 3, 242-5 at 21 (Masse policies); R. Docs. 244-4 at 3, 244-6 at 3 (Superior policies).
[189] R. Docs. 242-3 at 15, 242-5 at 15 (Masse policies); R. Docs. 244-3 at 18, 244-5 at 20 (Superior policies).
[190] R. Doc. 243-1 at 11–12; R. Doc. 245-1 at 11.

and the 'four corners' of [the insurance] policy."[191] State National has not cited any authority, and the Court is not aware of any, that provides that the Court may look beyond the "eight corners" of the petitions filed by the plaintiffs in *Adams* and *St. Pierre* and the insurance policies issued by State National to determine whether State National owes a duty to defend.[192] State National's argument that the third-party demands against Masse and Superior in the State-Court Lawsuits do not allege an "occurrence" within the meaning of the policies pertains only to Allied's third-party demands. Because the Court cannot consider Allied's third-party demands, State National's argument fails.

E.  Underline[State National Argues the Policies' Silica or Silica-Related Dust Exclusion Unambiguously Excludes Coverage]

State National argues that the eight corners of the petition and the silica or silica-related dust exclusion included in its policies taken together unambiguously bar coverage for any liability of the state-court plaintiffs' injuries.[193]

The silica or silica-related dust exclusion contained in the Masse policies and the Superior policies precludes coverage for bodily injury "arising, in whole or in part, out of the actual, alleged, threatened, or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust'" and for property damage "arising, in whole or in part, out of the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of, 'silica' or 'silica-related dust.'"[194]

---

[191] *Mossy Motors*, 898 So. 2d at 606.

[192] *See* R. Doc. 243 and 245. In a supplemental memorandum on the application of the "eight-corners rule," State National argued as follows: "In determining whether an insurer owes a duty to defend, Louisiana utilizes the eight corners rule, 'which means that the court must look at the four corners of the petition and the four corners of the policy in question.' Louisiana law is absolutely unequivocal on this issue. Whether the insurer owes a duty to defend 'is ***determined <u>solely from the plaintiff's pleadings</u>*** and the face of the policy, without consideration of extraneous evidence." R. Doc. 336 at 1–2 (emphasis in original) (citations omitted).

[193] R. Doc. 242-1 at 12–15; R. Doc. 243-1 at 12–15; R. Doc. 244-1 at 12–15; R. Doc. 245-1 at 11–14.

[194] R. Docs. 242-4 at 28, 242-6 at 21 (Masse policies); R. Docs. 244-4 at 26, 244-6 at 27 (Superior policies).

In their original petition for damages, the *Adams* plaintiffs allege that they have been exposed to "silica sand . . . as well as other toxic substances"[195] and "silica dust and other harmful products."[196] The plaintiffs allege that, as a result of Allied's operations, the plaintiffs "have been exposed and made ill by inhalation of the silica dust."[197] The plaintiffs' third amended petition for damages alleges that the defendants "have conducted sandblasting and painting operations and have allowed dangerous byproduct to drift into the neighborhood" and "[t]he byproduct caused both personal injuries and property damages to all Plaintiffs."[198] The plaintiffs unambiguously allege their personal injuries and property damage were caused at least in part by silica dust. Therefore, based on the four corners of the *Adams* petition for damages and the four corners of the silica or silica-related dust exclusion contained in the policies issued to Superior and Masse, which together unambiguously bar coverage for damages arising "in whole or in part" out of inhalation of or exposure to silica or silica-related dust,[199] the Court finds coverage for the bodily injury and property damage the *Adams* plaintiffs allege is unambiguously excluded by the policies. As a result, State National has no duty to defend Masse, Superior, or Allied as an additional insured in the *Adams* lawsuit.[200]

The *St. Pierre* plaintiffs allege that Allied's operations "resulted in the release into the atmosphere and environment in the neighborhoods surrounding the shipyard of hazardous substances, including, but not limited to, paint, sand and silica."[201] The *St.*

---

[195] R. Doc. 242-7 at 3.
[196] *Id.* at 4.
[197] *Id.* at 3.
[198] R. Doc. 242-10 at 4.
[199] R. Docs. 242-4 at 28, 242-6 at 21 (Masse policies); R. Docs. 244-4 at 26, 244-6 at 27 (Superior policies).
[200] There is no need for the Court to analyze the other arguments of State National regarding its duty to defend Masse, Superior, or Allied in the *Adams* lawsuit.
[201] R. Doc. 243-7 at 2.

*Pierre* plaintiffs allege that they were "exposed to these substances and have suffered personal injury . . . and other damages."[202] The plaintiffs, however, never specify which substances *caused* their injuries. The petition alleges as follows: "The Defendant owed a duty of care to the plaintiffs and breached that duty of care by releasing hazardous substances into the neighborhood environment. This breach is the legal cause of the harm suffered by the plaintiffs and entitles plaintiffs to damages."[203] Thus, it is not unambiguously clear that silica or silica-related dust caused the *St. Pierre* plaintiffs' damages in whole or in part. Considering the four corners *St. Pierre* petition for damages and the four corners of the exclusion found in the policies, the Court does not find that the silica exclusion unambiguously bars coverage of the damages alleged in *St. Pierre*.

F.   Underline State National Argues the Alleged Damages Occurred Prior to the Policy Periods and, Thus, Recovery is Unambiguously Excluded under the Policies

The State National policies impose on State National a duty to pay on behalf of its insured any sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the policies apply.[204] The policies further provide that they apply to bodily injury and property damage only if the bodily injury or property damage "is caused by an occurrence which takes place during the policy period regardless [of] whether such occurrence is known to the insured" and the bodily injury or property damage "first takes place during the policy period."[205] The policies contain a so-called "Deemer Clause," which states that any property damage or bodily injury "arising from, caused by or contributed to by, or in consequence of an occurrence shall be deemed to take place at the time of the first such damage, . . . even though the occurrence causing

---

[202] *Id.* at 3.
[203] *Id.*
[204] *See* R. Docs. 242-3 at 4, 242-5 at 4 (Masse policies); R. Docs. 244-3 at 7, 244-5 at 9 (Superior policies).
[205] R. Docs. 242-4 at 3, 242-5 at 21 (Masse policies); R. Docs. 244-4 at 3, 244-6 at 3 (Superior policies).

such [b]odily [i]njury or [p]roperty [d]amage may be continuous or repeated exposure to substantially the same general harm."[206]

State National argues that the policies State National issued to Masse and Superior "were not the policies on the risk at the time of the first injurious exposure, [and] therefore the [State National] policies do not provide coverage" to Masse and Superior in *St. Pierre*.[207]

The *St. Pierre* lawsuit was filed on December 8, 2010.[208] The *St. Pierre* petition alleges that "[f]or approximately eight (8) years, the plaintiffs have lived in a residence . . . located near the shipyard," and during that time, they were exposed to the hazardous substances released by Allied.[209] Based on the allegations in the *St. Pierre* lawsuit, the *St. Pierre* plaintiffs' exposure began in 2002, eight years prior to the suit's filing, and continued at least until 2010, when the petition was filed. The *St. Pierre* plaintiffs allege that, as a result of the exposure, they "have suffered personal injury, mental anguish, health problems," and other damages.[210] They seek damages for physical and mental pain and suffering, medical expenses, damage to personal property.[211]

State National argues that the Deemer Clause "means that all damages are deemed to have occurred . . . at the time of the first injurious exposure."[212] This reading, however, misinterprets the plain language of the clause. The Deemer Clause states that all property damage or bodily injury, even if caused by "continuous or repeated exposure to substantially the same general harm," is "deemed to take place at the time of the first *such*

---

[206] R. Docs. 242-4 at 3, 242-5 at 21 (Masse policies); R. Docs. 244-4 at 3, 244-6 at 3 (Superior policies).
[207] R. Doc. 243-1 at 9; R. Doc. 245-1 at 8–9.
[208] *See* R. Doc. 243-7 at 4.
[209] *Id.* at 2.
[210] *Id.*
[211] *Id.* at 3.
[212] R. Doc. 243-1 at 9; R. Doc. 245-1 at 8–9.

*damage*,"[213] not the first time there was exposure to harmful substances. The policies require only that the injury or damages first take place during the policy periods.[214] With respect to the cause of those injuries or damages, the policies provide only that the occurrence causing the alleged bodily injury or property damage—in this case, the alleged exposure to harmful substances—must "take[] place during the policy period."[215]

A review of the petitions and the policies does not unambiguously preclude a finding that the "first such damage" took place during the policy periods. The Masse policies provided coverage from November 15, 2006, through November 15, 2008. The Superior policies provided coverage from July 11, 2007, through July 11, 2009. Although the four corners of the *St. Pierre* petition state that the plaintiffs' exposure began in 2002,[216] it is not unambiguously clear when the bodily injury or property damage first took place. For example, the petitions do not state when the plaintiffs developed their alleged "personal injur[ies]" and "health problems."[217] "An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[218] Therefore, the eight corners of the state-court petitions and the policies do

---

[213] R. Docs. 242-4 at 3, 242-5 at 21 (Masse policies); R. Docs. 244-4 at 3, 244-6 at 3 (Superior policies).
[214] R. Docs. 242-4 at 3, 242-5 at 21 (Masse policies); R. Docs. 244-4 at 3, 244-6 at 3 (Superior policies).
[215] R. Docs. 242-4 at 3, 242-5 at 21 (Masse policies); R. Docs. 244-4 at 3, 244-6 at 3 (Superior policies).
[216] To determine when property damage or bodily injury "occurs" due to long-term exposure to harmful substances, Louisiana courts apply the exposure theory. *See Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076–77 (La. 1992); *Norfolk S. Corp. v. California Union Ins. Co.*, 2002-0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 192, *writ denied*, 2003-2742 (La. 12/19/03), 861 So. 2d 579; *Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05), 919 So. 2d 758, 765. Under the exposure theory, "[e]ven where the damage or injury was not manifested until after an insurer's policy period, if the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable." *Oxner v. Montgomery*, 34,727 (La. App. 2 Cir. 8/1/01), 794 So. 2d 86, 93, *writ denied*, 803 So. 2d 36 (La. 2001). Thus, applying the exposure theory, the state-court plaintiffs' bodily injuries and property damage "occurred" "during the entire course of [the plaintiffs'] exposure."[216] Thus, "if the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable." *Id.*
[217] *See* R. Doc. 243-7; R. Doc. 245-7.
[218] *Steptore*, 643 So. 2d at 1218.

not unambiguously preclude the possibility that the plaintiffs' "first such damage" took place during the State National policy periods.[219]

G. State National Argues the Policies' Pollution Exclusion and Pollution Buyback Endorsement Unambiguously Exclude Coverage

State National further argues that the eight corners of the petitions and the pollution exclusion and Pollution Buyback Endorsement found in its policies unambiguously preclude coverage.[220] The policies exclude coverage for "any '[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants."[221] The policies define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[222] The insured may still be entitled to coverage, however, if it establishes the four conditions enumerated in the Pollution Buyback Endorsement.[223] The endorsement provides an exception to the total pollution exclusion contained in the policies.[224] State National must establish that the

---

[219] R. Docs. 228-4, 228-5. *See also Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc.*, 611 So. 2d 158, 161–62 (La. Ct. App. 1992) (From a common sense reading of the plaintiffs' petition, we cannot say that the allegations unambiguously rest on an occurrence which began before the policy period. Plaintiffs' petition generally alleges a period of time when acts of liability took place. However, no particular accident is detailed, and no specific allegation is made that the plaintiffs were repeatedly exposed to the same harmful condition prior to the effective date of Lloyd's policies. . . . Accordingly, because plaintiffs' petition does not unambiguously exclude that the occurrence began during the policy period, Lloyd's must defend NPACT. . . .").

[220] R. Doc. 243-1 at 15–20; R. Doc. 245-1 at 15–20.

[221] R. Docs. 242-3 at 4–5, 242-5 at 4–5 (Masse policies); R. Docs. 244-3 at 7–8, 244-5 at 9–10 (Superior policies).

[222] R. Docs. 242-3 at 6, 242-5 at 6 (Masse policies); R. Docs. 244-3 at 9, 244-5 at 11 (Superior policies).

[223] R. Doc. 242-4 at 13 ("Notwithstanding any Pollution Exclusion attached to this policy, the exclusion(s) shall not apply provided that the insured establishes that all of the following conditions have been met . . . ."); R. Doc. 242-6 at 8 (same); R. Doc. 244-4 at 13 (same), 244-6 at 14 (same).

[224] *See* R. Docs. 242-4 at 13, 242-6 at 8 (Masse policies); R. Docs. 244-4 at 13, 244-6 at 14 (Superior policies).

exclusion unambiguously precludes coverage before the Court may consider whether the time-element conditions have been met.[225]

The Louisiana Supreme Court has ruled that a literal application of a total pollution exclusion "would lead to . . . absurd results" and explained that, "[i]n light of the origin of pollution exclusions, as well as the ambiguous nature and absurd consequences which attend a strict reading of these provisions," a total pollution exclusion is "neither designed nor intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind."[226] As a result, the Louisiana Supreme Court has instructed that courts must "attempt to determine the true meaning and interpretation of [the] pollution exclusion."[227] In *Doerr v. Mobil Oil Corporation*, the Louisiana Supreme Court explained that the applicability of such an exclusion in any given case must necessarily turn on three considerations: (1) whether the insured is a "polluter" within the meaning of the exclusion; (2) whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and (3) whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.[228] If the insurer fails to show these three questions are answered in the affirmative, the total pollution exclusion is not applicable and the court need not examine whether the

---

[225] *See Martco*, 588 F.3d at 880, 883–84 ("[The insurer] bears the burden of proving the applicability of an exclusionary clause within the Policy. If [the insurer] cannot unambiguously show an exclusion applies, the Policy must be construed in favor of coverage." (citations omitted)).

[226] *Doerr*, 774 So. 2d at 135.

[227] *Id.* at 125.

[228] *Id.* The exclusion in *Doerr* precluded coverage for bodily or personal injury, advertising injury, or property damage that "would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." *Doerr*, 774 So. 2d at 122. The *Doerr* policy defined "pollutants" as "solid[,] liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste." *Id.* The court instead found it was "appropriate to construe a pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution, and under such interpretation, the clause will not be applied to all contact with substances that may be classified as pollutants." *Id.* at 135.

time-element conditions, or exceptions, contained in the endorsement are met.[229] The Louisiana Supreme Court expressly stated that these factors must be considered "in any given case,"[230] which this Court construes to include decisions involving a motion for summary judgment on the duty to defend, as well as motions involving the duty to indemnify.

Although the *Doerr* factors should be considered in the duty-to-defend context, the Court is nevertheless limited to the eight corners of the petitions and the policies when deciding whether to apply a total pollution exclusion as written. This is borne out by an examination of Louisiana state court cases facing this issue. In *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*, for example, a Louisiana appellate court found that, considering the four corners of the underlying petitions and the four corners of the time-element pollution exclusion, the insurer had no duty to defend because the exclusion unambiguously precluded coverage.[231] The court in *Lodwick* addressed *Doerr* as "the seminal case addressing pollution exclusions" and applied the *Doerr* factors using only the four corners of the plaintiffs' petition for damages.[232] For example, the court found that the insureds were "'polluters' under the *Doerr* test" because "[t]hroughout the plaintiffs' petition for damages, all defendants . . . are alleged to be oil field operators and producers."[233] The

---

[229] *See Smith v. Reliance Ins. Co. of Illinois*, 01-888 (La. App. 5 Cir. 1/15/02), 807 So. 2d 1010, 1020 ("[I]n light of the recent pronouncement by the Supreme Court in *Doerr* and after consideration of the above-mentioned factors, we conclude that the insurer in this case failed to meet its burden of proving the applicability of Exclusion 10 of the policy, the total pollution exclusion. Additionally, although the parties extensively dispute the applicability of the limited buy-back endorsement to this exclusion, we find it unnecessary to reach this issue based on our holding that Exclusion 10 does not unambiguously exclude coverage based on the facts alleged in this case.").

[230] *Doerr*, 774 So. 2d at 135.

[231] *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*, 48,312 (La. App. 2 Cir. 10/2/13), 126 So. 3d 544, *writ denied*, 2013-2898 (La. 2/28/14), 134 So. 3d 1176. The plaintiffs in *Lodwick* alleged that the activities of nearby oil and gas operators "caused pollution damages on or adjacent to their property." *Id.* at 547.

[232] *Lodwick*, 126 So. 3d at 560.

[233] *Id.* at 561.

court also found that the substances that caused the plaintiffs' injuries were "pollutants" within the meaning of the total pollution exclusion because the plaintiffs "allege[d] that their property was contaminated by . . . [substances that] qualify as chemicals, contaminants, irritants, or waste under the various exclusions."[234] The court concluded that "[p]laintiffs' allegations make it clear that all three *Doerr* factors are met."[235] The court thus found that the pollution exclusion in the policies at issue did unambiguously exclude coverage and granted summary judgment declaring that the insurers had no duty to defend.[236]

In *Smith v. Reliance Insurance Company of Illinois*,[237] the plaintiffs alleged that the release of noxious odors carried by the wind to the plaintiffs' homes and properties caused their damages.[238] Before the *Smith* court was a motion for partial summary judgment on the insurer's duty to defend.[239] When ruling on the motion, the court used the eight-corners rule and examined a pollution exclusion with a buyback endorsement similar to the exclusion and endorsement currently before this Court as well as the allegations contained in the plaintiff's petition.[240] The court applied the *Doerr* factors based on the facts alleged in the petition and concluded that the insurer "failed to meet its burden of proving the applicability" of the pollution exclusion.[241] The court explained that, "although the parties extensively dispute[d] the applicability of the limited buy-back endorsement to th[e] exclusion," it was unnecessary to reach the issue of whether the

---

[234] *Id.*

[235] *Id.*

[236] *Id.*

[237] *Smith v. Reliance Ins. Co. of Illinois*, 01-888 (La. App. 5 Cir. 1/15/02), 807 So. 2d 1010, 1020.

[238] *Id.* at 1013.

[239] *Id.*

[240] *Id.* at 1019–20. *See also id.* at 1015 (explaining that the insurer's duty to defend "is determined by the allegations of the plaintiff's petition with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage").

[241] *Id.* at 1020.

buyback endorsement applied because the court found the exclusion itself did not unambiguously exclude coverage given the *Doerr* analysis.[242] The court affirmed the judgment of the trial court, which found that the insurer had a duty to defend.[243]

To apply the *Doerr* factors in this case, the Court must first determine whether the insured is a "polluter" within the meaning of the exclusion, using the eight corners of the petitions and the policies. The *Doerr* court described this issue as a fact-based determination for which courts should consider "the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion."[244] State National is unable to establish from the eight corners that either Superior or Masse is a "polluter" within the meaning of the exclusion. For example, State National is unable to point to any information within the eight corners regarding the nature of Superior's or Masse's business, whether that type of business presents a risk of pollution, and whether Superior or Masse has a separate pollution policy. Accordingly, the Court is unable to conclude that Superior and Masse are "polluters" within the meaning of the exclusion contained in the policies.

Second, the Court must determine whether the injury-causing substance is a "pollutant" within the meaning of the exclusion. The Court should consider "the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the

---

[242] *Id.*
[243] *Id.* at 1013.
[244] *Doerr*, 774 So. 2d at 135.

substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion."[245] State National is unable to establish from the eight corners that the substances the *St. Pierre* plaintiffs allege caused their personal injuries and property damage are "pollutants" within the meaning of the exclusion such that the exclusion unambiguously precludes coverage. In the *St. Pierre* petitions for damages, the plaintiffs broadly describe the substances causing their injuries. The *St. Pierre* plaintiffs allege that they were exposed to "hazardous substances, including, but not limited to, paint, sand and silica."[246] The *St. Pierre* plaintiffs allege that Allied breached its "duty of care by releasing hazardous substances into the neighborhood environment, . . . [which] is the legal cause of the harm suffered by the plaintiffs."[247]  The Court is unable to determine the nature of the injury-causing substances, their typical usages, the quantity of any discharges, whether the substances were being used for their intended purpose when the injury took place, or whether the substances are ones that would be viewed as pollutants as the term is generally understood. The Court reiterates that "any ambiguity should be interpreted in favor of the insured."[248] State National has failed to establish that the injury-causing substance in *St. Pierre* is a "pollutant" within the meaning of the exclusion.

Finally, the Court must consider whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy, a fact-based determination.[249] The Court "should consider whether the

---

[245] *Id.*
[246] R. Doc. 243-7 at 2.
[247] *Id.* at 3.
[248] *Doerr*, 774 So. 2d at 125.
[249] *Id.* at 135.

pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were active or passive, and any other factor the trier of fact deems relevant."[250] The Court is unable to determine from the eight corners whether a pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, or whether the actions of the alleged polluter were active or passive. State National has failed to establish that there was a discharge, dispersal, seepage, migration, release or escape of a pollutant by the insured within the meaning of the policy.

Because State National has failed to establish that Masse and Superior are polluters, that the substance or substances to which the *St. Pierre* plaintiffs were exposed were pollutants, or that there was a discharge within the meaning of the policies, State National has failed to establish that the pollution exclusion unambiguously precludes coverage. Therefore, the Court need not reach the issue of whether Masse or Superior met the time-element conditions necessary to establish the exception to the pollution exclusion.[251] State National's motion for summary judgment on its duty to defend Superior, Masse, or Allied in the *St. Pierre* suit is denied.

## CONCLUSION

**IT IS ORDERED** that State National's Motion for Summary Judgment Finding No Duty to Defend Masse or Allied in the Underlying *Adams* Lawsuit is **GRANTED**.[252]

---

[250] *Id.* at 136.

[251] *See Smith*, 807 So. 2d at 1020 ("[I]n light of the recent pronouncement by the Supreme Court in *Doerr* and after consideration of the above-mentioned factors, we conclude that the insurer in this case failed to meet its burden of proving the applicability of Exclusion 10 of the policy, the total pollution exclusion. . . . Additionally, although the parties extensively dispute the applicability of the limited buy-back endorsement to this exclusion, we find it unnecessary to reach this issue based on our holding that Exclusion 10 does not unambiguously exclude coverage based on the facts alleged in this case.").

[252] R. Doc. 242.

**IT IS FURTHER ORDERED** that State National's Motion for Summary Judgment Finding No Duty to Defend Superior or Allied in the Underlying *Adams* Lawsuit is **GRANTED**.[253]

**IT IS FURTHER ORDERED** that State National's Motion for Summary Judgment Finding No Duty to Defend Masse or Allied in the Underlying *St. Pierre* Lawsuit is **DENIED**.[254]

**IT IS FURTHER ORDERED** that State National's Motion for Summary Judgment Finding No Duty to Defend Superior or Allied in the Underlying *St. Pierre* Lawsuit is **DENIED**.[255]

New Orleans, Louisiana, this 8th day of April, 2016.

*Susie Morgan*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[253] R. Doc. 244.
[254] R. Doc. 243.
[255] R. Doc. 245.