## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HANOVER INSURANCE COMPANY,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | **No. 11-2375 c/w** |
| **VERSUS** | **14-1930, 14-1933,** |
| | **16-2490** |
| **SUPERIOR LABOR SERVICES,** | **SECTION "E"** |
| **INC., ET AL.,** | |
| **Defendants** | |

*Applies to:* **14-1930, 14-1933**

### ORDER AND REASONS

Before the Court are two motions for summary judgment filed by Arch Insurance Company regarding its duty to defend and duty to indemnify Masse and Superior as insureds and Allied as an additional insured under Superior's and Masse's policies.[1] Because the motions involve identical policy language and the same state-court petitions, the Court will consider these motions together. For the reasons set forth below, Arch's motions are **DENIED**.

### BACKGROUND

A.  <u>State-Court Lawsuits</u>

This is a consolidated action. The case originates from two personal-injury actions ("State-Court Lawsuits") filed in state court against Allied Shipyard, Inc. ("Allied"): *Adams, et al. v. Allied Shipyard, Inc., et al.* and *St. Pierre, et al. v. Allied Shipyard, Inc.*[2] The plaintiffs in the State-Court Lawsuits allege Allied negligently performed

---

[1] R. Docs. 250, 251. Unless otherwise indicated, "R. Doc." refers to record documents in the consolidated matter, No. 11-2375.

[2] The petitions for damages in each State-Court Lawsuit are attached to Arch's motions for summary judgment. *See* R. Docs. 250-2, 251-2 (*Adams* Petition for Damages and First, Second, Third, and Fourth Amended Petitions for Damages); R. Doc. 369-2 (*Adams* Sixth Amended Petition for Damages); R. Docs. 250-3, 251-3 (*St. Pierre* Petition for Damages).

sandblasting activities and seek resulting damages.[3] The two cases were consolidated in state court on September 9, 2013.[4]

In both State-Court Lawsuits, Allied filed third-party demands against its contractors that performed the sandblasting jobs, including Superior Labor Services, Inc. ("Superior")[5] and Masse Contracting, Inc. ("Masse").[6] Specifically, Allied alleges that Superior and Masse contracted with Allied to perform certain job responsibilities and to indemnify Allied under master work contracts.[7] Allied seeks indemnity from Superior and from Masse with respect to the claims in the State-Court Lawsuits.[8]

The plaintiffs in *Adams* amended their petition to name Superior, Masse, other subcontractors, and Gray Insurance Company as direct defendants.[9]

The contractors against which Allied brought third-party demands "in turn sought coverage, defense and/or indemnity from their various insurers for the periods of time when these jobs were allegedly performed, which prompted the insurers to file lawsuits in federal courts."[10]

On August 12, 2016, Allied filed a cross-claim and third-party demand in state court against its direct insurer, Gray, and against Masse and Superior's insurers, seeking a declaration that it has a right to defense and indemnity as well as a declaration of its status as an additional insured under Masse and Superior's policies.[11]

---

[3] *See* R. Docs. 250-2, 251-2, 250-3, 251-3, 369-2.
[4] *See* R. Doc. 261-5.
[5] *See* R. Docs. 244-12, 245-8.
[6] *See* R. Docs. 242-12, 242-13, 243-8, 243-9.
[7] *See* R. Docs. 242-12, 242-13, 243-8, 243-9, 244-12, 245-8.
[8] *See* R. Docs. 242-12, 242-13, 243-8, 243-9, 244-12, 245-8.
[9] *See* R. Doc. 250-2, 251-2.
[10] R. Doc. 174-1 at 2.
[11] *See* R. Doc. 250-2, 251-2.

The *Adams* plaintiffs filed their sixth amended petition in state court on April 29, 2016.[12] The *St. Pierre* plaintiffs have not amended their original petition, which was filed on December 8, 2010.[13]

## B. Declaratory Actions in Federal Court

Four federal actions related to the State-Court Lawsuits are pending in this Court. The Court consolidated the first three cases—11-2375, 14-1930, and 14-1933—on November 21, 2014, and consolidated 16-2490 with those cases on August 10, 2016.[14]

The two actions involving Arch are 14-1930 and 14-1933.

### 1. *No. 14-1930*

On August 22, 2014, Arch Insurance Company brought an action for declaratory judgment against Superior and Allied.[15] Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Superior," with respect to Superior's request for defense and indemnity in the State-Court Lawsuits.[16] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional assured status under the Superior policies and defense and indemnity of Allied in the State-Court Lawsuits.[17] Arch seeks a declaration against Superior and Allied that Arch has no defense or indemnity obligation to Superior or Allied in the State-Court Lawsuits.[18] Arch also seeks recovery of the portion of defense costs already incurred by it on behalf of Superior.[19]

---

[12] R. Doc. 369-2.

[13] R. Docs. 250-3, 251-3.

[14] *See* R. Docs. 108, 368.

[15] *Arch Ins. Co. v. Superior Labor Servs., Inc. et al.*, No. 14-1930.

[16] No. 14-1930, R. Doc. 1 at ¶ 3.

[17] *Id.* at ¶ 4. Arch alleges that Allied is not entitled to additional assured coverage "to the extent there is no evidence that any loss occurred" while Superior was performing work for Allied and during the Arch policy periods. *Id.* at ¶¶ 20–21.

[18] *Id.* at ¶¶ 21, 47.

[19] *Id.* at ¶ 47.

### 2. *No. 14-1933*

On August 22, 2014, Arch also filed an action for declaratory judgment against Masse and Allied.[20] Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Masse," with respect to Masse's request for defense and indemnity in the State-Court Lawsuits.[21] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional assured status under the Masse policies and defense and indemnity of Allied in the State-Court Lawsuits.[22] Arch seeks a declaration against Masse and Allied that Arch has no defense or indemnity obligation to Masse or Allied in the State-Court Lawsuits.[23] Arch also seeks recovery of the portion of defense costs already incurred by it on behalf of Masse.[24]

C. Arch's Motions for Summary Judgment

Arch filed two motions for summary judgment on December 1, 2015 regarding its duty to defend and duty to indemnify Masse and Superior as insureds and Allied as an additional insured under the policies issued to Masse and Superior.[25]

The first motion pertains to Arch's duty to defend and duty to indemnify Superior as an insured and Allied as an additional insured in the underlying *Adams* and *St. Pierre* lawsuits.[26] Arch argues it has no duty under the policies to defend or indemnify them in the *Adams* or *St. Pierre* suits.[27]

---

[20] *Arch Ins. Co. v. Masse Contracting, Inc. et al.*, No. 14-1933.
[21] No. 14-1933, R. Doc. 1 at ¶ 3.
[22] *Id.* at ¶ 4. Arch alleges that Allied is not entitled to additional assured coverage "to the extent there is no evidence that any loss occurred" while Masse was performing work for Allied and during the Arch policy periods. *Id.* at ¶¶ 20–21.
[23] *Id.* at ¶ 46.
[24] *Id.* at ¶ 12.
[25] R. Docs. 250, 251.
[26] R. Doc. 250.
[27] *Id.*

The second motion pertains to Arch's duty to defend and duty to indemnify Masse as an insured and Allied as an additional insured in the *Adams* and *St. Pierre* lawsuits.[28] Allied argues it has no duty under the policies to defend or indemnify them in the *Adams* or *St. Pierre* suits.[29]

## CONSIDERATION OF DECLARATORY JUDGMENT ACTIONS

Arch asserts declaratory judgment actions against Masse and Superior as insureds under the policies and Allied as an additional insured. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[30]

The Fifth Circuit has explained that, when considering a declaratory judgment action, a district court must engage in a three-step inquiry to determine whether to decide or dismiss a complaint for declaratory relief.[31] First, the Court must determine whether the action is justiciable.[32] Second, the Court must determine whether it has the authority to grant declaratory relief.[33] Third, the Court must determine "how to exercise its broad discretion to decide or dismiss a declaratory judgment action."[34] Because Arch is seeking

---

[28] R. Doc. 251.

[29] *Id.* at 24. After filing its motions for summary judgment, Arch filed a supplemental memorandum in support of the motions. R. Doc. 369. In its supplemental memorandum, Arch informed the Court that multiple interested insurers are in the process of settling the claims of the plaintiffs in the *Adams* suit against Masse and Superior. *Id.* at 1. The Court has not been informed that a final settlement has been reached.

[30] 28 U.S.C. § 2201.

[31] *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). *See also Aggreko, LLC v. Am. Home Assur. Co.*, No. 14-1215, 2014 WL 6901376, at *3 (E.D. La. Dec. 5, 2014).

[32] *Id.*

[33] *Id.*

[34] *Id.*

declaratory relief on two causes of action—its duty to defend and its duty to indemnify—the Court will conduct this analysis with respect to both.[35]

## THE DUTY TO DEFEND

A.     Justiciability

The justiciability doctrines of standing, mootness, political question, and ripeness derive from Article III's "case or controversy" requirement.[36] In a declaratory judgment action, justiciability often turns on ripeness.[37] This case is no exception.

The ripeness doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[38]  The purpose of this doctrine is to forestall "entangl[ement] . . . in abstract disagreements" through "avoidance of premature adjudication."[39] "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[40]

The Fifth Circuit has recognized that "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge."[41] This stems primarily from the fact that declaratory relief often involves an *ex ante* determination of rights, *i.e.*, a determination of rights before an injury has occurred, that "exists in some tension with traditional notions of ripeness."[42] Fortunately, this challenge is not presented today,

---

[35] Because the question of the justiciability of Arch's duty to indemnify may turn on conclusions reached on the duty to defend claims, the Court discusses the justiciability of the duty to indemnify after the full analysis on Arch's duty to defend.

[36] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012).

[37] *See id*; *Orix*, 212 F.3d at 895; *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989).

[38] *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).

[39] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

[40] *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149).

[41] *Orix*, 212 F.3d at 896 (internal quotation marks omitted).

[42] *Id.*

because the Court's analysis is guided by a distinct subset of ripeness jurisprudence on disputes regarding the duty to defend.

Because the duty to defend does not depend on the outcome of the underlying law suit,[43] a duty-to-defend claim is ripe when the underlying suit is filed.[44] Accordingly, Arch's duty-to-defend claims are ripe, and the Court finds the actions are justiciable.

B.    Mandatory Abstention

The Fifth Circuit has explained that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act."[45] Therefore, the district court cannot consider the merits of a declaratory judgment action when (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff; (2) the state case involves the same issues as those involved in the federal case; and (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act.[46] The first factor in this analysis is not met in this case, as the declaratory defendant in this matter—Allied—did not previously file a cause of action in state court against the declaratory plaintiff—Arch—before Arch filed its declaratory judgment actions in this Court.[47] "The presence of all

---

[43] *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 52 (La. 2005).

[44] *See Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 110 (5th Cir. 2008) ("An actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's *duty to defend*.") (emphasis in original); *Morad v. Aviz*, No. 12-2190, 2013 WL 1403298, at *2 (E.D. La. Apr. 5, 2013) ("Courts have routinely held that courts may determine an insurer's duty to defend even before the underlying suit is decided."); *Greenwich Ins. Co. v. Capsco Indus., Inc.*, No. 1:14CV297-LG-JCG, 2014 WL 5025856, at *2 (S.D. Miss. Oct. 8, 2014).

[45] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). The Anti-Injunction Act states, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

[46] *Travelers*, 996 F.2d at 776; *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003).

[47] Allied filed a cross claim and third-party demand in state court seeking a declaration that the insurers of Masse and Superior owe Allied a duty to defend and a duty to indemnify, but this cross-claim and third-party demand was filed nearly two years after Arch filed its declaratory actions in this Court.

three factors mandates abstention. The want of any one factor defeats mandatory abstention."[48] Because the first factor has not been met, abstention is not mandatory.

C.    Discretion to Exercise Jurisdiction on the Duty to Defend

Because there is no mandatory abstention, the Court must consider, in its discretion, whether to exercise jurisdiction over this matter. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," even when subject-matter jurisdiction is otherwise proper.[49] In *Wilton v. Seven Falls Co.*, the Supreme Court held that the discretionary standard of *Brillhart v. Excess Ins. Co. of America*[50] governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state-court proceedings.[51] "Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard."[52] There are three overarching considerations in the Supreme Court's analysis in *Brillhart*: federalism, fairness, and efficiency.[53] "Despite the circuits' different expressions of the *Brillhart* factors, each circuit's formulation addresses the same three aspects of the analysis."[54]

The Fifth Circuit uses the Trejo factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

---

[48] *AIX Specialty Ins. Co. v. W. States Asset Mgmt., Inc.*, No. 12-4342, 2013 WL 4603775, at *2 (N.D. Tex. Aug. 29, 2013).
[49] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).
[50] *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942).
[51] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995).
[52] *Id.* at 282.
[53] *Sherwin-Williams*, 343 F.3d at 390.
[54] *Id.*

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[55]

1.   Nature of Pending State Court Action

The first *Trejo* factor requires comparison of the declaratory judgment action with the underlying state-court action.[56] "If there is a pending related state proceeding but it is not 'parallel' because it does not involve all the same parties or issues, the federal district court properly considers the extent of similarity between the pending state court and federal court cases in deciding which court should decide the dispute, rather than relying on a *per se* rule."[57]

On August 22, 2014, Arch filed its declaratory judgment actions in federal court, seeking a declaration of whether Arch has a duty to defend or indemnify Masse or Superior as insureds or Allied as an additional insured. At the time Arch filed its declaratory judgment actions in this Court, the question of Arch's duty to defend or

---

[55] *Sherwin-Williams*, 343 F.3d at 388, 390.
[56] *See id.* at 393–94.
[57] *See Sherwin-Williams*, 343 F.3d at 394 n.5.

indemnify Masse and Superior as insureds and Allied as an additional insured was not before the state court. Two years after Arch filed its declaratory actions in this Court, Allied filed a cross claim and third-party demand in state court seeking a declaration that the insurers of Masse and Superior, which includes Arch, owe Allied duties to defend and indemnify.[58] The determination of whether Arch has a duty to defend Masse or Superior as insureds or Allied as an additional insured involves a straightforward examination of the state-court petitions and the insurance policies Arch issued to Masse and Superior. This issue was fully briefed before this Court well before Allied filed its third-party demand in state court. The first *Trejo* factor is neutral because of the unique posture of this case.

    2.    <u>Order of Filing</u>

      The *St. Pierre* lawsuit was filed on December 8, 2010,[59] and the *Adams* lawsuit was filed on December 28, 2010.[60] Arch filed its declaratory judgment actions in federal court on August 22, 2014.[61] Arch likely was aware that its insurance coverage of Superior and Masse would become an issue in the pending State-Court Lawsuits. Therefore, Arch may have filed its crossclaim and complaint in intervention in anticipation of becoming a party

---

[58] *See* R. Doc. 250-2, 251-2.
[59] R. Docs. 250-3, 251-3.
[60] R. Docs. 250-2, 251-2.
[61] *Arch Ins. Co. v. Superior Labor Servs, Inc., et al.*, No. 14-1930 (E.D. La.); *Arch Ins. Co. v. Masse Contracting, Inc., et al.*, No. 14-1933 (E.D. La.).

to the pending State-Court Lawsuits.[62] The second *Trejo* factor weighs against exercising jurisdiction.[63]

### 3.   Forum Shopping

That Arch could have intervened and requested declaratory judgment in the State-Court Lawsuits does not necessarily demonstrate forum shopping.[64] Courts are less likely to find forum shopping where, as here, (1) a foreign insurer files a diversity action in federal court, and (2) the selection of the federal forum does not change the applicable law.[65] "The record does not support a finding that [Arch] engaged in impermissible forum shopping by filing this declaratory judgment suit."[66] The third *Trejo* factor weighs in favor of exercising jurisdiction.

### 4.   Inequities

The Court cannot conceive of any inequities that flow from allowing Arch to proceed in this action while the State-Court Lawsuits remain pending. No party will be prejudiced if this Court decides whether Arch has a duty to defend Masse or Superior as

---

[62] *See Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *4 (E.D. La. Oct. 23, 2013) (noting the plaintiff "was aware the issue of its insurance coverage of [the defendant] would be at issue in the pending state court proceeding," concluding that "it can be assumed that [the plaintiff] filed for Declaratory Judgment on June 10, 2013 in anticipation of becoming a party to that pending state court action," and finding the second *Trejo* factor weighs against exercising jurisdiction).
[63] *See U.S. Fire*, 2015 WL 1416490, at *4.
[64] *See id.*
[65] *See Sherwin-Williams*, 343 F.3d at 399.
[66] *Id.* at 400. *See also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015) (per curiam).

insureds or Allied as an additional insured before resolution of the State-Court Lawsuits. The fourth *Trejo* factor weighs in favor of exercising jurisdiction.

        5.    <u>Convenience of Federal Forum</u>

The State-Court Lawsuits are pending in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[67] The state courthouse for the 17th Judicial District Court for Lafourche Parish is approximately 60 miles west of the federal courthouse in New Orleans. No party argues that this forum is inconvenient or that either forum is more convenient than the other for the parties or for the witnesses. This factor is neutral.[68]

        6.    <u>Judicial Economy</u>

Arch's two declaratory judgment actions in this Court have been pending for more than two years. All cases surrounding this controversy have been before this Court for five years. The issue of whether Arch has a duty to defend Masse or Superior as insureds or Allied as an additional insured in the State-Court Lawsuits has been fully briefed before this Court. Exercising jurisdiction is in the interest of judicial economy.[69] This factor weighs in favor of exercising jurisdiction.

---

[67] *See* R. Docs. 228-5, 228-6.

[68] *See GlobalSantaFe Drilling Co. v. Quinn*, No. 12-1987, 2012 WL 4471578, at *4 (E.D. La. Sept. 26, 2012) ("It does not appear that the Eastern District of Louisiana is any more convenient or less convenient of a forum; the parties are located outside the state but the witnesses are located within. Therefore, this factor is neutral." (citations omitted)); *Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *5 (E.D. La. Oct. 23, 2013); *Gemini Ins. Co. v. Turner Indus. Grp., LLC*, No. 13-05922, 2014 WL 3530475, at *5 (E.D. La. July 16, 2014).

[69] *See Ironshore*, 624 F. App'x at 168 (finding that the judicial economy factor weighed against dismissal when the parties had "already fully briefed the insurance coverage issues to the district court and entered into extensive factual stipulations"); *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373 (5th Cir. 1998) (finding that judicial economy weighed against dismissal in part because "there [were] no factual disputes between the parties and . . . they have fully briefed the merits of the insurance issues").

7.      Interpretation of Decree from Parallel State Proceeding

Although a part of the State-Court Lawsuits and this action are parallel, filings by Allied seeking a declaration of its rights to defense and indemnity were made well after the filing of Arch's declaratory judgment actions in this Court. This Court is unaware of a ruling by the state court on the issue of Allied's rights to defense or indemnity, and there is no indication that such a ruling is imminent. This Court need not interpret any decree issued in the State-Court Lawsuits to determine whether Arch has a duty to defend. The seventh *Trejo* factor weighs in favor exercising jurisdiction.[70]

Four of the *Trejo* factors weigh in favor of exercising jurisdiction, while one weighs against and two are neutral. The Court will exercise jurisdiction over the question of the duty to defend in this matter.[71]

D.      Louisiana Law on the Duty to Defend

Under Louisiana law, an insurance policy is a contract and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[72] A liability insurer's duty to defend and the scope of its coverage are separate and

---

[70] *Ironshore*, 624 F. App'x at 168 ("The seventh and last factor . . . weighs against dismissal. There is no need to construe a state judicial decree to resolve the issues in this case."). *See also U.S. Fire*, 2015 WL 1416490, at *5.

[71] Applying this same analysis to the declaratory judgment action filed by Hanover against Superior and State National (No. 11-2375) and to the declaratory judgment action filed by Arch against Masse and Allied (No. 14-1933) would result in the same conclusion.

[72] *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 192, *on reh'g in part* (July 7, 2008).

distinct issues.[73] Under Louisiana law, an insurer's duty to defend is broader than its obligation to indemnify for damage claims.[74]

### 1. The "Eight-Corners Rule"

Louisiana courts apply the "eight-corners rule" to determine whether a liability insurer has the duty to defend a civil action against its insured; courts look to the "four corners" of the plaintiff's petition in the civil action and the "four corners" of the insurance policy to determine whether the insurer owes its insured a duty to defend.[75] One Louisiana court explained as follows:

> Under [the "eight-corners"] analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded.[76]

The duty to defend "arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[77] The insurer has a duty to defend unless the allegations in the petition for damages, as applied to the policy, unambiguously preclude coverage.[78] "Once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside the policy's coverage."[79]

---

[73] *Mossy Motors, Inc. v. Cameras Am.*, 2004-0726 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606, *writ denied*, 2005-1181 (La. 12/9/05), 916 So. 2d 1057.

[74] *Henly v. Phillips Abita Lumber Co.*, 2006-1856 (La. App. 1 Cir. 10/3/07), 971 So. 2d 1104, 1109.

[75] *Mossy*, 898 So. 2d at 606.

[76] *Id.* (citations omitted).

[77] *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So. 2d 1213, 1218. *See also United Nat'l Ins. Co. v. Paul and Mar's Inc.*, No. 10-799, 2010 WL 2690615, at *2 (E.D. La. July 11, 2011).

[78] *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).

[79] *Treadway v. Vaughn*, 633 So. 2d 626, 628 (La. Ct. App. 1993), *writ denied*, 635 So. 2d 233 (La. 1994).

When a party files a motion for summary judgment regarding the duty to defend, the Court may consider only the plaintiff's petition and the face of the policies; the parties cannot present any evidence such as affidavits or depositions.[80] Factual inquiries beyond the petition for damages and the relevant insurance policy are prohibited with respect to the duty to defend.[81] Any ambiguities within the policy are resolved in favor of the insured to effect, not deny, coverage.[82]

### 2.  The Policies

Arch issued two marine general liability insurance policies to Superior: one that provided coverage from July 11, 2005 through July 11, 2006,[83] and another that provided coverage from July 11, 2006 through July 11, 2007 (collectively, "the Superior policies").[84] Arch issued a marine general liability insurance policy to Masse, which provided coverage from November 15, 2005, through November 15, 2006 ("the Masse policy").[85]

### a.  General Liability

The Masse policy and the Superior policies contained the following insuring agreement for bodily injury and property damage liability:

> The company will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of[:] A. bodily injury, or B. property damages to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the Assured seeking damages on account of such bodily injury or property damage . . . .[86]

---

[80] *Milano v. Bd. of Comm'rs of Orleans Levee Dist.*, 96-1368 (La. App. 4 Cir. 3/26/97), 691 So. 2d 1311, 1314.

[81] *Martco*, 588 F.3d at 872.

[82] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124. Hanover argues that "neither Allied nor Masse can sustain their burden of establishing" that the state-court plaintiffs' bodily injuries or property damage occurred during Hanover's policy periods. R. Doc. 228-1 at 11. This, however, is not the correct standard for motions for summary judgment on the duty to defend.

[83] R. Doc. 272-5.

[84] R. Doc. 272-6.

[85] R. Docs. 251-7.

[86] R. Docs. 251-7 at 11 (Masse policy); R. Docs. 272-5 at 11, 272-6 at 11 (Superior policies).

The policies define "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."[87] The policies provide the following definition of "property damage": "(1) Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."[88] The policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Assured."[89]

### b. *Health Hazard and Silica Exclusions*

The Masse policy and the Superior policies contain the same "Health Hazard Exclusion":

> Health Hazard Exclusion: Notwithstanding anything to the contrary contained in this policy, no coverage is granted by this policy for any claim or expense (including but not limited to defense cost) arising out of the following exclusion.
>
> This policy shall not apply to:
>
> a)     Polychlorinated Biphenyl (P.C.B.) . . .
>
> b)     Silica: Bodily Injury or Personal Injury or Loss of, or damage to or loss of use of property directly or indirectly caused by Silica.
>
> c)     Lead . . .
>
> It is further agreed that this policy shall not apply to any liability for Bodily Injury or Personal Injury and/or Property Damage made by or on behalf of any person or persons directly or indirectly, on account of continuous, intermittent or repeated exposures to,

---

[87] R. Docs. 251-7 at 8 (Masse policy); R. Docs. 272-5 at 8, 272-6 at 8 (Superior policies).
[88] R. Docs. 251-7 at 9–10 (Masse policy); R. Docs. 272-5 at 9–10, 272-6 at 9–10 (Superior policies).
[89] R. Docs. 251-7 at 9 (Masse policy); R. Docs. 272-5 at 9, 272-6 at 9 (Superior policies).

ingestion, inhalation, or absorption of, any substances, materials, products, wastes or emissions, noise or environmental disturbance where the Assured is or may be liable for any reason, including, but not limited to, as a result of the manufacture, production, extraction, sale, handling, utilization, distribution, disposal or creation by or on behalf of the Assured of such substances, materials, products, wastes, or emissions, noise or environmental disturbance.

For the purpose of this clause, the term "Personal Injury" shall mean bodily injury or insult (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease, disability, detention, humiliation or wrongful eviction.[90]

c. *Pollution Exclusion and Pollution Limitation Endorsement*

The policies issued to Masse and Superior also contain the same pollution exclusion and Pollution Limitation Endorsement. The pollution exclusion provides in relevant part:

Pollution Limitation Endorsement

Such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water.

This exclusion shall not apply, however, provided that the Assured establishes that all of the following conditions have been met:

(A)      The discharge, dispersal, release or escape was accidental and was neither expected not intended by the Assured. A discharge, dispersal, release or escape shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the Assured.

(B)      The discharge, dispersal, release or escape can be identified as commencing at a specific time and date during the term of this policy.

(C)      The discharge, dispersal, release or escape became known to the Assured within 72 hours after its commencement.

---

[90] R. Docs. 251-7 at 5 (Masse policy); R. Docs. 272-5 at 5, 272-6 at 5 (Superior policies).

> (D)    The discharge, dispersal, release or escape was reported in writing to these underwriters within 30 days after having become known to the Assured.

> (E)    The discharge, dispersal, release or escape did not result from the Assured's intentional and willful violation of any government statute, rule or regulation.[91]

### 3.   The Allegations of the State-Court Lawsuits

In *Adams, et al. v. Allied Shipyard, Inc., et al.*, the plaintiffs allege in their sixth amended petition they "are residents of a neighborhood that borders" Allied's shipyard.[92] They further allege Allied, whose shipyard has been operating since the 1960s, has been operating "without appropriate borders to stop the resulting by-products, including, but not limited to, sand, dirt/dust, paint and various metals, produced by its sandblasting from permeating the neighborhood."[93] The *Adams* plaintiffs allege Allied's negligence has "expos[ed] the residents to dust, sand, paint and various metals, as well as other substances."[94] The petition alleges that the plaintiffs' "long, consistent and protracted" exposure and "inhalation of . . . by-products" has caused the plaintiffs to contract severe diseases and illnesses "that are painful and disabling," including Wegener's granulomatosis, IgA nephropathy, Scleroderma, coughing, wheezing, Chronic Obstructive Pulmonary Disease, and migraine headaches.[95]

In *St. Pierre, et al. v. Allied Shipyard, Inc.*, the plaintiffs allege they lived in a residence near Allied's shipyard for approximately eight years preceding 2010.[96] The *St. Pierre* plaintiffs allege that Allied was negligent when performing its operations, which

---

[91] R. Docs. 251-7 at 34 (Masse policy); R. Docs. 272-5 at 47, 272-6 at 35 (Superior policies).
[92] R. Docs. 250-2, 251-2.
[93] R. Docs. 250-2, 251-2.
[94] R. Doc. 369-2 at 4.
[95] *Id.*
[96] R. Docs. 250-3, 251-3.

"resulted in the release into the atmosphere and environment in the neighborhoods surrounding the shipyard of hazardous substances, including, but not limited to, paint, sand and silica."[97] The petition alleges that, as a result, the plaintiffs were exposed to the hazardous substances and "have suffered personal injury, mental anguish, health problems, inconvenience, distress, loss of consortium, fear of disease, and other damages."[98]

E.      Arch Argues the Health Hazard Exclusion Contained in its Policies Unambiguously Excludes Coverage

Arch argues the eight corners of the petitions and the health hazard exclusion contained in its policies taken together unambiguously preclude coverage for any liability of the state-court plaintiffs' injuries.[99]

The health hazard exclusion in Arch's policies excludes coverage for "Bodily Injury and/or Property Damage . . . of any person directly or indirectly on account of continuous, intermittent or repeated exposures to ingestion, inhalation, or absorption of, any substances . . . ."[100] The *St. Pierre* plaintiffs' claims that they were exposed to "paint, sand, and silica" for an eight-year period and the *Adams* plaintiffs' claim in the sixth amended petition that they were "made ill by inhalation . . . due to prolonged exposure to the by-products."[101] Arch argues these claims are unambiguously excluded from coverage under the health hazard exclusion.[102]

---

[97] R. Docs. 250-3, 251-3.
[98] R. Docs. 250-3, 251-3.
[99] R. Doc. 369 at 9.
[100] R. Doc. 251-7 at 5 (Masse policy); R. Docs. 272-5 at 5, 272-6 at 5 (Superior policies).
[101] R. Doc. 369.
[102] R. Doc. 369.

Arch points the Court to *Cobb v. Sipco Services & Marine Inc.*[103] in support of its position. In *Cobb*, the court found that a policy containing an identical health hazard exclusion unambiguously precluded coverage for the plaintiff's bodily injuries alleged in his petition.[104] Because the language of the health hazard exclusion in *Cobb* is the same as the language in Arch's policies, Arch argues this Court should interpret the policy the same way, finding the exclusion unambiguously excludes coverage.[105] Interpreting the language of the policy, however, is only one part of the duty to defend inquiry, and the Court must also consider the plaintiffs' petition. The *Cobb* plaintiff's petition alleged only bodily injury, which the court found was clearly excluded from coverage.[106] Both the *Adams* and *St. Pierre* petitions, however, allege other types of damage in addition to bodily injury.[107] This distinction is crucial and renders *Cobb* distinguishable from the case now before the Court.

*American Home Assurance Co. v. Arrow Terminals, LLC*,[108] is more analogous to this case. In *American Home Assurance*, the court considered the plaintiff's motion for summary judgment with respect to whether the health hazard exclusion unambiguously precluded coverage for the plaintiffs' injuries. In *American Home Assurance*, Everette Avenue Townhomes, a plaintiff in the underlying action, alleged damages related to the physical injury and destruction to tangible property within its townhome units as a result of defective Chinese drywall.[109] Arrow Terminals, Inc. acquired and sold the Chinese

---

[103] No. 95-2131, 1997 WL 369633 (E.D. La. June 27, 1997).
[104] *Id.* at *3.
[105] R. Doc. 369 at 11.
[106] *See id.* at *1.
[107] R. Doc. 250-3 at 2 (*St. Pierre* Petition for Damages); R. Doc. 369-2 at 5 (*Adams* Sixth Amended Petition for Damages).
[108] No. 11-1278, 2013 WL 1909597 (M.D. Fla. May 8, 2013).
[109] *Id.* at *1.

drywall used in the construction of the townhomes.[110] American Home Assurance Company issued a policy to Arrow, which included a health hazard exclusion with language identical to the health hazard exclusion in this case.[111] The court held the plain language of the health hazard exclusion made it clear that the exclusion applies only to claims "arising out of the human ingestion of hazardous substances" and "the exclusion ha[d] no application to the property damage claims asserted in the Underlying Complaints."[112] Because the plaintiff's complaint in the underlying suit alleged property damage, the court held the health hazard exclusion did not defeat American Home Assurance Company's duty to defend its insured, Arrow.[113] The court held "to the extent that the health hazard exclusion's reference to "Property Damage" renders it ambiguous, said ambiguity must be construed in favor of . . . the insured [and] [t]herefore, Plaintiffs cannot satisfy their burden of proving that the allegations of the Underlying Complaints are solely and entirely within the health hazard exclusion."[114]

The Arch health hazard exclusion states the policy will not apply to any "Bodily Injury or Personal Injury and/or *Property Damage*" caused by exposure to various substances.[115] But like the language of the health hazard exclusion in *American Home Assurance*, Arch's health hazard exclusion applies to "ingestion, inhalation, or absorption of any substances, materials, products, [or] wastes . . . ."[116] The *Adams* sixth amended petition alleges the plaintiffs suffered "property damage,"[117] and the *St. Pierre* petition

---

[110] *Id.*
[111] *Id.* at *3.
[112] *Id.* at *6.
[113] *Id.*
[114] *Id.*
[115] R. Doc. 251-7 at 5 (Masse policy); R. Docs. 272-5 at 5, 272-6 at 5 (Superior policies) (emphasis added).
[116] R. Doc. 251-7 at 6 (Masse policy); R. Docs. 272-5 at 5, 272-6 at 5 (Superior policies).
[117] R. Doc. 369-2 at 5.

alleges plaintiffs suffered "damage to personal property."[118] The Court finds the exclusion has no application to the *Adams* and *St. Pierre* plaintiffs' property damage claims—property damage cannot be the result of "ingestion, inhalation, or absorption" of hazardous substances. To the extent Arch's health hazard exclusion's reference to "Property Damage" renders the exclusion ambiguous, the ambiguity must be construed in favor of Masse and Superior as insureds and Allied as an additional insured.

Arch's argument that the health hazard exclusion unambiguously excludes the plaintiffs' allegations also fails because the exclusion does not unambiguously exclude *all* of the plaintiffs' other alleged damages. The court in *Smith v. Reliance Insurance Company of Illinois* analyzed a nearly identical health hazard exclusion to determine whether Reliance—the insurer—owed a duty to defend.[119] The court held Reliance could not escape its duty to defend by relying on its health hazard exclusion because the exclusion did not unambiguously exclude coverage for all of the plaintiffs' alleged damages.[120] Specifically, the *Smith* court held Reliance's health hazard exclusion did not unambiguously exclude coverage for plaintiffs' alleged inconvenience, loss of enjoyment of life, or harm caused by the increased presence of mosquitoes in the area.[121] Because the health hazard exclusion did not unambiguously exclude coverage for all of the plaintiff's alleged damages, Reliance owed a defense to its insured.[122]

This Court is faced with the same scenario. The health hazard exclusion in Arch's policies excludes coverage for "Bodily Injury and/or Property Damage . . . of any person directly or indirectly on account of continuous, intermittent or repeated exposures to

---

[118] R. Docs. 250-3 at 2, 251-3 at 2.
[119] *Smith*, 807 So. 2d at 1021.
[120] *Id.*
[121] *Id.*
[122] *Id.*

ingestion, inhalation, or absorption of, any substances . . . ."[123] In their sixth amended petition, the *Adams* plaintiffs allege the "by-products caused bodily injuries, personal injuries and/or property damages to all Plaintiffs."[124] The *Adams* plaintiffs also allege claims of fear of disease, loss of income, medical expenses, loss of value of property, and inconvenience, among other claims.[125] The *St. Pierre* petition alleges the plaintiffs have suffered "damage to personal property" as a result of Allied's negligence.[126] The *St. Pierre* plaintiffs also allege mental anguish, inconvenience, loss of consortium, fear of disease, loss of enjoyment of life, economic damages, loss of income, and loss of service and society.[127] Many of the plaintiffs' claims—such as loss of income, loss of value of property, inconvenience, mental anguish, and economic damages—do not arise out of the "ingestion, inhalation, or absorption" of various substances. Arch's health hazard exclusion does not unambiguously exclude coverage for all of the plaintiffs' alleged damages. The existence of even one allegation that is not precluded by the health hazard exclusion gives rise to Arch's duty to defend.[128]  Allied cannot satisfy its burden of proving all the allegations of the petitions are unambiguously excluded by the health hazard exclusion.

Considering the *Adams* sixth amended petition for damages, the *St. Pierre* petition for damages, and the language of the exclusion found in the policies, the Court finds that

---

[123] R. Docs. 251-7 at 5 (Masse policy); R. Docs. 272-5 at 5, 272-6 at 5 (Superior policies).
[124] R. Doc. 369-2 at 5.
[125] R. Docs. 250-2, 251-2.
[126] R. Docs. 250-3 at 2.
[127] R. Docs. 250-3, 251-3.
[128] *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 52 (La. 4/12/05) ("Unless unambiguous exclusion of all of the plaintiff's claims is shown, the duty to defend arises."); *Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc*., 611 So. 2d 158, 161 (La. Ct. App. 1992) ("Even though the plaintiffs' petition may allege numerous claims for which coverage is excluded under the policy, the duty to defend may nonetheless exist if there is at least a single allegation in plaintiff's petition under which coverage is not unambiguously excluded.").

the health hazard exclusion does not unambiguously bar coverage of the damages alleged in the State-Court lawsuits.

F.   Arch Argues the Silica Exclusion Contained in its Policies Unambiguously Excludes Coverage

 Arch argues separately and alternatively that the eight corners of the petitions and the silica exclusion included in the health hazard exclusion taken together unambiguously bar coverage for any liability to the state-court plaintiffs' injuries.[129]

The silica exclusion in Arch's policies precludes coverage for "Bodily Injury or Personal Injury or loss of, damage to, or loss of use of property directly or indirectly caused by Silica."[130]

In their sixth amended petition for damages, the *Adams* plaintiffs allege that their exposure to "by-products, including, but not limited to, sand, dirt/dust, paint and various metals" caused their injuries.[131] The sixth amended petition does not unambiguously limit the cause of the plaintiffs' injuries to bodily injury, personal injury, or property damage directly or indirectly caused by Silica, and the exclusion therefore does not apply.

Arch urges the Court to apply to Arch's policies the rationale the Court applied in its prior ruling that State National's silica exclusion precludes a duty to defend in the *Adams* matter.[132] First, State National's motion for summary judgment was decided on the *Adams* plaintiffs' third amended petition.[133] This motion for summary judgment is being decided on the *Adams* plaintiffs' sixth amended petition, which removed all reference to exposure to silica or silica-related dust.[134] Furthermore, State National's

---

[129] R. Doc. 250-1 at 16; R. Doc. 251-1 at 16; R. Doc. 369 at 13.
[130] R. Docs. 251-7 at 5 (Masse policy); R. Docs. 272-5 at 5, 272-6 at 5 (Superior policies).
[131] R. Doc. 369-2.
[132] R. Doc. 369 at 13.
[133] *See* R. Doc. 347.
[134] R. Doc. 369-2.

policy precluded coverage for bodily injury "arising, *in whole or in part*, out of the actual, alleged, threatened, or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust'" and for property damage "arising, *in whole or in part*, out of the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of, 'silica' or 'silica-related dust.'"[135] Arch's silica exclusion does not contain the same "in whole or in part" language. As a result, Arch's silica exclusion does not unambiguously exclude all allegations of the *Adams* plaintiffs' sixth amended petition.

The *St. Pierre* petition for damages also does not unambiguously limit the cause of the plaintiffs' injuries to the hazardous properties of silicon, silica, or silicate. The *St. Pierre* plaintiffs allege that Allied's operations "resulted in the release into the atmosphere and environment in the neighborhoods surrounding the shipyard of hazardous substances, including, but not limited to, paint, sand and silica,"[136] which caused the plaintiffs' personal injuries and property damage.[137]

Considering the *Adams* sixth amended petition for damages, the *St. Pierre* petition for damages, and the language of the exclusion found in the policies, the Court finds that the silicon, silica, and silicate exclusion does not unambiguously bar coverage of the damages alleged in the State-Court Lawsuits.

G. <u>Arch Argues the Policies' Pollution Exclusion and Pollution Limitation Endorsement Unambiguously Exclude Coverage</u>

Arch further argues separately and alternatively that the eight corners of the petitions and the Pollution Limitation Endorsement found in its policies unambiguously preclude coverage.[138] The pollution exception excludes coverage for "any claim arising out

---

[135] R. Doc. 347 at 33 (emphasis added).
[136] R. Docs. 250-3, 251-3.
[137] R. Docs. 250-3, 251-3.
[138] R. Doc. 250-1 at 11; R. Doc. 251-1 at 11; R. Doc. 369 at 16.

of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, alkaloids, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including all oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water."[139]

The Louisiana Supreme Court has ruled that a literal application of a total pollution exclusion "would lead to . . . absurd results" and explained that, "[i]n light of the origin of pollution exclusions, as well as the ambiguous nature and absurd consequences which attend a strict reading of these provisions," a total pollution exclusion is "neither designed nor intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind."[140] As a result, the Louisiana Supreme Court has instructed that courts must "attempt to determine the true meaning and interpretation of [the] pollution exclusion."[141] In *Doerr v. Mobil Oil Corporation*, the Louisiana Supreme Court explained that the applicability of such an exclusion in any given case must necessarily turn on three considerations: (1) whether the insured is a "polluter" within the meaning of the exclusion; (2) whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and (3) whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.[142] The Louisiana Supreme Court expressly stated that the *Doerr* factors must be

---

[139] R. Docs. 251-7 at 34 (Masse policy); R. Docs. 272-5 at 47, 272-6 at 35 (Superior policies).
[140] *Doerr*, 774 So. 2d at 135.
[141] *Id.* at 125.
[142] *Id.* The exclusion in *Doerr* precluded coverage for bodily or personal injury, advertising injury, or property damage that "would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." *Doerr*, 774 So. 2d at 122. The *Doerr* policy defined "pollutants" as "solid[,] liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste." *Id.* The court instead found it was "appropriate to construe a pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution, and under such interpretation, the clause will not be applied to all contact with substances that may be classified as pollutants." *Id.* at 135.

considered "in any given case,"[143] which this Court construes to include decisions involving a motion for summary judgment on the duty to defend, as well as motions involving the duty to indemnify.

Although the *Doerr* factors should be considered in the duty-to-defend context, the Court is nevertheless limited to the eight corners of the petitions and the policies when deciding whether to apply a total pollution exclusion as written.[144] This is borne out by an examination of Louisiana state court cases facing this issue. In *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*,[145] for example, a Louisiana appellate court found that, considering the four corners of the underlying petitions and the four corners of the time-element pollution exclusion, the insurer had no duty to defend because the exclusion unambiguously precluded coverage.[146] The court in *Lodwick* addressed *Doerr* as "the seminal case addressing pollution exclusions" and applied the *Doerr* factors using only the four corners of the plaintiffs' petition for damages.[147] For example, the court found that the insureds were "'polluters' under the *Doerr* test" because "[t]hroughout the plaintiffs' petition for damages, all defendants . . . are alleged to be oil field operators and producers."[148] The court also found that the substances that caused the plaintiffs' injuries were "pollutants" within the meaning of the total pollution exclusion because the plaintiffs "allege[d] that their property was contaminated by . . . [substances that] qualify as chemicals,

---

[143] *Doerr*, 774 So. 2d at 135.
[144] Arch's argues that the Court should consider documents from the Louisiana Department of Environmental Quality in its consideration of the *Doerr* factors. When determining whether there is a duty to defend, however, the Court must adhere to the "eight-corners rule," and therefore only consider the *Adams* and *St. Pierre* petitions and the respective policies.
[145] *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*, 48,312 (La. App. 2 Cir. 10/2/13), 126 So. 3d 544, *writ denied*, 2013-2898 (La. 2/28/14), 134 So. 3d 1176. The plaintiffs in *Lodwick* alleged that the activities of nearby oil and gas operators "caused pollution damages on or adjacent to their property." *Id.* at 547.
[146] R. Doc. 227-1 at 16.
[147] *Lodwick*, 126 So. 3d at 560. Hanover incorrectly argues that the court in *Lodwick* "not[ed] that *Doerr* did not apply." R. Doc. 227-1 at 16.
[148] *Id.* at 561.

contaminants, irritants, or waste under the various exclusions."[149] The court concluded that "[p]laintiffs' allegations make it clear that all three *Doerr* factors are met."[150] The court thus found that the pollution exclusion in the policies at issue did unambiguously exclude coverage and granted summary judgment declaring that the insurers had no duty to defend.[151]

In *Smith v. Reliance Insurance Company of Illinois*, the plaintiffs alleged that the release of noxious odors carried by the wind to the plaintiffs' homes and properties caused their damages.[152] Before the *Smith* court was a motion for partial summary judgment on the insurer's duty to defend.[153] When ruling on the motion, the court used the eight-corner rule and examined a pollution exclusion with a buyback endorsement similar to the exclusion and endorsement currently before this Court as well as the allegations contained in the plaintiff's petition.[154] The court applied the *Doerr* factors based on the facts alleged in the petition and concluded that the insurer "failed to meet its burden of proving the applicability" of the pollution exclusion.[155] The court explained that, "although the parties extensively dispute[d] the applicability of the limited buy-back endorsement to th[e] exclusion," it was unnecessary to reach the issue of whether the buyback endorsement applied because the court found the exclusion itself did not

---

[149] *Id.*
[150] *Id.*
[151] *Id.*
[152] *Smith*, 807 So. 2d at 1013.
[153] *Id.*
[154] *Id.* at 1019–20. *See also id.* at 1015 (explaining that the insurer's duty to defend "is determined by the allegations of the plaintiff's petition with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage").
[155] *Id.* at 1020.

unambiguously exclude coverage given the *Doerr* analysis.[156] The court affirmed the judgment of the trial court, which found that the insurer had a duty to defend.[157]

To apply the *Doerr* factors in this case, the Court must first determine whether the insured is a "polluter" within the meaning of the exclusion, using the eight corners of the petitions and the policies. The *Doerr* court described this issue as a fact-based determination for which courts should consider "the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion."[158] Arch is unable to establish from the eight corners that Allied is a "polluter" within the meaning of the exclusion.[159] For example, Arch is unable to point to any information within the eight corners regarding the nature of Allied's business, whether that type of business presents a risk of pollution, and whether Allied has a separate pollution policy. Accordingly, the Court is unable to conclude that Allied is a "polluter" within the meaning of the exclusion contained in the policies.[160]

Second, the Court must determine whether the injury-causing substance is a "pollutant" within the meaning of the exclusion. The Court should consider "the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the

---

[156] *Id.*
[157] *Id.* at 1013.
[158] *Doerr*, 774 So. 2d at 135.
[159] The Court has already found that neither Masse nor Superior are "polluters" under the *Doerr* analysis. R. Doc. 341 at 30; R. Doc. 342 at 37–38; R. Doc. 347 at 42.
[160] The Court has already found that it has not been established that either Masse or Superior are "polluters" for the purposes of the *Doerr* analysis. R. Docs. 341, 342, 347.

substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion."[161] Arch is unable to establish from the eight corners that the substances the plaintiffs in the State-Court Lawsuits allege caused their personal injuries and property damage are "pollutants" within the meaning of the exclusion such that the exclusion unambiguously precludes coverage. In the *Adams* and *St. Pierre* petitions for damages, the plaintiffs broadly describe the substances causing their injuries. The *Adams* plaintiffs, in their sixth amended petition, allege that "prolonged exposure to . . . by-products" which include "sand, dirt/dust, paint and various metals" caused their injuries.[162] The *St. Pierre* plaintiffs allege that "hazardous substances, including, but not limited to, paint, sand and silica" caused their injuries.[163] The Court is unable to determine the nature of the injury-causing substances, their typical usages, the quantity of any discharges, whether the substances were being used for their intended purpose when the injury took place, or whether the substances are ones that would be viewed as pollutants as the term is generally understood. The Court reiterates that "any ambiguity should be interpreted in favor of the insured."[164] Arch has failed to establish that the injury-causing substance is a "pollutant" within the meaning of the exclusion.

Finally, the Court must consider whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy, a fact-based determination.[165] The Court "should consider whether the

---

[161] *Doerr*, 774 So. 2d at 135.
[162] R. Doc. 369-2 at 4.
[163] R. Doc. 227-6 at 1.
[164] *Doerr*, 774 So. 2d at 125.
[165] *Id.* at 135.

pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were active or passive, and any other factor the trier of fact deems relevant."[166] The Court is unable to determine from the eight corners whether a pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, or whether the actions of the alleged polluter were active or passive. Arch has failed to establish that there was a discharge, dispersal, seepage, migration, release or escape of a pollutant by the insured within the meaning of the policy.

Because Arch has failed to answer all three *Doerr* factors in the affirmative, Arch cannot establish that the pollution exclusion unambiguously precludes coverage.

Arch argues coverage may be unambiguously excluded if the insureds have not met the notice requirements in the pollution limitation endorsement without regard to the *Doerr* factors.[167] Although the notice requirements may be conditions precedent to the determination of whether the pollution limitation provision is triggered[168] with respect to whether it has a duty to defend Masse or Superior as insureds or Allied as an additional insured, Arch must first establish that the pollution exclusion unambiguously precludes coverage.[169] The Court has found Arch failed to show all three *Doerr* factors are answered in the affirmative and, as a result, the total pollution exclusion is not applicable. As stated

---

[166] *Id.* at 136.
[167] R. Doc. 250-1 at 12; R. Doc. 251-1 at 12.
[168] *See* R. Doc. 251-7 at 34 ("This exclusion shall not apply, however, provided that the Assured establishes that all of the following conditions have been met . . . ."); R. Doc. 250-7 at 34 (same); R. Doc. 251-7 at 34 (same). *See also In re Matter of Complaint of Settoon Towing, L.L.C.*, 720 F.3d 268, 278 (5th Cir. 2013) (interpreting a pollution buyback provision as establishing conditions precedent for an exclusion to not apply, noting the insured must "'establish' that the 'conditions' have been met in order for the absolute pollution exclusion not to apply).
[169] *See Martco*, 588 F.3d at 880, 883–84 ("[The insurer] bears the burden of proving the applicability of an exclusionary clause within the Policy. If [the insurer] cannot unambiguously show an exclusion applies, the Policy must be construed in favor of coverage." (citations omitted)).

by the Louisiana Fifth Circuit in *Smith v. Reliance Insurance Company of Illinois*, "[A]fter consideration of the [*Doerr*] factors, we conclude that the insurer in this case failed to meet its burden of proving the applicability of . . . the total pollution exclusion. . . . [W]e find it unnecessary to reach this issue [of the applicability of the limited buy-back endorsement] based on our holding that Exclusion 10 does not unambiguously exclude coverage based on the facts alleged in this case."[170] Therefore, the Court need not examine whether Masse or Superior as insureds, or Allied as an additional insured, met the time-element conditions necessary to establish the exception to the pollution exclusion.[171]

Arch's motions for summary judgment with respect to the applicability of the pollution exclusion on its duty to defend are denied.

## JUSTICIABILITY OF THE DUTY TO INDEMNIFY

In its supplemental memorandum in support of its pending motions for summary judgment, Arch contends the Court's decision with respect to Arch's duty to indemnify Masse or Superior as insureds under the policies and Allied as an additional insured is ripe for decision.[172]

As stated with respect to the justiciability of the duty to provide a defense, the justiciability doctrines of standing, mootness, political question, and ripeness derive from

---

[170] *See Smith v. Reliance Ins. Co. of Illinois*, 807 So. 2d 1010, 1020 (La. App. 5 Cir. 1/15/02).

[171] *See Smith*, 807 So. 2d at 1020 ("[I]n light of the recent pronouncement by the Supreme Court in *Doerr* and after consideration of the above-mentioned factors, we conclude that the insurer in this case failed to meet its burden of proving the applicability of Exclusion 10 of the policy, the total pollution exclusion. Additionally, although the parties extensively dispute the applicability of the limited buy-back endorsement to this exclusion, we find it unnecessary to reach this issue based on our holding that Exclusion 10 does not unambiguously exclude coverage based on the facts alleged in this case."). *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*, 941 F. Supp. 623, 629 (S.D. Tex. 1996), *aff'd*, 112 F.3d 184 (5th Cir. 1997) (applying Texas law) ("The Court observes that [the pollution buyback] clause is not itself an exclusion . . . but rather serves merely to reinstate coverage that has been found to be excluded.").

[172] R. Doc. 369.

Article III's "case or controversy" requirement.[173] In a declaratory judgment action, justiciability often turns on ripeness.[174]

The ripeness doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[175] The purpose of this doctrine is to forestall "entangl[ement] . . . in abstract disagreements" through "avoidance of premature adjudication."[176] "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[177]

Under Louisiana law, an insurer's duty to indemnify generally cannot be determined until after the underlying suit has been resolved and the insurer is found liable.[178] The exception to this general rule is that the duty to indemnify is justiciable before the insurer's liability is determined if "the insurer has no duty to defend and the same reasons that negate the duty to defend will likewise negate any possibility the insurer will ever have a duty to indemnify."[179] Because the Court has found Arch has a duty to defend Masse and Superior as insureds and Allied as an additional insured, this exception does not apply.

---

[173] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012).

[174] *See id*; *Orix*, 212 F.3d at 895; *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989).

[175] *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).

[176] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

[177] *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149).

[178] *Allstate Ins. Co. v. Emp. Liab. Assurance Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971); *see also Corgeis Ins. Co. v. Sch. Bd. of Allen Parish*, No. 07-30844, 2008 WL 2325632, at *2–3 (5th Cir. June 6, 2008) ("[A]fter the district court concludes that the insurer has a duty to defend, the indemnity issue is nonjusticiable pending resolution of the liability suit."). Unlike the duty to defend, the duty to indemnify "is triggered by the actual facts that establish liability in the underlying lawsuit. *Guar. Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000), overruled on other grounds as recognized by *OneBeacon Ins. Co. v. Don's Bldg. Supply Inc.*, 553 F.3d 901, 903 (5th Cir. 2008) (per curiam).

[179] *Med. Protective Co. v. Turner*, No. 15-0366, 2015 WL 3631701, at *4 (N.D. Tex. June 10, 2015) (emphasis added).

The liability in the underlying state-court lawsuits has not yet been determined, and the Court therefore cannot determine as a matter of law whether Arch is obligated to indemnify Masse and Superior as insureds or Allied as an additional insured. The duty to indemnify is not justiciable at this time.

Accordingly, Arch's motions for summary judgment with respect to its duty to indemnify Masse and Superior as insureds and Allied as an additional insured in the *Adams* and *St. Pierre* lawsuits are denied without prejudice.

## CONCLUSION

**IT IS ORDERED** that Arch's Motion for Summary Judgment with respect to its duty to defend Superior as an insured or Allied as an additional insured in the Underlying *Adams* or *St. Pierre* Lawsuits is **DENIED WITH PREJUDICE**.[180]

**IT IS FURTHER ORDERED** that Arch's Motion for Summary Judgment with respect to its duty to indemnify Superior as an insured or Allied as an additional insured in the Underlying *Adams* or *St. Pierre* Lawsuits is **DENIED WITHOUT PREJUDICE**.[181]

**IT IS FURTHER ORDERED** that Arch's Motion for Summary Judgment with respect to its duty to defend Masse as an insured or Allied as an additional insured in the Underlying *Adams* or *St. Pierre* Lawsuits is **DENIED WITH PREJUDICE**.[182]

**IT IS FURTHER ORDERED** that Arch's Motion for Summary Judgment with respect to its duty to indemnify Masse as an insured or Allied as an additional insured in the Underlying *Adams* or *St. Pierre* Lawsuits is **DENIED WITHOUT PREJUDICE**.[183]

---

[180] R. Doc. 250.
[181] R. Doc. 250.
[182] R. Doc. 251.
[183] R. Doc. 251.

New Orleans, Louisiana, this 23rd day of November, 2016.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**