| | |
|---|---|
| **HANOVER INSURANCE COMPANY,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2375 c/w**<br>**14-1930, 14-1933,**<br>**16-2490** |
| **SUPERIOR LABOR SERVICES,**<br>**INC., ET AL.,**<br>    **Defendants** | **SECTION "E"** |

*Applies to:* **14-1933**

## ORDER AND REASONS

Before the Court are two motions for summary judgment filed by Lexington Insurance Company ("Lexington") regarding its duty to defend Allied Shipyard, Inc. as an additional insured under its 2000-2001 and 2008-2009 policies, both issued to Masse Contracting, Inc. ("Masse"), against claims made in the underlying *Adams* and *St. Pierre* lawsuits.[1] Allied opposes the motions.[2] For the reasons set forth below, Lexington's motions are **GRANTED**.

## BACKGROUND

A.  Underlined Consolidated State-Court Lawsuit

The case originates from two state-court personal-injury actions, now consolidated[3] ("Consolidated State-Court Lawsuit") against Allied Shipyard, Inc. ("Allied"): (1) *Adams, et al. v. Allied Shipyard, Inc., et al.* and (2) *St. Pierre, et al. v. Allied*

---

[1] R. Docs. 443; 444. Unless otherwise indicated, "R. Doc." refers to record documents in the consolidated matter, No. 11-2375. As indicated in the Court's July 10, 2017 order, the Court considers the previously filed motions for summary judgment and oppositions thereto, together with supporting memoranda and exhibits, as motions for summary judgment on the claims made by in Lexington against Allied in Lexington's First Amended and Supplemental Complaint in Intervention. R. Doc. 506.

[2] R. Docs. 450, 451.

[3] The two cases were consolidated in state court on September 9, 2013. *See* R. Doc. 261-5.

*Shipyard, Inc.*[4] The plaintiffs in the Consolidated State-Court Lawsuit allege Allied negligently performed sandblasting activities and they seek resulting damages.

In the Consolidated State-Court Lawsuit, Allied filed a third-party demand against its contractors who performed the sandblasting jobs, including Superior Labor Services, Inc. ("Superior") and Masse.[5] Specifically, Allied alleges that Superior and Masse contracted with Allied to perform certain tasks and to indemnify Allied under master work contracts.[6] Allied seeks to be named as an additional insured on Superior and Masse's insurance policies, and seeks indemnity from Superior and from Masse with respect to the claims in the Consolidated State-Court Lawsuit.[7]

The plaintiffs in *Adams* amended their petition to name Superior, Masse, other subcontractors, and Gray Insurance Company as direct defendants.[8]

The third-party-defendant contractors "in turn sought coverage, defense and/or indemnity from their various insurers for the periods of time when these jobs were allegedly performed, which prompted the insurers to file lawsuits in federal courts."[9]

On August 18, 2016, Allied filed a cross-claim and third-party demand in state court against its direct insurer, Gray, and against Masse and Superior's insurers, seeking a declaration that it has a right to defense and indemnity as well as a declaration of its status as an additional insured under Masse and Superior's policies.[10]

---

[4] R. Docs. 443-3, 443-4, 443-5, 443-6, 443-7, 443-8, 443-9 (*Adams* Petitions for Damages); R. Doc. 443-12 (*St. Pierre* Petition for Damages).
[5] *See* R. Docs. 443-10, 443-11, 443-13, 443-14.
[6] *See* R. Docs. 443-10, 443-11, 443-13, 443-14.
[7] *See* R. Docs. 443-10, 443-11, 443-13, 443-14.
[8] *See* R. Docs. 443-3, 443-4, 443-5, 443-6, 443-7, 443-8, 443-9.
[9] R. Doc. 174-1 at 2.
[10] *See* R. Doc. 443-15.

The *Adams* plaintiffs filed their sixth amended petition in state court on April 29, 2016.[11] The *St. Pierre* plaintiffs have not amended their original petition, which was filed on December 8, 2010.[12]

B. Declaratory Actions in Federal Court

Four federal actions related to the Consolidated State-Court Lawsuit are pending in this Court. The Court consolidated the first three cases—11-2375, 14-1930, and 14-1933—on November 21, 2014, and consolidated 16-2490 with those cases on August 10, 2016.[13]

1. *No. 11-2375*

On September 21, 2011, Hanover Insurance Company ("Hanover") filed a complaint in this Court.[14] Hanover filed an amended complaint on September 27, 2012.[15] Hanover alleges it has been participating in the defense of Superior against Allied's third-party demands in the Consolidated State-Court Lawsuit.[16] Hanover maintains the other insurers it names in its federal suit "are not participating in Superior's defense" in the Consolidated State-Court Lawsuit.[17] Hanover seeks judgment against Superior declaring that it has no duty to defend or indemnify Superior in the Consolidated State-Court Lawsuit.[18] If Hanover has a duty to defend or indemnify Superior, Hanover seeks declaratory judgment that State National Insurance Company ("State National"), Arch Insurance Company ("Arch"), and "other unidentified insurance companies collectively

---

[11] R. Doc. 443-9.
[12] R. Doc. 443-12.
[13] *See* R. Docs. 108, 368.
[14] *Hanover Ins. Co. v. Superior Labor Servs., Inc., et al.*, No. 11-2375.
[15] R. Doc. 69.
[16] *Id.* at ¶¶ 23–24.
[17] *Id.* at ¶ 26.
[18] *Id.* at ¶¶ 22–23.

named as ABC Insurance Company" are liable "for their share of defense and indemnity to be paid on behalf of Superior" in the Consolidated State-Court Lawsuit.[19] Hanover also seeks reimbursement, contribution, and/or damages from State National, Arch, and other unidentified insurance companies for defense costs already incurred by Hanover on behalf of Superior in the Consolidated State-Court Lawsuit that, Hanover argues, should have been paid by those insurance companies.[20]

On January 14, 2015, Hanover filed a second supplemental and amending complaint naming Allied as a defendant.[21] Hanover alleges that "Allied has tendered the [Consolidated State-Court Lawsuit] to Hanover for defense and indemnity in its capacity as an alleged additional insured" under Superior's policies, and Hanover has offered to participate in Allied's defense in the Consolidated State-Court Lawsuit subject to a full reservation of rights.[22] Hanover alleges that Allied is not an additional insured under Hanover's policies, and Hanover seeks judgment against Allied declaring that it has no duty to defend or indemnify Allied in the Consolidated State-Court Lawsuit.[23] In the alternative, if the Court finds Hanover has a duty to defend or indemnify Allied, Hanover seeks judgment declaring that Arch, State National, and other unidentified insurance companies are obligated to pay their portions of defense costs and/or indemnity incurred by Hanover on behalf of Superior and Allied in the Consolidated State-Court Lawsuit.[24]

---

[19] *Id.* at ¶ 2.
[20] *Id.* at ¶ 3.
[21] R. Doc. 125.
[22] *Id.* at ¶ 79.
[23] *Id.* at 9.
[24] *Id.* The Court denied Hanover's motions for partial summary judgment on its duty to defend Masse, Superior, and Allied as an additional insured in both the *Adams* and *St. Pierre* lawsuits. R. Docs. 341, 342.

On March 8, 2012, State National filed a crossclaim for declaratory judgment against Superior.[25] State National filed its first amended crossclaim for declaratory judgment on September 27, 2012.[26] State National filed a second amended crossclaim for declaratory judgment on January 14, 2015, naming Allied as a defendant-in-crossclaim.[27] State National seeks judgment declaring that there is no coverage afforded to Superior under the State National policies issued to Superior and that State National has no duty to defend or indemnify Superior in the Consolidated State-Court Lawsuit.[28] State National also seeks a declaration that the State National policies afford no coverage to Allied as a purported additional insured and that State National does not owe a duty to defend or indemnify Allied in the Consolidated State-Court Lawsuit.[29]

## 2. *No. 14-1930*

On August 22, 2014, Arch Insurance Company brought an action for declaratory judgment against Superior and Allied.[30] Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Superior," with respect to Superior's request for defense and indemnity in the Consolidated State-Court Lawsuit.[31] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional insured status under the Superior policies and defense and

---

[25] R. Doc. 29.
[26] R. Doc. 67.
[27] R. Doc. 135.
[28] *Id.* at ¶ 19.
[29] *Id.* The Court granted State National's motion for summary judgment, finding it had no duty to defend Masse, Superior, and Allied as an additional insured in the *Adams* lawsuit, and denied State National's motion for summary judgment, finding it had a duty to defend Masse, Superior, and Allied as an additional insured in the *St. Pierre* lawsuit. R. Doc. 347. The Court declined to rule on any insurer's duty to indemnify until the underlying state-court proceedings in the *Adams* and *St. Pierre* matters are resolved. R. Doc. 426 at 5.
[30] *Arch Ins. Co. v. Superior Labor Servs., Inc. et al.*, No. 14-1930.
[31] No. 14-1930, R. Doc. 1 at ¶ 3.

indemnity of Allied in the Consolidated State-Court Lawsuit.[32] Arch seeks a declaration against Superior and Allied that Arch has no defense or indemnity obligation to Superior or Allied in the Consolidated State-Court Lawsuit.[33] Arch also seeks recovery of the portion of defense costs already incurred by it on behalf of Superior.[34]

### 3. No. 14-1933

On August 22, 2014, Arch also filed an action for declaratory judgment against Masse and Allied. Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Masse," with respect to Masse's request for defense and indemnity in the Consolidated State-Court Lawsuit.[35] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional insured status under the Masse policies and defense and indemnity of Allied in the Consolidated State-Court Lawsuit.[36] Arch seeks a declaration against Masse and Allied that Arch has no defense or indemnity obligation to Masse in the Consolidated State-Court Lawsuit.[37]

On January 14, 2015, Hanover filed a complaint in intervention in Case No. 14-1933 against Defendants Masse and Allied.[38] Hanover seeks judgment declaring that Hanover has no obligation to defend or indemnify Masse or Allied in the State-Court Lawsuits.[39]

---

[32] *Id.* at ¶ 4.
[33] *Id.* at ¶¶ 21, 47.
[34] *Id.* at ¶ 47. The Court denied with prejudice Arch's motions for summary judgment, finding it had a duty to defend Masse and Superior as insureds and Allied as an additional insured in the *Adams* and *St. Pierre* lawsuits. R. Doc. 418. The Court denied without prejudice Arch's motions for summary judgment with respect to Arch's duty to indemnify Masse and Superior as insureds and Allied as an additional insured. *Id.*
[35] No. 14-1933, R. Doc. 1 at ¶ 3.
[36] *Id.* at ¶ 4.
[37] *Id.* at ¶ 46.
[38] R. Doc. 128.
[39] *Id.*

State National Insurance Company ("State National") also filed a petition for intervention for declaratory judgment on January 14, 2015.[40] State National issued two marine general liability policies to Masse that provided coverage from November 15, 2006, to November 15, 2007, and from November 15, 2007, to November 15, 2008.[41] Allied seeks additional insured status under the policies issued by State National to Masse.[42] State National seeks a judgment declaring there is no coverage afforded to Masse under the State National policies and that State National has no duty to defend or indemnify Masse in the Consolidated State-Court Lawsuit.[43] State National also seeks a declaration that "there is no coverage afforded to Allied under the [State National] policies as a purported additional insured" and that State National does not owe a duty to defend or indemnify Allied in the Consolidated State-Court Lawsuit.[44]

On April 13, 2016, Lexington intervened in Arch's declaratory judgment action in its capacity as an insurer of Masse, and likewise, sought determinations of coverage for Masse for the claims asserted in the underlying Consolidated State-Court Lawsuit.[45] On July 10, 2017, Lexington filed its first amended and supplemental complaint in intervention, naming Allied as a defendant-in-intervention, and seeking determinations of coverage for Allied as an additional insured for the claims asserted in the underlying Consolidated State-Court Lawsuit.[46] Lexington issued two commercial general liability policies to Masse—one in effect from February 16, 2000 to February 16, 2001 ("2000-

---

[40] R. Doc. 132.
[41] *Id.* at ¶ 14.
[42] *Id.* at ¶ 3.
[43] *Id.* at ¶ 19.
[44] *Id.*
[45] No. 11-2375, R. Doc. 354.
[46] R. Doc. 507. As discussed in the Court's July 10, 2017 order, the Court considers the previously filed motions for summary judgment and oppositions thereto, together with supporting memoranda and exhibits, as motions for summary judgment on the claims against Allied in Lexington's First Amended and Supplemental Complaint in Intervention. R. Doc. 506.

2001 Lexington Policy") and another in effect from November 15, 2008 to November 15, 2009 ("2008-2009 Lexington Policy").[47]

### 4. 16-2490

 On March 25, 2016, Great American E&S Insurance Company ("Great American") filed a complaint in this Court, adding Gray as a defendant.[48] Great American filed an amended complaint on August 26, 2016.[49] Great American seeks a declaration of its rights and responsibilities as it relates to its duties to defend or indemnify Masse as an insured or Allied as an additional insured under the Great American Policies with respect to the claims in the *Adams* and *St. Pierre* lawsuits.[50] If Great American has a duty to defend or indemnify Masse as an insured or Allied as an additional insured in the Consolidated State-Court Lawsuit, Great American seeks declaratory judgment that "any such obligation should be proportionate to its time on the risk as compared to the period of time during which the underlying Plaintiff's toxic exposures allegedly occurred."[51] Alternatively, if Great American has a duty to defend or indemnify Masse as an insured or Allied as an additional insured, Great American seeks declaratory judgment that Great American is entitled to contribution from Arch Insurance Company, United Capitol Insurance Company, Lexington Insurance Company, Atlantic Insurance Company, State

---

[47] *Id.*
[48] *Great American E&S Ins. Co. v. Masse Contracting, Inc., et al.*, No. 16-2490 (E.D. La.).
[49] R. Doc. 371.
[50] *Id.* at ¶¶ 38–48.
[51] *Id.* at ¶ 50.

National Insurance Company, Underwriters at Lloyd's, London, and Clarendon National Insurance Company.[52]

C. <u>Lexington's Motions for Summary Judgment</u>

Lexington filed its motions for summary judgment on January 23, 2017 regarding Allied's status as an additional insured, and Lexington's duty to defend Allied against the claims made in the underlying *St. Pierre* and *Adams* lawsuits as an additional insured under the 2000-2001 Lexington Policy and the 2008-2009 Lexington Policy, both issued to Masse.[53] These are the motions now before the Court.

**CONSIDERATION OF DECLARATORY JUDGMENT ACTIONS**

Lexington seeks a declaratory judgment that Allied is not an additional insured under Lexington's policies issued to Masse and that Lexington has no duty to defend Allied in the *Adams* or *St. Pierre* lawsuit. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[54]

The Court must determine whether it will hear the Lexington declaratory judgment action before considering the motions for summary judgment.[55] The Fifth Circuit has explained that, when considering a declaratory judgment action, a district court must engage in a

---

[52] *Id.* at ¶ 52. In its opposition to Gray's motion to dismiss, Great American states Gray was "inadvertently omitted from the list of insurers that are alleged to owe contribution." R. Doc. 480 at 3, n.7. Paragraph 7 of the prayer for relief in the amended complaint, however, includes Gray as a defendant. R. Doc. 371.
[53] R. Doc. 443.
[54] 28 U.S.C. § 2201.
[55] The Court has not previously considered Lexington's declaratory judgment action, as the instant motions are the first to be filed by Lexington in this matter.

three-step inquiry to determine whether to decide or dismiss a complaint for declaratory relief.[56] First, the Court must determine whether the action is justiciable.[57] Second, the Court must determine whether it has the authority to grant declaratory relief.[58] Third, the Court must determine "how to exercise its broad discretion to decide or dismiss a declaratory judgment action."[59] Lexington is seeking declaratory relief on its duty to defend Masse as an insured and Allied as an additional insured.[60] The Court will determine whether to exercise its discretion to hear Lexington's declaratory judgment action.

A. Justiciability

The justiciability doctrines of standing, mootness, political question, and ripeness derive from Article III's "case or controversy" requirement.[61] In a declaratory judgment action, justiciability often turns on ripeness.[62] This case is no exception.

The ripeness doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[63] The purpose of this doctrine is to forestall "entangl[ement] . . . in abstract disagreements" through "avoidance of premature adjudication."[64] "The key considerations are 'the fitness of the

---

[56] *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). *See also Aggreko, LLC v. Am. Home Assur. Co.*, No. 14-1215, 2014 WL 6901376, at *3 (E.D. La. Dec. 5, 2014).
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] In its Complaint in Intervention, Lexington also seeks a declaration of its duty to indemnify Allied as an additional insured if the Court finds it has a duty to defend. Lexington, however, does not seek summary judgment in the instant motions on its duty to indemnify Allied.
[61] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012).
[62] *See id*; *Orix*, 212 F.3d at 895; *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989).
[63] *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).
[64] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

issues for judicial decision and the hardship to the parties of withholding court consideration.'"[65]

The Fifth Circuit has recognized that "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge."[66] This stems primarily from the fact that declaratory relief often involves an *ex ante* determination of rights, *i.e.*, a determination of rights before an injury has occurred, that "exists in some tension with traditional notions of ripeness."[67] Fortunately, this challenge is not presented today, because the Court's analysis is guided by a distinct subset of ripeness jurisprudence on disputes regarding the duty to defend.

Because the duty to defend does not depend on the outcome of the underlying law suit,[68] a duty-to-defend claim is ripe when the underlying suit is filed.[69] Accordingly, Lexington's request for declaratory relief that it has no duty to defend is ripe, and the Court finds the actions are justiciable.

B.    Mandatory Abstention

The Fifth Circuit has explained that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction— providing the declaratory plaintiff an end run around the requirements of the Anti-

---

[65] *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149).

[66] *Orix*, 212 F.3d at 896 (internal quotation marks omitted).

[67] *Id.*

[68] *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 52 (La. 2005).

[69] *See Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 110 (5th Cir. 2008) ("An actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's *duty to defend.*") (emphasis in original); *Morad v. Aviz*, No. 12-2190, 2013 WL 1403298, at *2 (E.D. La. Apr. 5, 2013) ("Courts have routinely held that courts may determine an insurer's duty to defend even before the underlying suit is decided."); *Greenwich Ins. Co. v. Capsco Indus., Inc.*, No. 1:14CV297-LG-JCG, 2014 WL 5025856, at *2 (S.D. Miss. Oct. 8, 2014).

Injunction Act."[70] The Fifth Circuit has provided an analysis with respect to a district court's authority to issue a declaratory judgment so as to not allow a declaratory plaintiff an end run around the requirements of the Anti-Injunction Act. The district court cannot consider the merits of a declaratory judgment action when (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff; (2) the state case involves the same issues as those involved in the federal case; and (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act.[71] The Fifth Circuit in *Jackson* held "if an injunction would be barred by [the Anti-Injunction Act], this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction."[72] The first factor in this analysis is not met in this case. Lexington, the declaratory judgment plaintiff in the federal action, filed its complaint in intervention in the declaratory judgment action on April 13, 2016,[73] months before Allied, the declaratory defendant in the federal action, filed its cause of action against Lexington in state court on August 18, 2016.[74] The presence of all three factors mandates abstention. The want of any one factor defeats mandatory abstention.[75] Because the first factor has not been met, abstention is not mandatory.

---

[70] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993) (citing *Tex. Emps. Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988)). The Anti-Injunction Act states, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

[71] *Travelers*, 996 F.2d at 776 (citing *Jackson*, 862 F.2d at 506); *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003).

[72] *Jackson*, 862 F.2d at 506.

[73] Even though Lexington did not add Allied as a defendant-in-intervention until July 10, 2017, Lexington's original complaint in intervention, filed on April 13, 2016, claimed Lexington had no duty to defend Masse with respect to the third-party demands asserted by Allied against Masse. R. Doc. 354. In Allied's third-party demand against Masse, Allied sought to be named as an additional insured on Masse's insurance policies. *See* R. Doc. 443-10.

[74] Allied filed a cross-claim and third-party demand in state court seeking a declaration that the insurers of Masse and Superior owe Allied a duty to defend and a duty to indemnify. R. Doc. 444-15.

[75] *Sealed v. Sealed*, 33 F.3d 1379 (5th Cir. 1994).

C.   Discretion to Exercise Jurisdiction on the Duty to Defend

Because there is no mandatory abstention, the Court must consider, in its discretion, whether to exercise jurisdiction over this matter. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," even when subject-matter jurisdiction is otherwise proper.[76] In *Wilton v. Seven Falls Co.*, the Supreme Court held that the discretionary standard of *Brillhart v. Excess Ins. Co. of America*[77] governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state-court proceedings.[78] "Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard."[79] There are three overarching considerations in the Supreme Court's analysis in *Brillhart*: federalism, fairness, and efficiency.[80] "Despite the circuits' different expressions of the *Brillhart* factors, each circuit's formulation addresses the same three aspects of the analysis."[81]

The Fifth Circuit uses the *Trejo* factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;

---

[76] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).
[77] *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942).
[78] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995).
[79] *Id.* at 282.
[80] *Sherwin-Williams*, 343 F.3d at 390.
[81] *Id.*

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[82]

1. *Nature of Pending State Court Action*

The first *Trejo* factor requires comparison of the declaratory judgment action with the underlying state-court action.[83] "If there is a pending related state proceeding but it is not 'parallel' because it does not involve all the same parties or issues, the federal district court properly considers the extent of similarity between the pending state court and federal court cases in deciding which court should decide the dispute, rather than relying on a *per se* rule."[84]

Lexington's federal complaint in intervention and Allied's third-party demand filed in state court are parallel, as they both seek a declaration as to Lexington's duty to defend and indemnify Allied as an additional insured under Lexington's policies issued to Masse. As a result, the first *Trejo* factor weighs against exercising jurisdiction.

---

[82] *Sherwin-Williams*, 343 F.3d at 388, 390.
[83] *See id.* at 393–94.
[84] *See Sherwin-Williams*, 343 F.3d at 394 n.5.

2. *Suit Filed in Anticipation of Lawsuit*

The *St. Pierre* lawsuit was filed on December 8, 2010,[85] and the *Adams* lawsuit was filed on December 28, 2010.[86] Lexington filed its complaint in intervention in federal court on April 13, 2016.[87] Allied's cross-claim against Lexington was filed on August 18, 2016.[88] Lexington likely was aware that its insurance coverage of Masse as an insured or Allied as an additional insured would become an issue in the pending Consolidated State-Court Lawsuit. Therefore, Lexington may have filed its complaint in intervention in anticipation of becoming a party to the pending Consolidated State-Court Lawsuit.[89] The second *Trejo* factor weighs against exercising jurisdiction.[90]

3. *Forum Shopping*

That Lexington could have intervened and requested declaratory judgment in the Consolidated State-Court Lawsuit does not necessarily demonstrate forum shopping.[91] Courts are less likely to find forum shopping where, as here, (1) a foreign insurer files a diversity action in federal court, and (2) the selection of the federal forum does not change the applicable law.[92] "The record does not support a finding that [Lexington] engaged in

---

[85] R. Doc. 443-12.
[86] R. Doc. 443-3.
[87] *Great American E&S Ins. Co. v. Masse Contracting, Inc., et al.*, No. 16-2490 (E.D. La.).
[88] R. Doc. 443-15. Even though Lexington did not add Allied as a defendant-in-intervention in federal court until July 10, 2017, Lexington's original complaint in intervention, filed on April 13, 2016, claimed Lexington had no duty to defend Masse with respect to the third-party demands asserted by Allied in state court against Masse. R. Doc. 354. In Allied's third-party demand in state court against Masse, Allied sought to be named as an additional insured on Masse's insurance policies. *See* R. Doc. 443-10.
[89] *See Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *4 (E.D. La. Oct. 23, 2013) (noting the plaintiff "was aware the issue of its insurance coverage of [the defendant] would be at issue in the pending state court proceeding," concluding that "it can be assumed that [the plaintiff] filed for Declaratory Judgment on June 10, 2013 in anticipation of becoming a party to that pending state court action," and finding the second *Trejo* factor weighs against exercising jurisdiction).
[90] *See U.S. Fire*, 2015 WL 1416490, at *4.
[91] *See id.*
[92] *See Sherwin-Williams*, 343 F.3d at 399.

impermissible forum shopping by filing this declaratory judgment suit."[93] The third *Trejo* factor weighs in favor of exercising jurisdiction.

### 4.    *Inequities*

The Court cannot conceive of any inequities that flow from allowing Lexington to proceed in this action while the Consolidated State-Court Lawsuit remain pending. No party will be prejudiced if this Court decides whether Lexington has a duty to defend Masse as an insured or Allied as an additional insured before resolution of the Consolidated State-Court Lawsuit. The fourth *Trejo* factor weighs in favor of exercising jurisdiction.

### 5.    *Convenience of Federal Forum*

The Consolidated State-Court Lawsuit is pending in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[94] The state courthouse for the 17th Judicial District Court for Lafourche Parish is approximately 60 miles west of the federal courthouse in New Orleans. No party argues that this forum is inconvenient or that either forum is more convenient than the other for the parties or for the witnesses. This factor is neutral.[95]

### 6.    *Judicial Economy*

Lexington's complaint in intervention in this Court has been pending for over a year. All cases surrounding this controversy have been before this Court for over five

---

[93] *Id.* at 400. *See also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015) (per curiam).

[94] *See* R. Docs. 443-3, 443-4, 443-5, 443-6, 443-7, 443-8, 443-9 (*Adams* Petitions for Damages); R. Doc. 443-12 (*St. Pierre* Petition for Damages).

[95] *See GlobalSantaFe Drilling Co. v. Quinn*, No. 12-1987, 2012 WL 4471578, at *4 (E.D. La. Sept. 26, 2012) ("It does not appear that the Eastern District of Louisiana is any more convenient or less convenient of a forum; the parties are located outside the state but the witnesses are located within. Therefore, this factor is neutral." (citations omitted)); *Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *5 (E.D. La. Oct. 23, 2013); *Gemini Ins. Co. v. Turner Indus. Grp., LLC*, No. 13-05922, 2014 WL 3530475, at *5 (E.D. La. July 16, 2014).

years. The issue of whether Lexington has a duty to defend Masse as an insured or Allied as an additional insured in the Consolidated State-Court Lawsuit has been fully briefed before this Court. Exercising jurisdiction is in the interest of judicial economy.[96] This factor weighs in favor of exercising jurisdiction.

### 7. *Interpretation of Decree from Parallel State Proceeding*

Although a part of the Consolidated State-Court Lawsuit and this action are parallel, filings by Allied in state court seeking a declaration of its rights to defense and indemnity were made after the filing of Lexington's complaint in intervention in this Court.[97] This Court is unaware of a ruling by the state court on the issue of Allied's rights to defense or indemnity, and there is no indication that such a ruling is imminent. This Court need not interpret any decree issued in the Consolidated State-Court Lawsuit to determine whether Lexington has a duty to defend. The seventh *Trejo* factor weighs in favor exercising jurisdiction.[98]

Four of the *Trejo* factors weigh in favor of exercising jurisdiction, while two weigh against and one is neutral. The Court will exercise its discretion to hear the declaratory judgment action on Lexington's duty to defend Allied.

---

[96] *See Ironshore*, 624 F. App'x at 168 (finding that the judicial economy factor weighed against dismissal when the parties had "already fully briefed the insurance coverage issues to the district court and entered into extensive factual stipulations"); *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373 (5th Cir. 1998) (finding that judicial economy weighed against dismissal in part because "there [were] no factual disputes between the parties and . . . they have fully briefed the merits of the insurance issues").

[97] R. Doc. 443-15. Allied filed its third-party demand in state court on August 18, 2016, months after Lexington filed its complaint in intervention in federal court on April 13, 2016.

[98] *Ironshore*, 624 F. App'x at 168 ("The seventh and last factor . . . weighs against dismissal. There is no need to construe a state judicial decree to resolve the issues in this case."). *See also U.S. Fire*, 2015 WL 1416490, at *5.

## ALLIED'S STATUS AS AN ADDITIONAL INSURED
## UNDER THE MASSE POLICIES

Lexington seeks summary judgment on Allied's status as an additional insured under its policies issued to Masse. Allied bears the burden of proving it is an "additional insured" under both the 2000-2001 Lexington Policy[99] and the 2008-2009 Lexington Policy.

1. *Provisions of the 2000-2001 Lexington Policy*

Lexington issued a commercial general liability insurance policy to Masse providing coverage from February 16, 2000 through February 16, 2001 ("2000-2001 Lexington Policy").[100]

Lexington argues Allied does not qualify as an "Insured" under the 2000-2001 Lexington Policy, and as a result, Lexington owes no duty to defend Allied in either the *Adams* or *St. Pierre* lawsuits.[101]

The 2000-2001 Lexington Policy contained the following insuring agreement for bodily injury and property damage liability:

> The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as compensatory damages . . . because of bodily injury or property damage to which this insurance applies. . . .[102]

An "insured" is defined under the 2000-2001 Lexington Policy as:

> [A]ny person or organization qualifying as an **Insured** in the **Persons Insured** provision of this policy. The insurance afforded applies separately

---

[99] Because the Court finds that Allied is not an additional insured under the 2000-2001 Lexington Policy, the Court did not engage in an analysis with respect to Louisiana's "Eight-Corners Rule." If the Court had engaged in this analysis, the result would be the same, as the 2000-2001 Lexington policy unambiguously excludes coverage for the allegations of the *Adams* and *St. Pierre* plaintiffs because Allied is not an additional insured.

[100] R. Doc. 443-17.

[101] R. Doc. 443-1.

[102] R. Doc. 443-17 at 7 (emphasis in original).

to each Insured against whom claim is made or suit is brought except with respect to the limits of the Company's liability.[103]

The "Persons Insured" provision of the Policy provides:

III. PERSONS INSURED

Each of the following is an **Insured** under this insurance to the extent set forth below:

A. if the **Named Insured** is designated in the Declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the **Named Insured** with respect to the conduct of such business;

B. if the **Named Insured** is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such; [and]

C. if the **Named Insured** is designated in the Declarations as other than an individual, partnership, or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of this duties as such;[104]

Subsection A applies only if the named insured is an individual, and Subsection B applies only if the named insured is a partnership or joint venture. Masse is designated in the Declarations as a corporation.[105] As a result, subsection C of the "Persons Insured" provision applies. Thus, to qualify as an "Insured" under the 2000-2001 Lexington Policy, Allied must either be a Named Insured, an "executive officer, director or stockholder" of the Named Insured, or Allied must be granted additional insured status by an endorsement in the policy.

In the Declarations section of the policy, the only Named Insured is Masse Contracting Inc.[106] Allied admits it is not a Named Insured named in the Declarations,

---

[103] R. Doc. 443-17 at 13 (emphasis in original).
[104] R. Doc. 443-17 at 11–12 (emphasis in original).
[105] R. Doc. 443-17 at 4.
[106] R. Doc. 443-17 at 4.

and that it cannot sustain its burden of establishing it was an executive officer, director, or stockholder of Masse Contracting, Inc. during the 2000-2001 Lexington Policy period.[107] The issue, then, is whether the 2000-2001 Lexington Policy contains an endorsement under which Allied qualifies as an additional insured such that it is entitled to coverage from Lexington.

There is no standard additional insured endorsement in the 2000-2001 Lexington Policy. Instead, Allied argues first that Lexington owes coverage to it in the *Adams* and *St. Pierre* lawsuits under the 2000-2001 Lexington Policy Broad Form Commercial Liability Endorsement.[108] Allied argues second that Lexington owes coverage to it in the *Adams* and *St. Pierre* lawsuits under the 2000-2001 Lexington Policy Endorsement #006.

a. *Broad Form Commercial Liability Endorsement*

Under the 2000-2001 Lexington Policy, Lexington agreed to pay on behalf of Masse, the Insured, all sums for which Masse becomes legally obligated to pay as compensatory damages.[109] Lexington will not pay Masse sums that it is legally obligated to pay as damages if the claims for "bodily injury or property damage" result from Masse's "assumption of liability in a contract or agreement" *unless* Masse's liability for damages is "assumed in a contract or agreement that is an *incidental contract*, provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement."[110]

"Incidental Contract" under the 2000-2001 Lexington Policy is defined as:

---

[107] R. Doc. 443-2 at 3, ¶ 7; R. Doc. 491 at 2, ¶ 7
[108] R. Doc. 450.
[109] R. Doc. 443-17 at 7.
[110] *Id.* (emphasis added).

> [A]ny written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement.[111]

The Broad Form Commercial Liability Endorsement extends the definition of "Incidental Contract" to include a sixth category, "any written contract or agreement relating to the conduct of the Named Insured's business."[112]

Allied argues the 1995 Master Work Contract between Allied and Masse is an "Incidental Contract" under the 2000-2001 Lexington Policy, as the Master Work Contract is related to the conduct of Masse's business as a ship fitter for Allied, and the damages alleged by the *Adams* and *St. Pierre* plaintiffs occurred after the signing of the Master Work Contract in 1995.[113] Allied argues the endorsement's exclusion of coverage for damages by reason of the assumption of liability in a contract does not apply because the Master Work Contract is an Incidental Contract. The Court agrees that the 1995 Master Work Contract, is an Incidental Contract, but this does not entitle Allied to coverage under the 2000-2001 Lexington Policy.[114]

The Broad Form Commercial Liability Endorsement is relevant only to Lexington's obligation to pay its Insured, Masse. The Broad Form Commercial Liability Endorsement modifies neither the "Persons Insured" section nor the definitions of "Insured" or "Named

---

[111] *Id.* at 13.
[112] *Id.* at 20. The Broad Form Commercial Liability Endorsement provides:

> "The insurance afforded with respect to liability assumed under an "Incidental Contract" is subject to the following additional exclusions:
>
> > 1. to "Bodily Injury" or "Property Damage" for which the "Insured" has assumed liability under any "Incidental Contract", if such injury or damage occurred prior to the execution of the "Incidental Contract."

[113] R. Doc. 450 at 2.
[114] R. Doc. 450 at 2.

Insured" of the 2000-2001 Lexington Policy. Stated simply, the policy and the Broad Form Commercial Liability Endorsement together provide only that Lexington will pay Masse for liability assumed by Masse in a contract that relates to Masse's business. For the Broad Form Commercial Liability Endorsement to afford coverage to Allied, Allied would have to be an "Insured" under the 2000-2001 Lexington Policy, and it is not.[115]

Lexington does not owe coverage to Allied by virtue of the Broad Form Commercial Liability Endorsement.

### b. Endorsement #006—The "Other Insurance" Endorsement

Allied sought leave of Court to file a supplemental memorandum in opposition to Lexington's motion for summary judgment, to argue that it is a "Person Insured" under "Endorsement #006" of the 2000-2001 Lexington Policy and is, therefore, owed a defense in the *Adams* and *St. Pierre* lawsuits.[116] Endorsement #006 is a Primary/Non-Contributory Insurance Endorsement, which replaces the "Other Insurance" section of the 2000-2001 Lexington Policy.[117]

Endorsement #006, in pertinent part, provides:

In consideration of the payment of the premium, it is hereby understood and agreed that Part C, Other Insurance of Section VII, Conditions, is deleted in its entirety and replaced by the following:

---

[115] Allied bears the burden of proving its status as an additional insured. *WH Holdings, LLC v. ACE American Ins. Co.*, No. 07-7110, 2013 WL 2286107, *3 (E.D. La. May 23, 2013) (finding the party seeking additional insured status "bears the burden of proof as to its status as an insured under the [insurer's] policy. [Lexington] does not bear the burden of negating [Allied's] claim to insured status. In Louisiana, an insured must meet the initial burden of establishing that the policy affords coverage for an incident and that the incident falls within the policy's terms. This initial burden applies to those insureds whose status as such is not in question and therefore have undisputed rights to seek coverage under the policy. If a bona fide insured must prove coverage, then it follows rather easily that a party like [Allied] with no privity to the insurer who seeks coverage as an insured on a policy bears the burden of proof on insured status. This conclusion is buttressed by Louisiana Civil Code article 1831 which states that '[a] party who demands performance of an obligation must prove the existence of the obligation.'").
[116] R. Doc. 479.
[117] R. Doc. 443-17 at 38.

5. Other insurance: when both this insurance and other insurance apply to a loss on the same basis, whether the other insurance is stated as primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(b) Contribution by limits: If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectable insurance against such loss.

Notwithstanding the foregoing, the company agrees that such insurance as is afforded by this policy for the benefit of certificate holders included as persons insured shall be primary and non-contributing insurance, *but only as respects a claim, loss or liability arising out of insured operations or work on behalf of the named insured performed under a written contract between the name insured and the certificate holder that requires the named insured to maintain such primary and non-contributory insurance and to include the certificate holder as a person insured thereunder.*[118]

Allied argues it is provided coverage under Endorsement #006 through its 1995 Master Work Contract with Masse because that agreement required Masse to obtain general liability insurance and name Allied as an additional insured under the policy.[119] Allied contends the Master Work Contract makes it a "Person Insured" under Endorsement #006 of the 2000-2001 Lexington Policy.[120]

Like the Broad Form Commercial Liability Endorsement, Endorsement #006—an "Other Insurance" endorsement—is not triggered unless Allied first establishes its status as an additional insured.[121] First, Endorsement #006 provides insurance for the benefit of the certificate holder included as a person insured. Allied is not a certificate holder or a person insured. Endorsement #006 modifies neither the "Persons Insured" section nor

---

[118] R. Doc. 443-17 at 38–39 (emphasis added).
[119] R. Doc. 234-7 at 3–4.
[120] R. Doc. 479 at 2.
[121] *See Wallace v. Boyte Enters., Inc.*, 385 So. 2d 916, 918–29 (La. Ct. App. 2 Cir. 1980) (finding that because the insurance policy at issue did not provide coverage to entities claiming additional insured status, neither entity was afforded "other insurance" under the policy's endorsement).

the definitions of "Insured" or "Named Insured" of the 2000-2001 Lexington Policy. Endorsement #006 applies only when "both this insurance and other insurance apply to a loss on the same basis,"[122] meaning coverage must be established under the 2000-2001 Lexington Policy, and at least one other insurance policy, before the endorsement applies. Even then, the endorsement only applies to certificate holders included as persons insured. To be entitled to coverage from Lexington, Allied would have to establish its status as an "Insured" under the 2000-2001 Lexington Policy and that the insuring agreement has been triggered.

As discussed above, Allied has failed to establish it is an "Insured" under the 2000-2001 Lexington Policy, because it is not (1) listed as a Named Insured in the Declarations, (2) an executive officer, director or stockholder of Masse, or (3) afforded coverage through an "additional insured" endorsement in the policy.

Because Allied cannot meets its burden of proving its status as an additional insured under the 2000-2001 Lexington Policy, Lexington owes Allied no defense or indemnity in the underlying *Adams* and *St. Pierre* lawsuits claims under the 2000-2001 Lexington Policy.[123]

2. *Provisions of the 2008-2009 Lexington Policy*

Lexington issued a policy to Masse that provided coverage from November 15, 2008 through November 15, 2009 ("2008-2009 Lexington Policy").[124]

---

[122] R. Doc. 443-17 at 38.
[123] The Court notes that even if Allied qualified as an additional insured and was therefore entitled to coverage under the 2000-2001 Lexington Policy, Lexington would not have a duty to defend Allied in the *St. Pierre* lawsuit. As discussed in the Court's Order on Great American's Motion for Partial Summary Judgment, the *St. Pierre* plaintiffs allege they resided near the Allied shipyard for approximately eight years before the filing of their complaint in 2010. Thus, any exposure causing bodily injury or property damage of the *St. Pierre* plaintiffs occurred between 2002 and 2010, after the 2000-2001 Lexington Policy was in effect.
[124] R. Doc. 444-17.

Lexington argues Allied does not qualify as an "Insured" under the 2008-2009 Lexington Policy, and as a result, Lexington owes no duty to defend Allied in the *Adams* or *St. Pierre* lawsuits.[125]

The 2008-2009 Lexington Policy contained the following insuring agreement for bodily injury and property damage liability:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages because of "bodily injury" or "property damage" to which this insurance does not apply.[126]

The 2008-2009 Lexington Policy defines an "Insured" as "any person or organization qualifying as such under SECTION II – WHO IS AN INSURED."[127] The "Who is an Insured" provision of the 2008-2009 Lexington Policy provides:

I. If you are designated in the Declarations as:

***

> d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.[128]

Thus, to qualify as an "Insured" under the 2008-2009 Lexington Policy, Allied must either be named as an insured in the Declarations, an executive officer, director, or stockholder of the insured named in the Declarations, or Allied must be granted additional insured status by an endorsement in the policy.

---

[125] R. Doc. 444-1.
[126] R. Doc. 444-17 at 7.
[127] R. Doc. 444-17 at 7.
[128] R. Doc. 444-17 at 18–19.

In the Declarations section of the policy, the Named Insured is Masse Contracting Inc.[129] Allied admits it is not a Named Insured and cannot sustain its burden of establishing it was an executive officer, director, or stockholder of Masse Contracting, Inc. during the 2008-2009 Lexington Policy period.[130] The issue, then, is whether the 2008-2009 Lexington Policy contains an endorsement under which Allied qualifies as an additional insured such that it is entitled to coverage from Lexington.

    a.  *Additional Insured Required by Written Contract Endorsement*

Unlike the 2000-2001 Lexington Policy, the 2008-2009 Lexington Policy contains an "Additional Insured Required by Written Contract" Endorsement ("Additional Insured Endorsement").[131] The Additional Insured Endorsement provides:

> A. Section II – Who Is An Insured is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."
>
> B. The insurance provided to the above described additional insured under this endorsement is limited as follows:
>
> > 1. COVERAGE A BODILY INJURY AND PROPERTY DAMAGE (Section I – Coverages) only.
> >
> > 2. The person or organization is only an additional insured with respect to liability arising out of "your work" or "your product" for that additional insured.[132]

"You" or "your" in the 2008-2009 Lexington Policy refers to "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."[133] Thus, any reference to "you" or "your" in the 2008-2009 Lexington

---

[129] R. Doc. 444-17 at 4.
[130] R. Doc. 444-2 at 3, ¶ 8; R. Doc. 492 at 2, ¶ 8.
[131] R. Doc. 444-17 at 36–37.
[132] R. Doc. 444-17 at 36.
[133] R. Doc. 444-17 at 7.

Policy is to Masse. The 2008-2009 Lexington Policy defines "your work" as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations."[134]

It is undisputed that the Master Work Contract between Allied and Masse required Masse to procure insurance and name Allied as an additional insured. The issue, then, is whether Allied's liability arises out of Masse's work for Allied.[135]

Focusing on the language in the Additional Insured Endorsement, that Allied's liability must "arise out of [Masse's] work . . . for [Allied],"[136] Lexington argues Allied is only provided coverage under the Additional Insured Endorsement if the *Adams* and *St. Pierre* plaintiffs allege that Allied is vicariously liable for Masse's actions.[137]

In support of its argument, Lexington relies on *Maldonado v. Kiewit Louisiana Co.*[138] The court in *Maldonado* found that the additional insured policy provision at issue limited coverage to the additional insured's vicarious liability for the fault of the named insured.[139] However, the language of the additional insured endorsement in *Maldonado* differs significantly from the 2008-2009 Lexington Policy's Additional Insured Endorsement. The endorsement in *Maldonado* stated the insurer would provide coverage to the additional insured "only to the extent that [the additional insured] is liable for 'bodily injury,' 'property damage' or 'personal and advertising injury' *caused by [the named insured's] acts or omissions* or the acts or omissions of those action on [the named

---

[134] R. Doc. 444-17 at 25. "Your work" includes "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and (2) [t]he providing of or failure to provide warnings and instructions." *Id.*

[135] *See* 444-17 at 36 ("The person or organization is only an additional insured with respect to liability arising out of "your work" or "your product" for that additional insured.").

[136] R. Doc. 444-17 at 25.

[137] R. Doc. 451.

[138] 146 So. 3d 210 (La. Ct. App. 1 Cir. 3/24/14).

[139] *Id.* at 220.

insured's] behalf."[140] On the other hand, the Additional Insured Endorsement in the 2008-2009 Lexington Policy provides coverage to an additional insured's liability "*arising out of* '[Masse's] work' or '[Masse's] product' for that additional insured."[141]

The *Adams* petition alleges Masse and Allied "conducted sandblasting and painting operations and have allowed dangerous byproduct to drift into the neighborhood surrounding Allied Shipyard."[142] The *St. Pierre* petition alleges Allied "has been negligent and/or otherwise at fault through its employees and/or agents."[143] Allied's supplemental and amended third-party demand against Masse alleges Masse's "actions and activities, and failure to perform their contracted job responsibilities[,] initiated the claims of the[*Adams* and *St. Pierre*] petitioners."[144] Allied's cross-claim and third-party demand against Masse and Superior's insurers, which applies to the claims in both the *Adams* and *St. Pierre* lawsuits, alleges Lexington's insurance policy obligates it to defend Allied for "those sums that Allied may become legally obligated to pay as a result of the operations of Masse."[145] Both the *Adams* and *St. Pierre* plaintiffs allege that Allied was individually at fault and that Allied is liable for the work of Masse, or, at least, the allegations do not unambiguously exclude the possibility that Allied may be liable for Masse's operations. As a result, Allied's liability arises out of Masse's "work" for Allied. Allied qualifies as an additional insured under the 2008-2009 Lexington Policy.[146]

---

[140] *Id.* at 219 (emphasis added).
[141] R. Doc. 444-17 at 25.
[142] R. Doc. 444-6 at 3.
[143] R. Doc. 444-12 at 2.
[144] R. Doc. 444-11 at 2. The *Adams* plaintiffs adopted all allegations asserted against Allied and asserted the same allegations against Masse. R. Doc. 444-6 at 3.
[145] R. Doc. 444-15 at 4.
[146] *Jones v. Capitol Enters., Inc.*, 89 So. 3d 474, 485–87 (La. Ct. App. 4 Cir. 5/9/12).

## THE DUTY TO DEFEND ALLIED—THE "EIGHT-CORNERS RULE"

Because the Court finds Allied is an additional insured under the 2008-2009 Lexington Policy, the Court must determine whether Lexington owes a duty to defend Allied in the *Adams* and *St. Pierre* lawsuits. Under Louisiana law, an insurance policy is a contract and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[147] A liability insurer's duty to defend and the scope of its coverage are separate and distinct issues.[148] Under Louisiana law, an insurer's duty to defend is broader than its obligation to indemnify for damage claims.[149]

Louisiana courts apply the "eight-corners rule" to determine whether a liability insurer has the duty to defend a civil action against its insured; courts look to the "four corners" of the plaintiff's petition in the civil action and the "four corners" of the insurance policy to determine whether the insurer owes its insured a duty to defend.[150] One Louisiana court explained as follows:

> Under [the "eight-corners"] analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded.[151]

---

[147] *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 192, *on reh'g in part* (July 7, 2008).
[148] *Mossy Motors, Inc. v. Cameras Am.*, 2004-0726 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606, *writ denied*, 2005-1181 (La. 12/9/05), 916 So. 2d 1057.
[149] *Henly v. Phillips Abita Lumber Co.*, 2006-1856 (La. App. 1 Cir. 10/3/07), 971 So. 2d 1104, 1109.
[150] *Mossy*, 898 So. 2d at 606.
[151] *Id.* (citations omitted).

The duty to defend "arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[152] The insurer has a duty to defend unless the allegations in the petition for damages, as applied to the policy, unambiguously preclude coverage.[153] "Once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside the policy's coverage."[154]

Ordinarily, when a party files a motion for summary judgment regarding the duty to defend, the Court may consider only the plaintiff's petition[155] and the face of the policies; the parties cannot present any evidence such as affidavits or depositions.[156] Factual inquiries beyond the petition for damages and the relevant insurance policy are prohibited with respect to the duty to defend.[157] Any ambiguities within the policy are resolved in favor of the insured to effect, not deny, coverage.[158]

However, the insureds of Masse, including Lexington, were brought into the Consolidated State-Court Lawsuit via Allied's cross-claim and third-party demand.[159] In its cross-claim and third-party demand, Allied alleges it is entitled to defense and indemnity in the event it is found liable for the claims alleged in the underlying *Adams* or *St. Pierre* lawsuits.[160] The obligation to defend may result from the allegations of a cross-

---

[152] *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So. 2d 1213, 1218. *See also United Nat'l Ins. Co. v. Paul and Mar's Inc.*, No. 10-799, 2010 WL 2690615, at *2 (E.D. La. July 11, 2011).
[153] *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).
[154] *Treadway v. Vaughn*, 633 So. 2d 626, 628 (La. Ct. App. 1993), *writ denied*, 635 So. 2d 233 (La. 1994).
[155] As discussed below, the Court may also consider a third-party demand filed by the alleged insured.
[156] *Milano v. Bd. of Comm'rs of Orleans Levee Dist.*, 96-1368 (La. App. 4 Cir. 3/26/97), 691 So. 2d 1311, 1314.
[157] *Martco*, 588 F.3d at 872.
[158] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124.
[159] R. Doc. 444-15.
[160] *Id.*

claim or third-party demand rather than solely from the original petitions.[161] Allied's cross-claim and third-party demand incorporates the allegations of the *Adams* and *St. Pierre* petitions, which are based on the plaintiffs' exposure to harmful substances emanating from the Allied shipyard. As a result, to the extent necessary, the Court will consider Allied's cross-claim and third-party demand, the underlying *Adams* and *St. Pierre* petitions, and Lexington's insurance policy issued to Masse to determine whether Lexington owes a duty to defend or indemnify Allied.

1. *The Allegations of the Consolidated State-Court Lawsuit and Allied's Cross-Claim and Third-Party Demand*

In *Adams, et al. v. Allied Shipyard, Inc., et al.*, the plaintiffs allege in their sixth amended petition they "are residents of a neighborhood that borders" Allied's shipyard.[162] They further allege Allied, whose shipyard has been operating since the 1960s, has been operating "without appropriate borders to stop the resulting by-products, including, but not limited to, sand, dirt/dust, paint and various metals, produced by its sandblasting from permeating the neighborhood."[163] The *Adams* plaintiffs allege Allied's negligence has "expos[ed] the residents to dust, sand, paint and various metals, as well as other substances."[164] The petition alleges that the plaintiffs' "long, consistent and protracted" exposure and "inhalation of . . . by-products" has caused the plaintiffs to contract severe diseases and illnesses "that are painful and disabling," including Wegener's granulomatosis, IgA nephropathy, Scleroderma, coughing, wheezing, Chronic

---

[161] *See, e.g.*, *Gootee Constr., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 15-3185, 2016 WL 1545658 (E.D. La. Apr. 15, 2016) (considering general contractor's third-party demand along with subcontractor's insurance policy to determine whether insurer owed a duty to defend the subcontractor); *Hanover Ins. Co. v. Plaquemines Parish Gov't*, No. 12-1680, 2015 WL 5093452 (E.D. La.) (considering third party demand to determine an insurer's duty to defend).
[162] R. Doc. 443-9.
[163] R. Doc. 443-9.
[164] R. Doc. 443-9.

Obstructive Pulmonary Disease, and migraine headaches.[165] Allied filed a supplemental and amended third-party demand against Masse, alleging Masse's "actions and activities, and failure to perform their contracted job responsibilities[,] initiated the claims of the[*Adams* and *St. Pierre*] petitioners."[166] The *Adams* plaintiffs adopted all allegations asserted against Allied and asserted the same allegations against Masse.[167]

In *St. Pierre, et al. v. Allied Shipyard, Inc.*, the plaintiffs allege they lived in a residence near Allied's shipyard for approximately eight years preceding 2010.[168] The *St. Pierre* plaintiffs allege that Allied was negligent when performing its operations, which "resulted in the release into the atmosphere and environment in the neighborhoods surrounding the shipyard of hazardous substances, including, but not limited to, paint, sand and silica."[169] The petition alleges that, as a result, the plaintiffs were exposed to the hazardous substances and "have suffered personal injury, mental anguish, health problems, inconvenience, distress, loss of consortium, fear of disease, and other damages."[170]

On August 18, 2016, Allied filed a cross-claim and third-party demand against the insurers of Masse, seeking a declaration of its status as an additional insured and of its right to defense and indemnity under those policies.[171] In its cross-claim against the insurers of Masse, Allied alleges it executed a Master Work Contract with Masse in 1995, which required Masse to obtain policies of insurance and to name Allied as an additional

---

[165] R. Doc. 443-9.
[166] R. Doc. 444-11 at 2.
[167] R. Doc. 444-6 at 3.
[168] R. Doc. 443-12.
[169] *Id.*
[170] *Id.*
[171] R. Doc. 443-15.

insured.[172] Allied further alleges it is entitled to defense and indemnity from Masse's insurers under the policies issued to Masse, but that none of Masse's insurers have provided Allied a defense or indemnity as an additional insured.[173]

Considering the eight corners of Allied's cross-claim and third-party demand, the underlying *Adams* and *St. Pierre* petitions, and Lexington's insurance policy issued to Masse, to determine whether Lexington owes a duty to defend Allied, the Court finds that Lexington owes Allied defense as an additional insured under the Additional Insured Endorsement, if other provisions of the policy are satisfied. Specifically, the Additional Insured Endorsement contains a provision with respect to excess insurance, which may preclude Lexington's duty to defend Allied as an additional insured under the 2008-2009 Lexington Policy.

2. *Lexington as an Excess Insurer Under the 2008-2009 Lexington Policy*

Even though the Court has determined Allied is an additional insured under the 2008-2009 Lexington Policy issued to Masse, Lexington currently owes no duty to defend Allied in the *Adams* and *St. Pierre* lawsuits. The Additional Insured Endorsement precludes coverage for an additional insured until all other valid and collectible insurance available to it is exhausted. The Additional Insured Endorsement of the 2008-2009 Lexington Policy provides:

> Any coverage provided by this endorsement to an additional insured shall be *excess over* any other valid and collectible insurance available to the additional insured, whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.[174]

---

[172] R. Doc. 444-15 at 3.
[173] R. Doc. 444-15 at 3.
[174] R. Doc. 444-17 at 37 (emphasis added).

In Louisiana, "an excess insurer does not owe its insured a defense of a claim within a primary insurer's limits."[175] "[A]n excess insurance policy provides coverage that begins only after a predetermined amount of primary coverage is exhausted."[176] It is not until the claim exceeds the limits of an insured's primary coverage that the excess insurer has a duty to defend the insured.[177] The rationale for limiting an excess insurer's duty to defend is rooted in the principle that covering only those damages in excess of the primary insurer's limits reduces the risk that an excess insurer will have to pay for losses incurred by the insured. This reduced risk translates into reduced premiums, as "inexpensive premiums reflect an excess insurer's desire to limit its exposure and the insured's willingness to take on the corresponding level of risk."[178]

It is undisputed that Gray Insurance Company provides primary insurance to Allied.[179] Allied further admits it has not exhausted its available primary insurance under Gray's policy.[180] The 2008-2009 Lexington Policy provides that Lexington's coverage to an additional insured is excess unless "a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis."[181] It is undisputed that neither the 1995 nor the 2007 Master Work Contracts between Allied and Masse require the coverage afforded to Allied to be primary or non-contributory.[182] As a

---

[175] *Easton v. Chevron Indus., Inc.*, 602 So. 2d 1032, 1041 (La. Ct. App. 4 Cir. 5/28/1992), *writ denied*, 604 So. 2d 1315 (La. 1992), and *writ denied*, 604 So. 2d 1318 (La. 1992) (quoting *Lumbermen's Mutual Casualty Co. v. Connecticut Fire Insurance Co*., 239 So. 2d 472, 474 (La. Ct. App. 4 Cir. 6/6/1970), *writ denied*, 241 So. 2d 255 (1970)).

[176] *Id.* (quoting *Steve D. Thompson Trucking, Inc. v. Twin City Fire Ins. Co.*, 832 F.2d 309, 310 (5th Cir. 1987)).

[177] *See Am. Home Assur. Co. v. Czarniecki*, 230 So. 2d 253, 260 (1969).

[178] *Lamarque Ford, Inc. v. Fed. Ins. Co.*, No. 10-4355, 2011 WL 2020566, at *5 (E.D. La. May 24, 2011) (citing *Harville v. Twin City Fire Ins. Co.*, 885 F.2d 276, 279 (5th Cir. 1989)).

[179] R. Doc. 444-2 at 7, ¶ 23; R. Doc. 492 at 3, ¶ 23. Gray is currently providing a defense to Allied in the Consolidated State-Court Lawsuit. *Id.*

[180] R. Doc. 444-2 at 7, ¶ 25; R. Doc. 492 at 3, ¶ 25.

[181] R. Doc. 444-17 at 37.

[182] R. Doc. 444-2 at 7, ¶ 24; R. Doc. 492 at 3, ¶ 24; R. Doc. 444-19.

result, Lexington, as Allied's excess insurer, owes no duty to defend Allied until Allied has exhausted its available primary insurance. In the event Allied exhausts its available primary insurance, as well as other excess insurance, Lexington's duty to defend Allied may arise. If such an event occurs, Allied may seek a declaration of Lexington's duty to defend it as an additional insured under the 2008-2009 Lexington Policy against the claims made in the *Adams* and *St. Pierre* lawsuits.[183]

## CONCLUSION

**IT IS ORDERED** that Lexington's Motion for Summary Judgment with respect to Allied's status as an additional insured and to Lexington's duty to defend Allied in the *Adams* and *St. Pierre* lawsuits as an additional insured under the 2000-2001 Lexington Policy is **GRANTED**.[184]

**IT IS FURTHER ORDERED** that Lexington's Motion for Summary Judgment with respect to Allied's status as an additional insured and to Lexington's duty to defend Allied in the *Adams* and *St. Pierre* lawsuits as an additional insured under the 2008-2009 Lexington Policy is **GRANTED**.[185]

**New Orleans, Louisiana, this 12th day of July, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[183] Alternatively, Allied argues if it is not an additional insured under the Additional Insured Endorsement, it is afforded coverage under the Contractual Liability Exclusion in the 2008-2009 Lexington Policy. R. Doc. 451 at 2. The Contractual Liability Exclusion is just that—a coverage exclusion—and does not afford any rights to Allied.
[184] R. Doc. 443.
[185] R. Doc. 444.