**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HANOVER INSURANCE COMPANY,**   **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2375 c/w**   **14-1930, 14-1933,**   **16-2490** |
| **SUPERIOR LABOR SERVICES,**   **INC., ET AL.,**   **Defendants** | **SECTION "E"** |

***Applies to:*** **16-2490**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Great American Excess & Surplus Insurance Company ("Great American") regarding its duty to defend and duty to indemnify Allied Shipyard, Inc. against claims made in the underlying *St. Pierre* state-court lawsuit, more fully described below, as an additional insured under Masse's policies.[1] Allied opposes the motion.[2] For the reasons set forth below, Great American's motion is **GRANTED**.

## BACKGROUND

### A. State-Court Lawsuits

This is a consolidated action. The case originates from two personal-injury actions ("State-Court Lawsuits") filed in state court against Allied Shipyard, Inc. ("Allied"): *Adams, et al. v. Allied Shipyard, Inc., et al.* and *St. Pierre, et al. v. Allied Shipyard, Inc.*[3] The plaintiffs in the State-Court Lawsuits allege Allied negligently performed

---

[1] R. Docs. 447. Unless otherwise indicated, "R. Doc." refers to record documents in the consolidated matter, No. 11-2375. The caption of Great American's motion for summary judgment indicates the motion applies to Nos. 14-1933 and 16-2490. Great American is no longer a party in 14-1933.

[2] R. Doc. 449.

[3] R. Docs. 444-3, 444-4, 444-5, 444-6, 444-7, 444-8, 444-9 (*Adams* Petitions for Damages); R. Doc. 444-12 (*St. Pierre* Petition for Damages).

sandblasting activities and seek resulting damages. The two cases were consolidated in state court on September 9, 2013.[4]

In both State-Court Lawsuits, Allied filed third-party demands against its contractors who performed the sandblasting jobs, including Superior Labor Services, Inc. ("Superior") and Masse Contracting, Inc. ("Masse").[5] Specifically, Allied alleges that Superior and Masse contracted with Allied to perform certain tasks and to indemnify Allied under master work contracts.[6] Allied seeks indemnity from Superior and from Masse with respect to the claims in the State-Court Lawsuits.[7]

The plaintiffs in *Adams* amended their petition to name Superior, Masse, other subcontractors, and Gray Insurance Company as direct defendants.[8]

The third-party-defendant contractors "in turn sought coverage, defense and/or indemnity from their various insurers for the periods of time when these jobs were allegedly performed, which prompted the insurers to file lawsuits in federal courts."[9]

On August 18, 2016, Allied filed a cross-claim and third-party demand in state court against its direct insurer, Gray, and against Masse and Superior's insurers, seeking a declaration that it has a right to defense and indemnity as well as a declaration of its status as an additional insured under Masse and Superior's policies.[10]

---

[4] *See* R. Doc. 261-5.
[5] *See* R. Docs. 444-10, 444-11, 444-13, 444-14.
[6] *See* R. Docs. 444-10, 444-11, 444-13, 444-14.
[7] *See* R. Docs. 444-10, 444-11, 444-13, 444-14.
[8] *See* R. Docs. 444-3, 444-4, 444-5, 444-6, 444-7, 444-8, 444-9.
[9] R. Doc. 174-1 at 2.
[10] *See* R. Doc. 444-15.

The *Adams* plaintiffs filed their sixth amended petition in state court on April 29, 2016.[11] The *St. Pierre* plaintiffs have not amended their original petition, which was filed on December 8, 2010.[12]

B.  Declaratory Actions in Federal Court

Four federal actions related to the Consolidated State-Court Lawsuit are pending in this Court. The Court consolidated the first three cases—11-2375, 14-1930, and 14-1933—on November 21, 2014, and consolidated 16-2490 with those cases on August 10, 2016.[13]

1.  *No. 11-2375*

On September 21, 2011, Hanover Insurance Company ("Hanover") filed a complaint in this Court.[14] Hanover filed an amended complaint on September 27, 2012.[15] Hanover alleges it has been participating in the defense of Superior against Allied's third-party demands in the Consolidated State-Court Lawsuit.[16] Hanover maintains the other insurers it names in its federal suit "are not participating in Superior's defense" in the Consolidated State-Court Lawsuit.[17] Hanover seeks judgment against Superior declaring that it has no duty to defend or indemnify Superior in the Consolidated State-Court Lawsuit.[18] If Hanover has a duty to defend or indemnify Superior, Hanover seeks declaratory judgment that State National Insurance Company ("State National"), Arch Insurance Company ("Arch"), and "other unidentified insurance companies collectively

---

[11] R. Doc. 444-9.
[12] R. Doc. 444-12.
[13] *See* R. Docs. 108, 368.
[14] *Hanover Ins. Co. v. Superior Labor Servs., Inc., et al.*, No. 11-2375.
[15] R. Doc. 69.
[16] *Id.* at ¶¶ 23–24.
[17] *Id.* at ¶ 26.
[18] *Id.* at ¶¶ 22–23.

named as ABC Insurance Company" are liable "for their share of defense and indemnity to be paid on behalf of Superior" in the Consolidated State-Court Lawsuit.[19] Hanover also seeks reimbursement, contribution, and/or damages from State National, Arch, and other unidentified insurance companies for defense costs already incurred by Hanover on behalf of Superior in the Consolidated State-Court Lawsuit that, Hanover argues, should have been paid by those insurance companies.[20]

On January 14, 2015, Hanover filed a second supplemental and amending complaint naming Allied as a defendant.[21] Hanover alleges that "Allied has tendered the [Consolidated State-Court Lawsuit] to Hanover for defense and indemnity in its capacity as an alleged additional insured" under Superior's policies, and Hanover has offered to participate in Allied's defense in the Consolidated State-Court Lawsuit subject to a full reservation of rights.[22] Hanover alleges that Allied is not an additional insured under Hanover's policies, and Hanover seeks judgment against Allied declaring that it has no duty to defend or indemnify Allied in the Consolidated State-Court Lawsuit.[23] In the alternative, if the Court finds Hanover has a duty to defend or indemnify Allied, Hanover seeks judgment declaring that Arch, State National, and other unidentified insurance companies are obligated to pay their portions of defense costs and/or indemnity incurred by Hanover on behalf of Superior and Allied in the Consolidated State-Court Lawsuit.[24]

---

[19] *Id.* at ¶ 2.
[20] *Id.* at ¶ 3.
[21] R. Doc. 125.
[22] *Id.* at ¶ 79.
[23] *Id.* at 9.
[24] *Id.* The Court denied Hanover's motions for partial summary judgment on its duty to defend Masse, Superior, and Allied as an additional insured in both the *Adams* and *St. Pierre* lawsuits. R. Docs. 341, 342.

On March 8, 2012, State National filed a crossclaim for declaratory judgment against Superior.[25] State National filed its first amended crossclaim for declaratory judgment on September 27, 2012.[26] State National filed a second amended crossclaim for declaratory judgment on January 14, 2015, naming Allied as a defendant-in-crossclaim.[27] State National seeks judgment declaring that there is no coverage afforded to Superior under the State National policies issued to Superior and that State National has no duty to defend or indemnify Superior in the Consolidated State-Court Lawsuit.[28] State National also seeks a declaration that the State National policies afford no coverage to Allied as a purported additional insured and that State National does not owe a duty to defend or indemnify Allied in the Consolidated State-Court Lawsuit.[29]

### 2. *No. 14-1930*

On August 22, 2014, Arch Insurance Company brought an action for declaratory judgment against Superior and Allied.[30] Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Superior," with respect to Superior's request for defense and indemnity in the Consolidated State-Court Lawsuit.[31] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional insured status under the Superior policies and defense and

---

[25] R. Doc. 29.
[26] R. Doc. 67.
[27] R. Doc. 135.
[28] *Id.* at ¶ 19.
[29] *Id.* The Court granted State National's motion for summary judgment, finding it had no duty to defend Masse, Superior, and Allied as an additional insured in the *Adams* lawsuit, and denied State National's motion for summary judgment, finding it had a duty to defend Masse, Superior, and Allied as an additional insured in the *St. Pierre* lawsuit. R. Doc. 347. The Court declined to rule on any insurer's duty to indemnify until the underlying state-court proceedings in the *Adams* and *St. Pierre* matters are resolved. R. Doc. 426 at 5.
[30] *Arch Ins. Co. v. Superior Labor Servs., Inc. et al.*, No. 14-1930.
[31] No. 14-1930, R. Doc. 1 at ¶ 3.

indemnity of Allied in the Consolidated State-Court Lawsuit.[32] Arch seeks a declaration against Superior and Allied that Arch has no defense or indemnity obligation to Superior or Allied in the Consolidated State-Court Lawsuit.[33] Arch also seeks recovery of the portion of defense costs already incurred by it on behalf of Superior.[34]

### 3. No. 14-1933

On August 22, 2014, Arch also filed an action for declaratory judgment against Masse and Allied. Arch seeks a declaration of its rights and responsibilities under "certain insurance policies issued by Arch to Masse," with respect to Masse's request for defense and indemnity in the Consolidated State-Court Lawsuit.[35] Arch also seeks a declaration of its rights and responsibilities with respect to Allied's request for additional insured status under the Masse policies and defense and indemnity of Allied in the Consolidated State-Court Lawsuit.[36] Arch seeks a declaration against Masse and Allied that Arch has no defense or indemnity obligation to Masse in the Consolidated State-Court Lawsuit.[37]

On January 14, 2015, Hanover filed a complaint in intervention in Case No. 14-1933 against Defendants Masse and Allied.[38] Hanover seeks judgment declaring that Hanover has no obligation to defend or indemnify Masse or Allied in the State-Court Lawsuits.[39]

---

[32] *Id.* at ¶ 4.
[33] *Id.* at ¶¶ 21, 47.
[34] *Id.* at ¶ 47. The Court denied with prejudice Arch's motions for summary judgment, finding it had a duty to defend Masse and Superior as insureds and Allied as an additional insured in the *Adams* and *St. Pierre* lawsuits. R. Doc. 418. The Court denied without prejudice Arch's motions for summary judgment with respect to Arch's duty to indemnify Masse and Superior as insureds and Allied as an additional insured. *Id.*
[35] No. 14-1933, R. Doc. 1 at ¶ 3.
[36] *Id.* at ¶ 4.
[37] *Id.* at ¶ 46.
[38] R. Doc. 128.
[39] *Id.*

State National Insurance Company ("State National") also filed a petition for intervention for declaratory judgment on January 14, 2015.[40] State National issued two marine general liability policies to Masse that provided coverage from November 15, 2006, to November 15, 2007, and from November 15, 2007, to November 15, 2008.[41] Allied seeks additional insured status under the policies issued by State National to Masse.[42] State National seeks a judgment declaring there is no coverage afforded to Masse under the State National policies and that State National has no duty to defend or indemnify Masse in the Consolidated State-Court Lawsuit.[43] State National also seeks a declaration that "there is no coverage afforded to Allied under the [State National] policies as a purported additional insured" and that State National does not owe a duty to defend or indemnify Allied in the Consolidated State-Court Lawsuit.[44]

On April 13, 2016, Lexington intervened in Arch's declaratory judgment action in its capacity as an insurer of Masse, and likewise, sought determinations of coverage for Masse as an insured and Allied as an additional insured for the claims asserted in the underlying Consolidated State-Court Lawsuit.[45] Lexington issued two commercial general liability policies to Masse—one in effect from February 16, 2000 to February 16, 2001 ("2000-2001 Lexington Policy") and another in effect from November 15, 2008 to November 15, 2009 ("2008-2009 Lexington Policy").[46]

---

[40] R. Doc. 132.
[41] *Id.* at ¶ 14.
[42] *Id.* at ¶ 3.
[43] *Id.* at ¶ 19.
[44] *Id.*
[45] No. 11-2375, R. Doc. 354.
[46] *Id.*

### 4. 16-2490

On March 25, 2016, Great American E&S Insurance Company ("Great American") filed a complaint in this Court.[47] Great American filed an amended complaint on August 26, 2016, adding Gray.[48] Great American seeks a declaration of its rights and responsibilities as it relates to its duties to defend or indemnify Masse as an insured or Allied as an additional insured under the Great American Policies with respect to the claims in the *Adams* and *St. Pierre* lawsuits.[49] If Great American has a duty to defend or indemnify Masse as an insured or Allied as an additional insured in the Consolidated State-Court Lawsuit, Great American seeks declaratory judgment that "any such obligation should be proportionate to its time on the risk as compared to the period of time during which the underlying Plaintiff's toxic exposures allegedly occurred."[50] Alternatively, if Great American has a duty to defend or indemnify Masse as an insured or Allied as an additional insured, Great American seeks declaratory judgment that Great American is entitled to contribution from Arch Insurance Company, United Capitol Insurance Company, Lexington Insurance Company, Atlantic Insurance Company, State National Insurance Company, Underwriters at Lloyd's, London, and Clarendon National Insurance Company.[51]

### C. Great American's Motion for Partial Summary Judgment

Great American filed this motion for partial summary judgment on January 23, 2017 regarding its duty to defend and duty to indemnify Allied as an additional insured

---

[47] *Great American E&S Ins. Co. v. Masse Contracting, Inc., et al.*, No. 16-2490 (E.D. La.).
[48] R. Doc. 371.
[49] *Id.* at ¶¶ 38–48.
[50] *Id.* at ¶ 50.
[51] *Id.* at ¶ 52. In its opposition to Gray's motion to dismiss, Great American states Gray was "inadvertently omitted from the list of insurers that are alleged to owe contribution." R. Doc. 480 at 3, n.7. Paragraph 7 of the prayer for relief in the amended complaint, however, includes Gray as a defendant. R. Doc. 371.

under the policies issued to Masse against the claims made in the underlying *St. Pierre* lawsuit.[52]

## CONSIDERATION OF DECLARATORY JUDGMENT ACTIONS

Great American seeks a declaratory judgment that Allied is not an additional insured under Great American's policies issued to Masse and that Great American has no duty to defend or indemnify Allied in the *St. Pierre* lawsuit. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[53]

The Court must determine whether it will hear the Great American's declaratory judgment claim against Allied before considering a motion for summary judgment. The Fifth Circuit has explained that, when considering a declaratory judgment action, a district court must engage in a three-step inquiry to determine whether to decide or dismiss a complaint for declaratory relief.[54] First, the Court must determine whether the action is justiciable.[55] Second, the Court must determine whether it has the authority to grant declaratory relief.[56] Third, the Court must determine "how to exercise its broad discretion to decide or dismiss a declaratory judgment action."[57]

---

[52] R. Doc. 447. Great American is not seeking partial summary judgment with respect to its duty to defend or indemnify Masse in the *St. Pierre* or the *Adams* lawsuits. Neither is Great American seeking partial summary judgment with respect to its duty to defend or indemnify Allied in the *Adams* lawsuit.
[53] 28 U.S.C. § 2201.
[54] *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). *See also Aggreko, LLC v. Am. Home Assur. Co.*, No. 14-1215, 2014 WL 6901376, at *3 (E.D. La. Dec. 5, 2014).
[55] *Id.*
[56] *Id.*
[57] *Id.*

A.    <u>Justiciability</u>

The justiciability doctrines of standing, mootness, political question, and ripeness derive from Article III's "case or controversy" requirement.[58] In a declaratory judgment action, justiciability often turns on ripeness.[59] This case is no exception.

The ripeness doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[60] The purpose of this doctrine is to forestall "entangl[ement] . . . in abstract disagreements" through "avoidance of premature adjudication."[61] "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[62]

The Fifth Circuit has recognized that "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge."[63] This stems primarily from the fact that declaratory relief often involves an *ex ante* determination of rights, *i.e.*, a determination of rights before an injury has occurred, that "exists in some tension with traditional notions of ripeness."[64] Fortunately, this challenge is not presented today, because the Court's analysis is guided by a distinct subset of ripeness jurisprudence on disputes regarding the duty to defend.

---

[58] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012).
[59] *See id*; *Orix*, 212 F.3d at 895; *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989).
[60] *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).
[61] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).
[62] *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149).
[63] *Orix*, 212 F.3d at 896 (internal quotation marks omitted).
[64] *Id.*

Because the duty to defend does not depend on the outcome of the underlying law suit,[65] a duty-to-defend claim is ripe when the underlying suit is filed.[66] Accordingly, Great American's claim with respect to its duty to defend Allied is ripe, and the Court finds this claim is justiciable.

B.  <u>Mandatory Abstention</u>

The Fifth Circuit has explained that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act."[67] The Fifth Circuit has provided an analysis with respect to a district court's authority to issue a declaratory judgment so as to not allow a declaratory plaintiff an end run around the requirements of the Anti-Injunction Act. The district court cannot consider the merits of a declaratory judgment action when (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff; (2) the state case involves the same issues as those involved in the federal case; and (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act.[68] The Fifth Circuit in *Jackson* held "if an injunction would be barred by [the Anti-Injunction Act], this should also bar the issuance of a declaratory judgment that

---

[65] *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 52 (La. 2005).
[66] *See Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 110 (5th Cir. 2008) ("An actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's *duty to defend.*") (emphasis in original); *Morad v. Aviz*, No. 12-2190, 2013 WL 1403298, at *2 (E.D. La. Apr. 5, 2013) ("Courts have routinely held that courts may determine an insurer's duty to defend even before the underlying suit is decided."); *Greenwich Ins. Co. v. Capsco Indus., Inc.*, No. 1:14CV297-LG-JCG, 2014 WL 5025856, at *2 (S.D. Miss. Oct. 8, 2014).
[67] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993) (citing *Tex. Emps. Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988)). The Anti-Injunction Act states, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.
[68] *Travelers*, 996 F.2d at 776 (citing *Jackson*, 862 F.2d at 506); *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003).

would have the same effect as an injunction."[69] The first factor in this analysis is not met in this case. Great American, the declaratory judgment plaintiff in the federal action, filed its declaratory judgment action on March 25, 2016, months before Allied, the declaratory defendant in the federal action, filed its cause of action against Great American in state court on August 18, 2016.[70] The presence of all three factors mandates abstention. The want of any one factor defeats mandatory abstention.[71] Because the first factor has not been met, abstention is not mandatory.

C.     Discretion to Exercise Jurisdiction on the Duty to Defend

Because there is no mandatory abstention, the Court must consider, in its discretion, whether to exercise jurisdiction over Great American's claim against Allied. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," even when subject-matter jurisdiction is otherwise proper.[72] In *Wilton v. Seven Falls Co.*, the Supreme Court held that the discretionary standard of *Brillhart v. Excess Ins. Co. of America*[73] governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state-court proceedings.[74] "Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard."[75] There are three overarching considerations in the Supreme Court's analysis in *Brillhart*: federalism,

---

[69] *Jackson*, 862 F.2d at 506.
[70] Allied filed a cross-claim and third-party demand in state court seeking a declaration that the insurers of Masse and Superior owe Allied a duty to defend and a duty to indemnify. R. Doc. 444-15.
[71] *Sealed v. Sealed*, 33 F.3d 1379 (5th Cir. 1994).
[72] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).
[73] *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942).
[74] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995).
[75] *Id.* at 282.

fairness, and efficiency.[76] "Despite the circuits' different expressions of the *Brillhart* factors, each circuit's formulation addresses the same three aspects of the analysis."[77]

The Fifth Circuit uses the *Trejo* factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[78]

1.    Nature of Pending State Court Action

The first *Trejo* factor requires comparison of the declaratory judgment action with the underlying state-court action.[79] "If there is a pending related state proceeding but it is not 'parallel' because it does not involve all the same parties or issues, the federal district court properly considers the extent of similarity between the pending state court

---

[76] *Sherwin-Williams*, 343 F.3d at 390.
[77] *Id.*
[78] *Sherwin-Williams*, 343 F.3d at 388, 390.
[79] *See id.* at 393–94.

and federal court cases in deciding which court should decide the dispute, rather than relying on a *per se* rule."[80]

On March 25, 2016, Great American filed its declaratory judgment action in federal court, seeking a declaration of whether Great American has a duty to defend or indemnify Masse as an insured or Allied as an additional insured in both the *Adams* and *St. Pierre* lawsuits. At the time Great American filed its declaratory judgment action in this Court, the question of Great American's duty to defend or indemnify Allied as an additional insured was not before the state court. After Great American filed its declaratory action in this Court, Allied filed a cross claim and third-party demand in state court seeking a declaration that the insurers of Masse, including Great American, owe Allied duties to defend and indemnify.[81] Great American's federal declaratory judgment claim against Allied and Allied's third-party demand filed in state court are parallel, as they both seek a declaration as to Great American's duty to defend and indemnify Allied as an additional insured under Great American's policies issued to Masse in the *Adams* and *St. Pierre* lawsuits. As a result, the first *Trejo* factor weighs against exercising jurisdiction.

2.      Suit Filed in Anticipation of Lawsuit

The *St. Pierre* lawsuit was filed on December 8, 2010,[82] and the *Adams* lawsuit was filed on December 28, 2010.[83] Great American filed its declaratory judgment claim against Allied in federal court on March 25, 2016.[84] Allied's cross-claim against Great American was filed on August 18, 2016.[85] Great American likely was aware that its

---

[80] *See Sherwin-Williams*, 343 F.3d at 394 n.5.
[81] *See* R. Doc. 444-15.
[82] R. Doc. 444-12.
[83] R. Doc. 444-3.
[84] *Great American E&S Ins. Co. v. Masse Contracting, Inc., et al.*, No. 16-2490 (E.D. La.).
[85] R. Doc. 444-15.

insurance coverage of Allied as an additional insured would become an issue in the pending State-Court Lawsuits. Therefore, Great American may have filed its declaratory judgment action in anticipation of becoming a party to the pending State-Court Lawsuits.[86] The second *Trejo* factor weighs against exercising jurisdiction.[87]

### 3. Forum Shopping

That Great American could have intervened and requested declaratory judgment in the State-Court Lawsuits does not necessarily demonstrate forum shopping.[88] Courts are less likely to find forum shopping where, as here, (1) a foreign insurer files a diversity action in federal court, and (2) the selection of the federal forum does not change the applicable law.[89] "The record does not support a finding that [Great American] engaged in impermissible forum shopping by filing this declaratory judgment suit."[90] The third *Trejo* factor weighs in favor of exercising jurisdiction.

### 4. Inequities

The Court cannot conceive of any inequities that flow from allowing Great American to proceed in this action while the State-Court Lawsuits remain pending. No party will be prejudiced if this Court decides whether Great American has a duty to defend Allied as an additional insured before resolution of the State-Court Lawsuits. The fourth *Trejo* factor weighs in favor of exercising jurisdiction.

---

[86] *See Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *4 (E.D. La. Oct. 23, 2013) (noting the plaintiff "was aware the issue of its insurance coverage of [the defendant] would be at issue in the pending state court proceeding," concluding that "it can be assumed that [the plaintiff] filed for Declaratory Judgment on June 10, 2013 in anticipation of becoming a party to that pending state court action," and finding the second *Trejo* factor weighs against exercising jurisdiction).
[87] *See U.S. Fire*, 2015 WL 1416490, at *4.
[88] *See id.*
[89] *See Sherwin-Williams*, 343 F.3d at 399.
[90] *Id.* at 400. *See also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015) (per curiam).

5.   Convenience of Federal Forum

The State-Court Lawsuits are pending in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[91] The state courthouse for the 17th Judicial District Court for Lafourche Parish is approximately 60 miles west of the federal courthouse in New Orleans. No party argues that this forum is inconvenient or that either forum is more convenient than the other for the parties or for the witnesses. This factor is neutral.[92]

6.   Judicial Economy

Great American's declaratory judgment action in this Court has been pending for over a year. All cases surrounding this controversy have been before this Court for five years. The issue of whether Great American has a duty to defend Allied as an additional insured in the State-Court Lawsuits has been fully briefed before this Court. Exercising jurisdiction is in the interest of judicial economy.[93] This factor weighs in favor of exercising jurisdiction.

7.   Interpretation of Decree from Parallel State Proceeding

Although a part of the State-Court Lawsuits and this action are parallel, filings by Allied in state court seeking a declaration of its rights to defense and indemnity were made

---

[91] *See* R. Docs. 228-5, 228-6.

[92] *See GlobalSantaFe Drilling Co. v. Quinn*, No. 12-1987, 2012 WL 4471578, at *4 (E.D. La. Sept. 26, 2012) ("It does not appear that the Eastern District of Louisiana is any more convenient or less convenient of a forum; the parties are located outside the state but the witnesses are located within. Therefore, this factor is neutral." (citations omitted)); *Great Am. Ins. Co. v. Cumberland Inv. Grp., LLC*, No. 13-4763, 2013 WL 5755641, at *5 (E.D. La. Oct. 23, 2013); *Gemini Ins. Co. v. Turner Indus. Grp., LLC*, No. 13-05922, 2014 WL 3530475, at *5 (E.D. La. July 16, 2014).

[93] *See Ironshore*, 624 F. App'x at 168 (finding that the judicial economy factor weighed against dismissal when the parties had "already fully briefed the insurance coverage issues to the district court and entered into extensive factual stipulations"); *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373 (5th Cir. 1998) (finding that judicial economy weighed against dismissal in part because "there [were] no factual disputes between the parties and . . . they have fully briefed the merits of the insurance issues").

after the filing of Great American's declaratory judgment claim against Allied in this Court.[94] This Court is unaware of a ruling by the state court on the issue of Allied's rights to defense or indemnity from Great American, and there is no indication that such a ruling is imminent. This Court need not interpret any decree issued in the State-Court Lawsuits to determine whether Great American has a duty to defend. The seventh *Trejo* factor weighs in favor exercising jurisdiction.[95]

Four of the *Trejo* factors weigh in favor of exercising jurisdiction, while two weigh against and one is neutral. The Court will exercise jurisdiction over the question of Great American's duty to defend Allied as an additional insured.

## LOUISIANA LAW ON THE DUTY TO DEFEND

Under Louisiana law, an insurance policy is a contract and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[96] A liability insurer's duty to defend and the scope of its coverage are separate and distinct issues.[97] Under Louisiana law, an insurer's duty to defend is broader than its obligation to indemnify for damage claims.[98]

Great American is seeking declaratory relief against Allied on two causes of action—its duty to defend and its duty to indemnify. The Court will first consider Great American's duty to defend Allied as an additional insured.

---

[94] R. Doc. 444-15. Allied filed its third-party demand on August 18, 2016, months after Great American filed its declaratory judgment action in federal court on March 25, 2016.

[95] *Ironshore*, 624 F. App'x at 168 ("The seventh and last factor . . . weighs against dismissal. There is no need to construe a state judicial decree to resolve the issues in this case."). *See also U.S. Fire*, 2015 WL 1416490, at *5.

[96] *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 192, *on reh'g in part* (July 7, 2008).

[97] *Mossy Motors, Inc. v. Cameras Am.*, 2004-0726 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606, *writ denied*, 2005-1181 (La. 12/9/05), 916 So. 2d 1057.

[98] *Henly v. Phillips Abita Lumber Co.*, 2006-1856 (La. App. 1 Cir. 10/3/07), 971 So. 2d 1104, 1109.

1.  The "Eight-Corners Rule"

Louisiana courts apply the "eight-corners rule" to determine whether a liability insurer has the duty to defend a civil action against its insured; courts look to the "four corners" of the plaintiff's petition in the civil action and the "four corners" of the insurance policy to determine whether the insurer owes its insured a duty to defend.[99] One Louisiana court explained as follows:

> Under [the "eight-corners"] analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded.[100]

The duty to defend "arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[101] The insurer has a duty to defend unless the allegations in the petition for damages, as applied to the policy, unambiguously preclude coverage.[102] "Once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside the policy's coverage."[103]

When a party files a motion for summary judgment regarding the duty to defend, the Court may consider only the plaintiff's petition and the face of the policies; the parties

---

[99] *Mossy*, 898 So. 2d at 606.
[100] *Id.* (citations omitted).
[101] *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So. 2d 1213, 1218. *See also United Nat'l Ins. Co. v. Paul and Mar's Inc.*, No. 10-799, 2010 WL 2690615, at *2 (E.D. La. July 11, 2011).
[102] *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).
[103] *Treadway v. Vaughn*, 633 So. 2d 626, 628 (La. Ct. App. 1993), *writ denied*, 635 So. 2d 233 (La. 1994).

cannot present any evidence such as affidavits or depositions.[104] Factual inquiries beyond the petition for damages and the relevant insurance policies are prohibited with respect to the duty to defend.[105] Any ambiguities within a policy are resolved in favor of the insured to effect, not deny, coverage.[106]

The insurers of Masse, including Great American, were brought into the State-Court Lawsuits via Allied's cross-claim and third-party demand.[107] In its cross-claim and third-party demand, Allied alleges it is entitled to defense and indemnity in the event it is found liable for the claims alleged in the underlying *Adams* or *St. Pierre* lawsuits.[108] The claims set forth in the *Adams* and *St. Pierre* petitions are for damages based on the plaintiffs' exposure to harmful substances emanating from the Allied shipyard. As a result, the Court must consider Allied's cross-claim and third-party demand, the underlying *St. Pierre* petition, and Great American's insurance policies issued to Masse to determine whether Great American owes a duty to defend or indemnify Allied.[109]

2. The Policies

Great American issued two commercial general liability insurance policies to Masse: one that provided coverage from November 16, 1996 through November 16,

---

[104] *Milano v. Bd. of Comm'rs of Orleans Levee Dist.*, 96-1368 (La. App. 4 Cir. 3/26/97), 691 So. 2d 1311, 1314.

[105] *Martco*, 588 F.3d at 872.

[106] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124.

[107] R. Doc. 444-15.

[108] *Id.*

[109] *See, e.g.*, *Gootee Constr., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 15-3185, 2016 WL 1545658 (E.D. La. Apr. 15, 2016) (considering general contractor's third-party demand along with subcontractor's insurance policy to determine whether insurer owed a duty to defend the subcontractor); *Hanover Ins. Co. v. Plaquemines Parish Gov't*, No. 12-1680, 2015 WL 5093452 (E.D. La.) (considering third party demand to determine an insurer's duty to defend).

1997,[110] and another that provided coverage from November 16, 1997 through November 16, 1998 (collectively, "the Masse policies").[111]

1. *General Liability*

The Masse policies contained the following insuring agreement for bodily injury and property damage liability:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.[112]

Subsection b. of the policies states:

> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> ***
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.[113]

2. The Allegations of the *St. Pierre* Lawsuit

In *St. Pierre, et al. v. Allied Shipyard, Inc.*, the plaintiffs allege they lived in a residence near Allied's shipyard for approximately eight years preceding 2010.[114] The *St. Pierre* plaintiffs allege that Allied was negligent when performing its operations, which "resulted in the release into the atmosphere and environment in the neighborhoods surrounding the shipyard of hazardous substances, including, but not limited to, paint, sand and silica."[115] The petition alleges that, as a result, the plaintiffs were exposed to the hazardous substances and "have suffered personal injury, mental anguish, health problems, inconvenience, distress, loss of consortium, fear of disease, and

---

[110] R. Doc. 447-4.
[111] R. Doc. 447-5.
[112] R. Docs. 447-4 at 5; 447-5 at 73.
[113] R. Docs. 447-4 at 5; 447-5 at 73.
[114] R. Doc. 447-2.
[115] *Id.*

other damages."[116] The *St. Pierre* plaintiffs further allege "In releasing these hazardous substances into the atmosphere and/or environment, the Defendant has been negligent and/or otherwise at fault through its employees and/or agents."[117]

On September 16, 2011, Allied filed a supplemental third-party demand against Masse, in which Allied alleges Masse is an "independent contractor" whose "failure to perform [its] contracted job responsibilities initiated the claims of the original petitioners."[118]

On August 18, 2016, Allied filed a cross-claim and third-party demand against the insurers of Masse and Superior, seeking a declaration of its status as an additional insured and of its right to defense and indemnity under those policies.[119] In its cross-claim and third-party demand, Allied alleges it is entitled to defense and indemnity "for those sums that Allied may become legally obligated to pay as a result of the operations of Masse and Superior."[120] Allied's cross-claim and third-party demand incorporates the allegations of the *Adams* and *St. Pierre* petitions, which are based on the plaintiffs' exposure to harmful substances emanating from the Allied shipyard.[121]

3. The *St. Pierre* Plaintiffs' Damages Did Not Occur during the Policy Periods and, Thus, Recovery to Allied as an Additional Insured is Unambiguously Excluded under the Policies

The Great American policies impose on Great American a duty to pay on behalf of its insured any sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" and to which the policies

---

[116] *Id.*
[117] *Id.*
[118] R. Doc. 444-15 at 2.
[119] R. Doc. 444-15.
[120] *Id.*
[121] R. Doc. 444-15.

apply.[122] The bodily injury or property damage, however, must "occur[] during the policy period."[123]

Great American argues that it has no duty Allied as an additional insured because neither the *St. Pierre* complaint nor Allied's cross-claim against it allege "bodily injury" or "property damage" that "occurred" during the policy periods.[124] To prevail on a motion for summary judgment that it has no duty to defend, an insurer must establish that coverage is unambiguously precluded based on review of the underlying petition for damages, the alleged insured's complaint against the insurer, and the four corners of the policy.

The Great American policy periods span November 16, 1996 through November 16, 1998.[125] The *St. Pierre* lawsuit was filed on December 8, 2010.[126] The *St. Pierre* petition alleges that "[f]or approximately eight (8) years, the plaintiffs have lived in a residence . . . located near the shipyard," and during that time, they were exposed to the hazardous substances released by Allied.[127] The *St. Pierre* plaintiffs allege Allied was "negligent and/or otherwise at fault through its employees and/or agents."[128] Allied's cross-claim against Great American states "On December 8, 2010, the *St. Pierre* plaintiffs filed suit against Allied alleging personal injuries as a result of sandblasting operations conducted by Allied at its Golden Meadow, Louisiana shipyard."[129] Based on the allegations in the *St. Pierre* lawsuit and Allied's cross-claim, the *St. Pierre* plaintiffs' exposure began in

---

[122] R. Docs. 447-4 at 5; 447-5 at 73.
[123] R. Docs. 447-4 at 5; 447-5 at 73.
[124] R. Doc. 447-1.
[125] R. Doc. 447-1 at 3.
[126] *See* R. Doc. 447-2.
[127] *Id.*
[128] *Id.*
[129] R. Doc. 444-15.

2002, eight years prior to the suit's filing, and continued at least until 2010, when the petition was filed. The *St. Pierre* plaintiffs allege that, as a result of the exposure, they "have suffered personal injury, mental anguish, health problems," and other damages.[130] They seek damages for physical and mental pain and suffering, medical expenses, damage to personal property.[131]

The *St. Pierre* plaintiffs allege that they have resided near the shipyard for "approximately eight (8) years" before the petition was filed in 2010.[132] Although the *St. Pierre* petition does not identify a precise time period during which the plaintiffs were exposed to the hazardous substances causing bodily injury and property damage, a review of the petition shows the *St. Pierre* plaintiffs' claimed exposure began around 2002, years after the Great American policies expired. In its opposition to Great American's motion for partial summary judgment, Allied focuses its argument on whether the *St. Pierre* plaintiffs' *property damage* occurred during Great American's policy periods.[133] Allied, however, offers little rebuttal to Great American's contention that the *St. Pierre* petition states the plaintiffs were exposed to hazardous substances only from 2002 to 2010, unambiguously precluding coverage for the plaintiffs' bodily injury under Great

---

[130] *Id.*

[131] *Id.* at 2.

[132] To determine when property damage or bodily injury "occurs" due to long-term exposure to harmful substances, Louisiana courts apply the exposure theory. *See Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076–77 (La. 1992); *Norfolk S. Corp. v. California Union Ins. Co.*, 2002-0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 192, *writ denied*, 2003-2742 (La. 12/19/03), 861 So. 2d 579; *Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05), 919 So. 2d 758, 765. The parties do not dispute that the exposure theory applies. Under the exposure theory, "[e]ven where the damage or injury was not manifested until after an insurer's policy period, if the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable." *Oxner v. Montgomery*, 34,727 (La. App. 2 Cir. 8/1/01), 794 So. 2d 86, 93, *writ denied*, 803 So. 2d 36 (La. 2001). Thus, applying the exposure theory, the state-court plaintiffs' bodily injuries and property damage "occurred" "during the entire course of [the plaintiffs'] exposure."[132] Thus, "if the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable." *Id.*

[133] R. Doc. 449.

American's 1996–1998 policies.[134] The *St. Pierre* plaintiffs provide no allegation that they could have been exposed to hazardous substances that caused their bodily injuries during the years of 1996, 1997, or 1998, when the Great American policies were in force. As a result, Great American has no duty to defend Allied as an additional insured for the *St. Pierre* plaintiffs' claims for bodily injury.

With respect to property damage, Allied argues that because the *St. Pierre* petition is silent as to when the property damage occurred, it is not unambiguously clear from the petition that coverage is excluded under the Great American policies issued from 1996–1998.[135] According to Allied, Great American owes a duty to defend Allied because the *St. Pierre* plaintiffs' property "was presumably located [near the Allied shipyard] from November 16, 1996 to November 16, 1998,"[136] and was exposed to harmful substances released from Allied Shipyard, even though the *St. Pierre* plaintiffs themselves may not have resided on the property during that time period.

The *St. Pierre* plaintiffs' property damage claims, however, are barred by Louisiana's "subsequent purchaser" rule. The subsequent purchaser doctrine states "an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase in the absence of an assignment or subrogation of rights belonging to the owner of the property when the damage was inflicted."[137] "[W]hether the damage to the property is apparent or not, the personal nature of the right of the landowner at the time does not change, and remains with the landowner unless the right is explicitly assigned or subrogated to another."[138]

---

[134] *See id.*
[135] R. Doc. 449 at 3.
[136] *Id.* at 4.
[137] *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 256–57 (La. 2011).
[138] *Id.* at 276.

The *St. Pierre* plaintiffs make no allegation of an assignment of or the subrogation to the personal rights of the previous owners of the properties. Without such an allegation, the *St. Pierre* plaintiffs fail to allege a right of action for any property damage that occurred before they owned the property. As the insured seeking coverage, it is Allied's burden to show the *St. Pierre* plaintiffs' claimed property damage occurred during the Great American policy periods.[139] Because the *St. Pierre* plaintiffs allege only a claim for property damage occurring in 2002 through 2010—when the *St. Pierre* plaintiffs lived on the property near the Allied shipyard—Allied has failed to meet its burden of proving that coverage for property damage is triggered for the *St. Pierre* plaintiffs' property damage claims under the 1996–1998 Great American policies. As a result, Great American has no duty to defend Allied as an additional insured for the *St. Pierre* plaintiffs' claims for property damage.

The *St. Pierre* petition, Allied's cross-claim against Great American, and the Great American policies unambiguously preclude the possibility that the exposure causing the plaintiffs' personal injuries and property damage occurred during Great American's policy periods.[140] As a result, Great American owes no duty to defend Allied as an additional insured under its policies issued to Masse for the bodily injury or property damage claims of the *St. Pierre* plaintiffs.

---

[139] *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000).
[140] Because the Court finds Great American has no duty to defend Allied as an additional insured on Masse's policies in the underlying *St. Pierre* lawsuit, the Court defers ruling on Great American's duty to indemnify Allied. Because the Court finds Great American has no duty to defend Allied in the *St. Pierre* lawsuit, it need not decide the issue of the pro rata allocation of defense costs.

**CONCLUSION**

**IT IS ORDERED** that Great American's Motion for Partial Summary Judgment declaring that it has no duty to defend Allied in the Underlying *St. Pierre* Lawsuit as an additional insured under the Great American policies issued to Masse is **GRANTED**.[141]

**New Orleans, Louisiana, this 12th day of July, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[141] R. Doc. 447.