| | |
|---|---|
| **HANOVER INSURANCE COMPANY,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2375 c/w 14-1930**<br>    **14-1933, 16-2490** |
| **SUPERIOR LABOR SERVICES,**<br>**INC., ET AL.**<br>    **Defendants** | **SECTION "E"** |

*Applies to:* **16-2490**

## ORDER AND REASONS

Before the Court is Allied Shipyard, Inc.'s ("Allied") motion for reconsideration.[1] On July 12, 2017, the Court granted State National Insurance Company's ("State National") motions for summary judgment[2] with respect to Allied's status as an additional insured under the insurance policies State National issued to Masse Contracting Inc. ("Masse") for 2006–2007 and 2008–2009 (the "Masse Policies") and the insurance policies State National issued to Superior Labor Services, Inc. for 2007–2008 and 2008–2009 (the "Superior Policies").[3] In Allied's motion, it asks the Court to reconsider its ruling under Rule 59(e) of the Federal Rules of Civil Procedure.

Allied contends the Court committed a manifest error of law in granting State National's motions for summary judgment because the Court concluded that neither the 1995 Master Work Contract between Allied and Masse[4] nor the 2006 Master Work

---

[1] R. Doc. 532.
[2] R. Docs. 445 and 446.
[3] R. Doc. 510.
[4] The Court notes that Allied—for the first time, in its motion for reconsideration—mentions a 2007 Master Work Contract between Allied and Masse. R. Doc. 532. Allied did not reference a 2007 Master Work Contract between Allied and Masse in its answer to State National's petition for declaratory judgment, R. Doc. 194; in its response to State National's statement of uncontested facts attached to State National's motion for summary judgment, R. Doc. 493; in its opposition to State National's motion for summary judgment, R. Doc. 452; or in the declaration attached to the instant motion for reconsideration, R. Doc. 532-4. The Court did not consider the 2007 Master Work Contract in connection with this Order.

Contract between Allied and Superior "were enforceable contracts absent evidence of subsequent purchase or work orders."[5] Allied further argues the Court's ruling will result in manifest injustice to Allied because the Master Work Contracts "contain express, unequivocal agreements by Masse and Superior to obtain commercial liability insurance and to name Allied as an additional insured."[6]

A motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure "must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued."[7] A motion for reconsideration "is 'not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the order].'"[8] "The Court is mindful that '[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.'"[9] "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted."[10]

In deciding motions under the Rule 59(e) standard, the courts in this district have considered the following factors:

    (1) whether the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based;

    (2) whether the movant presents new evidence;

---

[5] R. Doc. 532-1 at 1–2.

[6] R. Doc. 532-1 at 2.

[7] *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citations and internal quotation marks omitted).

[8] *Lacoste v. Pilgrim Int'l*, No. 07-2904, 2009 WL 1565940, at *8 (E.D. La. June 3, 2009) (Vance, J.) (alteration in original) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)).

[9] *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. April 5, 2010) (alteration in original) (quoting *Templet,* 367 F.3d at 479).

[10] *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2012 WL 711842, at *3 (E.D. La. Mar. 5, 2012) (Brown, J.).

(3) whether the motion is necessary in order to prevent manifest injustice; and

(4) whether the motion is justified by an intervening change in the controlling law.[11]

Allied argues the Court committed a manifest error of law in concluding the Master Work Contracts were not binding and enforceable and that the Court must reconsider its granting of State National's motions for summary judgment to prevent manifest injustice to Allied.[12]

I. **The Court Did Not Commit Manifest Legal Error in Concluding the Master Work Contracts were Not Binding and Enforceable**

State National sought summary judgment on Allied's status as an additional insured under the policies it issued to Masse and Superior and its duty to defend Allied as an additional insured under the State National policies with respect to claims made in the *Adams* and *St. Pierre* state-court lawsuits.[13] Allied has the burden of proving it is an "additional insured" under State National's policies. In its motion for summary judgment, State National argued that Allied could not meet an essential element of its claim that it is an additional insured—the existence of a complete and enforceable contract—pointing to "[t]he failure of Allied to present a complete and enforceable contract with all pertinent purchase orders or other agreements that incorporate the terms and conditions of the blanket master contract."[14]

---

[11] *Castrillo*, 2010 WL 1424398, at *4. The Court notes that the time limits of Rule 59 do not apply in this matter because the order appealed is interlocutory. Rules 59 and 60 set forth deadlines for seeking reconsideration of final judgments. *See Carter v. Farmers Rice Milling Co., Inc.*, 33 F. App'x 704, at *2 (5th Cir. 2002) (per curiam); *Lightfoot*, 2012 WL 711842, at *2.

[12] R. Doc. 532-1, at 2.

[13] R. Doc. 445, 446.

[14] R. Doc. 445-1 at 11.

Allied opposed the motions for summary judgment but, with respect to this argument, said only that "Allied did offer Masse work at the shipyard and Masse accepted. Masse performed work at the Allied Shipyard for years. Thus, the obligation in the Master Work Contract was fulfilled, becoming 'valid and enforceable.'"[15] Allied apparently takes the position that any work performed by Masse after the execution of either Master Work Contract, at any time, with or without purchase orders or other agreements, is sufficient to establish that the work was done under the applicable Master Work Contract and that the applicable Master Work Contract is a complete and enforceable contract for all purposes thereafter. Without agreeing that this argument is correct, the court notes that Allied failed to cite materials in the record to support this argument.[16]

When the movant seeks summary judgment on the basis that the nonmovant has no evidence to establish an essential element of its claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[17] Rule 56(c) of the Federal Rules of Civil Procedure requires that Allied support its opposition to the motions for summary judgment by citing to materials in the record, such as depositions, documents, or stipulations, to establish that a genuine issue of disputed fact exists with respect to whether Masse performed work under the Master Work Contracts. If Allied had come forward with supporting evidence to show that a material fact was in dispute, the

---

[15] R. Doc. 452 at 4.

[16] Without citation, Allied contends that it is undisputed that "substantial work" was performed under the Master Work Contracts by Masse and Superior. *See* R. Doc. 532-1 at 9–10. Presumably, Allied would ask this Court to take it at its word. But Allied's argument—without summary-judgment evidence—is insufficient to create factual disputes. *Johnson v. New S. Fed. Sav. Bank*, 344 F. App'x 955, 956 (5th Cir. 2009) (per curiam) ("Appellant's brief on appeal contains a number of rhetorical questions and impassioned arguments, but it fails to cure the defect which proved fatal to Appellant's case in the district court: Appellant provides no competent summary judgment evidence sufficient to demonstrate that a genuine issue for trial exists . . . .").

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 332–33 (1986).

burden would have shifted to State National to demonstrate the inadequacy of the evidence Allied relied upon, but this did not occur. Allied's statement that "Masse has performed work at the Allied shipyard for years" without citation to record evidence is insufficient for Allied to meet its burden as the non-movant on summary judgment.

Now, Allied asks that the Court reexamine its ruling on the motions for summary judgment in light of evidence that could have been submitted to support its oppositions to the motions for summary judgment but, instead, was attached to its motion for reconsideration. Specifically, Allied seeks consideration of the declaration of Gavin Callais and the checks from Allied to Masse and Superior, which Allied contends commemorate payments for work performed under the 1995 and 2006 Master Work Contracts during the policy periods.[18] Allied makes no argument that this evidence was "newly discovered," or that it was previously unavailable.[19] The Fifth Circuit has held that the unexcused failure to present evidence available at the time of summary judgment is a valid basis for denying a motion to reconsider.[20]

Allied next contends the Court committed manifest legal error when it held that the Master Work Contracts were not enforceable absent the existence of purchase orders.[21] Allied disagrees with the Court's ruling and argues that it was not required to provide written purchase orders or work orders or to show work was actually done under the Master Work Contracts during the State National policy periods. According to Allied,

---

[18] R. Doc. 532-4.
[19] *See Schiller*, 342 F.3d at 567.
[20] *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991); *see also Knight v. Kellogg Brown & Root Inc.*, 333 F. App'x 1, 8 (5th Cir. 2009) ("[T]he plaintiffs fail to adequately explain why they did not obtain these documents before summary judgment, and an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." (internal quotation marks omitted)). In this case, there is no reason to believe that Allied did not have these documents at the time it filed oppositions to the motions for summary judgment as Gavin Callais is the president of Allied and the checks were issued by Allied. R. Doc. 532-4.
[21] R. Doc. 532-1 at 4.

"[t]here is no blanket requirement under Louisiana law (or analogous law) that [Master Work Contracts] be followed by purchase or work orders in order for the [Master Work Contract] to be a valid, binding, and enforceable contract."[22]

Each of the cases Allied cites in support of its argument is distinguishable; the cases do not support a finding that this Court committed an error of law. First, Allied cites *Freret Marine Supply v. M/V Enchanted Capri*, in which the court stated the master services agreement between a bank and a vessel operator was the "operative agreement."[23] Allied, however, presumably neglected to read the rest of the *Freret* court's sentence. The *Freret* court expressly distinguished the master services agreement in *Freret*, stating the master services agreement in *Freret* was the operative agreement, "and *unlike a blanket Master Service Agreement, it did not contemplate future work orders which would modify the terms or services it provided.*"[24]

Unlike the master services agreement in *Freret*, each of the Master Work Contracts between Allied and Masse and Allied and Superior contain the following language:

> [Allied] shall pay Contractor for the work performed at the rate and for the consideration *provided for in [Allied's] purchase order or through other agreement.* Payment of invoices will be made in accordance with the established [Allied] procedures following acceptance by [Allied] of work done by Contractor as being in full compliance with all terms, conditions and requirements of the Contract and the specific job or project undertaken. *In the event of a conflict between the terms of a[n] [Allied] purchase order issued in connection herewith and this Contract, the terms and conditions of the purchase order shall govern the agreement of the parties.*[25]

The *Freret* court referred to the type of Master Work Contracts at issue in this case as "blanket" agreements, as they contemplate future work orders. As a result, Allied bore the

---

[22] R. Doc. 532-1 at 5.
[23] No. 00-3805, 2002 WL 392801, *3 (E.D. La. Mar. 11, 2002) (Engelhardt, J.).
[24] *Id.* (emphasis added).
[25] R. Docs. 532-2 at 2 (1995 Master Work Contract with Masse); 532-2 at 10 (2007 Master Work Contract with Masse); 532-3 at 2 (2006 Master Work Contract with Superior) (emphasis added).

6

burden on summary judgment to present evidence of purchase orders or other agreements to create a genuine issue of material fact with respect to whether work was actually completed by Masse or Superior during State National's policy periods. *Freret* does not support Allied's argument.

Second, Allied points to *In re Elevating Boats, Inc.*, in which the court determined whether a master service agreement was subject to maritime law.[26] Like the Master Work Contracts in this case, the master services agreement in *Elevating Boats* contained general provisions governing work and services the contractor would perform under separate individual assignments and work orders.[27] On summary judgment, the parties agreed that there was no specific work order for the date at issue.[28] *Elevating Boats* differs from this case in that the contractor in *Elevating Boats* provided summary-judgement evidence that it *actually performed work* under the master services agreement on the date in question.[29] Again, Allied failed to provide any summary-judgment evidence in its opposition to State National's motion for summary judgment that purchase orders existed or that work was actually performed under the Master Work Contracts during the policy periods. *Elevating Boats* is inapplicable.

Third, Allied points to cases in support of its argument that formal work or purchase orders are not necessary, but instead, informal verbal "work orders" are sufficient.[30] In *Amoco Production Co. v. Wireline Consultants, Inc.*, the master contract at issue expressly provided that it "shall control and govern all work performed by Contractor for Amoco, *under verbal or written orders*, at all times until canceled by either

---

[26] No. 00-2282, 2002 WL 272372 (E.D. La. Feb. 22, 2002) (Vance, J.).
[27] *Id.* at *1.
[28] *Id.* at *3.
[29] *Id.*
[30] R. Doc. 532-1 at 7.

party."[31] The Master Work Contracts between Allied and Masse and Allied and Superior do not contain express language allowing the use of verbal work orders, and even so, Allied presented no evidence in opposition to State National's summary judgment that verbal work orders existed or were Allied's common practice or that this practice prevailed during the relevant policy periods.[32]

Each of the cases cited by Allied is inapposite. The Master Work Contracts in this case provide: "*If* at any time during the term hereof, [Allied] desires work to be performed for a particular job or project, [Allied] shall advise contractor of the particulars of the work and the location thereof."[33] Further, as discussed above, the Master Work Contracts contemplate that Allied will be paid for work performed at the rate and for the consideration "*provided for in* [*Allied's*] *purchase order or through other agreement*" and that "the terms and conditions of the purchase order shall govern the agreement of the parties."[34] It is clear that the Master Work Contracts contemplated that separate purchase orders would be entered into, and that work under the contract would be performed *only if* Allied sought work to be performed for a particular job or project. The

---

[31] No. 90-4940, 1993 WL 8611, *1 n.4 (E.D. La. Jan. 4, 1993) (Arceneaux, J.) (emphasis added). The *Amoco* court was faced with whether—on a motion *in limine*—it should consider outside evidence regarding industry custom in determining whether verbal work orders modified the contract. *Id.* at *1.

[32] Allied also cites *Wallace v. Oceaneering International*, in which the Fifth Circuit considered a claim for contractual indemnity under a master service contract. 727 F.2d 427, 437–38 (5th Cir. 1984). The *Wallace* court found that the master services contract at issue "demonstrate[d] that the parties contemplated that the contract would not become effective until Zapata issued a verbal or written work order and [the contractor] accepted the assignment." *Id.* at 438. In that case, "there was no work order given by Zapata in connection with the job on which [the contractor] was injured." *Id.* Thus, the court held the "inapplicability of the master service contract also defeats Zapata's claim for indemnity." *Id.* Again, in this case, Allied produced no summary-judgment evidence in its opposition to State National's summary judgment motions to create a factual dispute with respect to whether work orders—verbal or written—existed during the time of the Masse and Superior Policies, or that any work was actually done under the Master Work Contracts by Masse or Superior during State National's policy periods.

[33] R. Docs. 532-2 at 2 (1995 Master Work Contract with Masse); 532-2 at 10 (2007 Master Work Contract with Masse); 532-3 at 2 (2006 Master Work Contract with Superior) (emphasis added).

[34] R. Docs. 532-2 at 2 (1995 Master Work Contract with Masse); 532-2 at 10 (2007 Master Work Contract with Masse); 532-3 at 2 (2006 Master Work Contract with Superior) (emphasis added).

Master Work Contract, therefore, is not—standing alone— an enforceable contract for the purposes of affording additional insured status. [35]

The Court committed no manifest error of fact or law in granting State National's motions for summary judgment.

## II.  **<u>Declining to Reconsider the Court's Order will not Result in Manifest Injustice</u>**

In its motion for reconsideration, Allied argues "[e]ven if the Court concludes that its Order granting State National's Motions for Summary Judgment was not manifest legal error, reconsideration under Rule 59(e) is nevertheless warranted to avoid manifest injustice to Allied."[36] According to Allied, the Court's granting of State National's motions for summary judgment "voids Allied's contractually-agreed upon right to additional-insured coverage on the basis that Allied failed to introduce evidence of purchase or work orders."[37]

Although few cases discuss manifest injustice standard, the Southern District of Texas has offered its well-supported thoughts on the topic:

> There is no general definition of manifest injustice; rather, courts evaluate whether there has been a manifest injustice on a case-by-case basis. *Alvarado v. Texas Rangers*, No. 03-0305, 2005 WL 1420846, at *3; *In re Cusano*, 431 B.R. 726, 734 (6th Cir. 2010) ("Manifest injustice, as contemplated by Rule 59(e), is an amorphous concept with no hard line definition. However, courts have established various guidelines to be used on a case-by-case basis to determine whether the necessary manifest injustice has been shown." (quotations and citations omitted)). According to some courts, "'[w]hat is clear from the case law, and from a natural reading of the term itself, is that a showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy.;" *Id.* (quoting *Bunting Bearings Corp.*, 321 B.R. 420 (Bankr. N.D. Oh. 2004)). *See also In re UBS AG ERISA Litig.*, No. 08-6696,

---

[35] The Court does not determine whether a course of conducting business without written purchase orders would be sufficient to render the Master Service Contracts valid and enforceable without written purchase orders because the issue was not presented in this case.

[36] R. Doc. 532-1 at 9.

[37] R. Doc. 532-1 at 10.

2012 WL 1034445, at *4 (S.D.N.Y. March 23, 2012) ("[A] district court has not committed a 'manifest injustice' unless its error was 'direct, obvious, and observable.'" (quoting BLACK'S LAW DICTIONARY 1048; citing *U.S. v. Luciano*, 329 F.3d 1, 5 (1st Cir. 2003))); *In re Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012) ("A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to manifest injustice, the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view [it]." (quotations and citations omitted)).

***

Of course, "[t]he manifest injustice standard presents plaintiff with a high hurdle." *Westerfield v. U.S.*, 366 Fed. App'x 614, 619 (6th Cir. 2010) (unpublished). "[R]eliance on an unsettled area of law does not amount to manifest injustice." *Adams v. District of Columbia*, 793 F. Supp. 2d 392, 399 (D. D.C. 2011) (citing *Qwest Serv's Corp. v. Fed. Commc'n Comm'n*, 509 F.3d 531, 540 (D.C. Cir. 2007)). Importantly, "[t]here is no manifest injustice for purposes of a Rule 59(e) motion 'where . . . a party could easily have avoided the outcome, but instead elected not to act until after a final order had been entered.'" *In re Enron Corporation Securities, Derivative, & "ERISA" Litigation*, No. MDL–1446, 2011 WL 3489599, at *5 (S.D. Tex. Aug. 9, 2011) (quoting *In re Young*, No. 08–41515, 2009 WL 2855766, at *4 (Bankr. E.D. Tex. Sept. 2, 2009)). Nor is there manifest injustice "'if the only error the movant seeks to correct is a poor strategic decision.'" *In re Cusano*, 431 B.R. at 734 (quoting *In re Henning*, 420 B.R. 773, 785 (Bankr. W.D. Tenn. 2009)). *See also Courtade v. Harrah's Operating Co., Inc.*, No. 10–4036, 2011 WL 2446454, at *4 (E.D. La. June 15, 2011) ("[T]he negligence or erroneous strategy choices of a party's attorney or the party herself, which contributed to the court's dismissal of the party's claims, do not amount to manifest injustice." (citing *Robinson v. Wix Filtration Corp.*, LLC, 599 F.3d 403, 409 (4th Cir. 2010); *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226–27 (4th Cir. 2005); *Universal Film Exchs., Inc. v. Lust*, 479 F.2d 573, 577 (4th Cir. 1973); *Fox v. Am. Airlines*, 389 F.3d 1291, 1296 (D.C. Cir. 2004); *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 673 (D.C. Cir. 2004))).[38]

A showing of manifest injustice requires that there exist a fundamental flaw in the Court's decision, which, as discussed above, did not occur. Allied could have provided evidence in support of its oppositions to the motions to dismiss but, apparently, elected

---

[38] *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-CV-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012).

not to act until the Court's order granting the motions had been entered. A party's erroneous strategical choices do not amount to manifest injustice.[39]

Accordingly;

## CONCLUSION

**IT IS ORDERED** that Allied's motion for reconsideration[40] is **DENIED**.

**New Orleans, Louisiana, this 18th day of August, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[39] *Shnewer v. United States*, No. 13-3769, 2016 WL 4424949, at *6 (D.N.J. Aug. 18, 2016), *aff'd*, No. 16-3659, 2017 WL 3411812 (3d Cir. Aug. 9, 2017) (citing ("[I]t is not the job of courts deciding motion for reconsideration to rescue parties from their strategic litigation choices . . . [nor] rescue parties from their own errors.") (alterations in original); *Zarcone v. United States*, No. C 04-01428, 2004 WL 2196560, at *2 (N.D. Cal. Sept. 27, 2004) ("Rule 59(e) does not require a court to rescue parties from the consequences of their own choices.").

[40] R. Doc. 531.