# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HANOVER INSURANCE COMPANY,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2375 c/w 14-1930**<br>       **14-1933, 16-2490** |
| **SUPERIOR LABOR SERVICES,**<br>**INC., ET AL.**<br>    **Defendants** | **SECTION "E"** |

*Applies to:* **16-2490**

## ORDER AND REASONS

Before the Court is Allied Shipyard, Inc.'s motion for reconsideration.[1] On July 12, 2017, the Court granted Lexington Insurance Company's motions for summary judgment with respect to Allied's status as an additional insured and with respect to Lexington's duty to defend Allied in the *Adams* and *St. Pierre* lawsuits as an additional insured under the 2000–2001 and 2008–2009 insurance policies issued by Lexington to Masse Contracting, Inc.[2] In Allied's motion, it asks the Court to reconsider its ruling under Rule 59(e) of the Federal Rules of Civil Procedure.

Allied contends the Court committed manifest errors of law in granting Lexington's motions for summary judgment because (1) the Court ruled on the motions for summary judgment before Allied had an opportunity to answer or to conduct discovery on Lexington's claims, (2) the Court ruled that Allied was not a "certificate holder" under the 2000–2001 Lexington Policy, but Allied was not given the opportunity to conduct discovery with respect to whether it was a "certificate holder," and (3) the Court failed to consider two Fifth Circuit cases when reaching its conclusion that

---

[1] R. Doc. 531.
[2] R. Doc. 509.

1

Lexington's 2008–2009 policy was "excess" to Allied's primary insurance with the Gray Insurance Company.[3]

A motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure "must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued."[4] A motion for reconsideration, however, "is 'not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the order].'"[5] "The Court is mindful that '[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.'"[6] "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted."[7]

In deciding motions under the Rule 59(e) standards, the courts in this district have considered the following factors:

> (1) whether the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based;
>
> (2) whether the movant presents new evidence;
>
> (3) whether the motion is necessary in order to prevent manifest injustice; and
>
> (4) whether the motion is justified by an intervening change in the controlling law.[8]

---

[3] R. Doc. 531-1 at 2–4.
[4] *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citations omitted) (internal quotation marks omitted).
[5] *Lacoste v. Pilgrim Int'l*, No. 07-2904, 2009 WL 1565940, at *8 (E.D. La. June 3, 2009) (Vance, J.) (alteration in original) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)).
[6] *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. April 5, 2010) (alteration in original) (quoting *Templet,* 367 F.3d at 479).
[7] *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2012 WL 711842, at *3 (E.D. La. Mar. 5, 2012) (Brown, J.).
[8] *Castrillo*, 2010 WL 1424398, at *4. The Court notes that the time limits of Rule 59 do not apply in this matter because the order appealed is interlocutory. Rules 59 and 60 set forth deadlines for seeking

I. **<u>The Court Did Not Err in Granting Lexington's Motions for Summary Judgment Before Allied was Afforded the Opportunity to Answer and to Conduct Discovery</u>**

Allied first argues the Court committed manifest legal error in granting Lexington's motions for summary judgment before Allied was afforded an opportunity to answer or to conduct discovery on Lexington's claims asserted against Allied.[9] Lexington filed its motions for summary judgment on January 23, 2017.[10] Allied filed responses to the motions for summary judgment on February 6, 2017.[11] On February 14, 2017, Lexington filed reply memoranda in support of its motions for summary judgment.[12] Over Lexington's objection,[13] the Court allowed Allied to file a supplemental opposition to Lexington's motion for summary judgment.[14] On June 23, 2017, Allied sought leave of Court to file yet another memorandum in opposition to Lexington's motions for summary judgment, which the Court granted.[15]

Six months after Lexington's motions for summary judgment were filed, and after Allied was allowed to file *three* memoranda in opposition, Allied filed a motion to strike Lexington's motions for summary judgment, arguing Lexington and Allied were not adverse parties because there was no claim pending between them.[16] Realizing that this was, in fact, the case, on July 2, 2017 the Court ordered Lexington to request leave of court

---

reconsideration of final judgments. *See Carter v. Farmers Rice Milling Co., Inc.*, 33 F. App'x 704, at *2 (5th Cir. 2002) (per curiam); *Lightfoot*, 2012 WL 711842, at *2.
[9] R. Doc. 531-1 at 6.
[10] R. Docs. 443, 444.
[11] R. Docs. 450, 451.
[12] R. Docs. 462, 464.
[13] Lexington filed a motion to strike Allied's motion for leave to file a supplemental memorandum in opposition to its motion for summary judgment. R. Doc. 477. The Court denied Lexington's motion to strike. R. Doc. 478.
[14] R. Docs. 478, 479. Lexington filed a reply to Allied's supplemental opposition on May 23, 2017. R. Doc. 488. Because Allied's responses to Lexington's statements of uncontested facts were deficient, the Court ordered Allied to re-file its responses. R. Doc. 489.
[15] R. Docs. 495, 496, 497.
[16] R. Doc. 498.

to file an amended complaint in intervention naming Allied as a defendant-in-intervention in case number 14-1933 and/or to file a cross-claim against Allied in case number 16-2490.[17] In the interest of judicial economy and to avoid needless rebriefing of the same issue, the Court further stated that in either or both events it would "rely on the parties' briefing that ha[d] already been submitted" in ruling on Lexington's motions for summary judgment.[18] Allied had notice that this would be the procedure followed by the Court on July 3, 2017 and did not voice any objection. On July 10, 2017, Lexington filed an answer and crossclaim against Allied in case number 16-2490 and an amended complaint naming Allied as a defendant-in-intervention in case number 14-1933.[19] Neither Lexington's crossclaim against Allied nor its amended complaint naming Allied as a defendant-in-intervention raised any new issues not already addressed in the briefs. Relying on the extensive briefing already submitted, the Court granted Lexington's motions for summary judgment on July 12, 2017.[20]

Allied now argues the Court erred in ruling on Lexington's motions for summary judgment before Allied was able to answer Lexington's amended complaint in intervention and before Allied was able to conduct any discovery on Lexington's claims.[21] "[A] 'court must not grant a summary judgment . . . before the service of an answer, *unless in the situation presented, it appears to a certainty that no answer which the adverse party might properly serve could present a genuine issue of fact.*'"[22] Allied contends that its answer could have raised a genuine issue of material fact with respect to whether it is

---

[17] R. Doc. 499.
[18] *Id.*
[19] R. Docs. 503, 507.
[20] R. Doc. 509.
[21] R. Doc. 531-1 at 6.
[22] *Kuperman v. ICF Intern.*, No. 08-565, 2008 WL 647557 (E.D. La. Mar. 5, 2008) (citing *Stuart Inv. Co. v. Westinghouse Elec. Corp.*, 11 F.R.D. 277, 280 (D. Neb. 1951)) (emphasis added).

4

a "certificate holder" under Lexington's 2000–2001 Policy.[23] According to Allied, Endorsement #006 in the 2000–2001 Lexington Policy provides additional-insured coverage to "certificate holders."[24]

Allied's argument is that its answer could have raised a genuine issue of material fact because it is entitled to coverage under Endorsement #006 if it is a certificate holder. The language of Endorsement #006—an "other insurance" endorsement—provides:

> [T]he company agrees that such insurance as afforded by this policy for the benefit of *certificate holders included as persons insured* shall be primary and non-contributing insurance, but only as rests a claim, loss of liability arising out of insured operations or work on behalf of the named insured performed under a written contract between the named insured and the certificate holder that requires the named insured to maintain such primary and non-contributory insurance and to include the *certificate holder as a person insured* thereunder.[25]

As stated in the Court's order and reasons, Endorsement #006 "provides insurance for the benefit of the certificate holder *included as a person[s] insured*."[26] "Endorsement #006 modifies neither the 'Persons Insured' section nor the definitions of 'Insured' or 'Named Insured' of the 2000–2001 Lexington Policy."[27] The fact that an entity is a "certificate holder" does not automatically entitle that entity to additional insured status under the 2000–2001 Lexington Policy; to enjoy additional insured coverage, the "certificate holder" must be "included as persons insured."[28] As discussed at length in the Court's ruling, Allied is not a "person insured" under the 2000–2001 Lexington Policy, and the policy does not contain an additional insured endorsement to provide Allied with

---

[23] R. Doc. 531-1 at 6–7.
[24] *Id.* at 7.
[25] R. Doc. 443-17 at 38–39 (emphasis added).
[26] R. Doc. 509 at 23 (emphasis added).
[27] *Id.* at 23–24.
[28] R. Doc. 443-17 at 38–39.

additional insured status.[29] Even if Allied were a "certificate holder," this fact alone would not entitle it to additional insured status under the 2000–2001 Lexington Policy.

As a result, if Allied had conducted discovery and located certificates of insurance provided by Masse, or located such certificates in its own files, those certificates would not make Allied an additional insured. Louisiana law provides "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy."[30] "Louisiana courts have found that certificates of insurance do not fall under this rubric and thus cannot create coverage."[31] "A certificate of insurance is not a rider, endorsement, or application" and thus a court "cannot examine the certificate for purposes of determining if it modifies the terms of coverage because . . . the certificate cannot amplify, extend or modify coverage."[32] A leading treatise on insurance provides:

> Certificates of insurance are often issued to the designated certificate holder as proof that the named insured has insurance to cover work or operations being performed for the certificate holder and that the named insured has had the certificate holder named as an additional insured on the named insured's insurance policy. However, the presentation of a certificate of insurance alone does not create coverage or legal obligations between the insurer and the certificate holder. Generally, a certificate of insurance is not considered to be a part of the insurance contract; it is merely evidence of the insurance. Accordingly, a certificate of insurance cannot contradict the terms of a policy but instead only provides information as to the contents of the policy.
>
> In accordance with the above principles, a certificate of insurance cannot create a contractual relationship between an insurer and an alleged additional insured if the policy itself does not provide for such a relationship. In other words, no additional insured relationship exists where a certificate of insurance has been issued identifying an individual or

---

[29] *See* R. Doc. 509.
[30] LA. REV. STAT. § 22:881.
[31] *Arch Specialty Ins. Co. v. C&G Constr. of La., Inc.*, No. 12-2047, 2014 WL 3662837, at *5 (E.D. La. July 23, 2014).
[32] *Citgo Petroleum Corp. v. Yeargin, Inc.*, 95-1574 (La. Ct. App. 3 Cir. 2/19/97); 690 So. 2d 154, 164.

entity as an additional insured without corresponding language in the policy or endorsement thereto that would include that individual or entity as an additional insured.[33]

Even if Allied had been allowed time to conduct discovery to locate certificates of insurance and to file an answer, any certificates of insurance would be immaterial. Any certificates of insurance provided by Masse to Allied would not alter the fact that the 2000–2001 Lexington Policy does not provide additional insured status to Allied, and the certificates themselves would not render Allied an additional insured. As a result, the Court's granting of Lexington's motions for summary judgment before Allied was able to serve an answer or conduct discovery was not in error because "no answer [that Allied] might properly serve could present a genuine issue of fact."[34]

## II. **The Court Did Not Err in Concluding that the 2008–2009 Lexington Policy was Excess**

Lexington moved for summary judgment that:

(1) Allied Shipyard, Inc. ("Allied") does not qualify as an insured under the 2008-2009 Lexington Policy, and therefore, no duty to defend is owed to Allied thereunder;
(2) alternatively, even if Allied could qualify as an insured, which is denied, any coverage afforded to Allied under the 2008-2009 Lexington Policy is excess, excusing Lexington from any duty to defend unless and until all available primary insurance has been exhausted; and
(3) in the further alternative, even if Allied could qualify as an insured and the coverage afforded to it under the 2008-2009 Lexington Policy was not excess, both of which are denied, Lexington's defense obligation is limited to 0.833% for the *Adams* Matter and 6.25% for the *St. Pierre* Matter of any post-tender defense costs.[35]

Allied's opposition to the motion addressed only the first point—whether Allied is an additional insured under the policy.[36] Allied failed to address whether, even if it is an

---

[33] 3 COUCH ON INS. § 40:31 (June 2017).
[34] *Kuperman*, 2008 WL 647557, at *1.
[35] R.Doc. 444-1 at 2.
[36] R. Doc. 451.

7

insured, the coverage afforded is excess, excusing Lexington from any duty to defend unless and until all primary insurance has been exhausted. Now, in its motion for reconsideration, Allied argues the Court committed legal error when it concluded that "Lexington, as Allied's excess insurer, owes no duty to defend Allied until Allied has exhausted its available primary insurance."[37] Allied could have and should have raised the issue of whether Lexington's coverage is excess in its opposition to the motion for summary judgment. A motion for reconsideration "is 'not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the order].'"[38]

The Court notes also that the two Fifth Circuit cases cited by Allied, *Ogea v. Loffland Brothers, Co.*[39] and *Tullier v. Halliburton Geophysical Services, Inc.,*[40] are inapposite. First, those cases involved situations in which the indemnitee was required to purchase additional insured coverage for the indemnitor.[41] In this case, the indemnitor was required to purchase additional insured coverage for the indemnitee.[42] Second, the insurance in those cases was primary, unlike the instant case in which the contract did not require that the insurance be primary and the policy clearly states that the coverage is excess.[43] The Lexington Additional Insured Endorsement provides:

> Any coverage provided by this endorsement to an additional insured shall be *excess over* any other valid and collectible insurance available to the additional insured, whether primary, excess, contingent or on any other

---

[37] R. Doc. 531-1 at 9.
[38] *Lacoste*, 2009 WL 1565940, at *8.
[39] 622 F.2d 186 (5th Cir. 1980).
[40] 81 F.3d 552 (5th Cir. 1996).
[41] *See Ogea*, 622 F.2d at 187, 189; *Tullier*, 81 F.3d at 552, 555.
[42] R. Doc. 234-7 at 3–4.
[43] *See Marquette Trans. Co. v. La. Mach. Co.*, 367 F.3d 398, 407 (5th Cir. 2004); *Tullier*, 81 F.3d at 554; *A.M.C. Liftboats, Inc. v. Apache Corp.*, No. 06-10543, 2008 WL 217177, at *6 (E.D. La. Jan. 25, 2008).

8

basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.[44]

By the terms of the policy, Allied must exhaust any other insurance available to it before Lexington is required to pay. Only after all insurance has been exhausted do indemnity obligations come into play.

The Court did not err in finding that Lexington, as Allied's excess insurer, owes no duty to defend Allied until Allied has exhausted its available primary insurance. *Ogea* and *Tullier* do not apply to the facts of this case.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that Allied's motion for reconsideration[45] is **DENIED**.

**New Orleans, Louisiana, this 21st day of August, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[44] R. Doc. 444-17 at 37 (emphasis added). It is undisputed that neither the 1995 nor 2007 Master Work Contracts between Allied and Masse require the coverage afforded to Allied to be primary and non-contributory. R. Doc. 444-2 at 7, ¶ 24; R. Doc. 492 at 3, ¶ 24; R. Doc. 444-18; R. Doc. 444-19.
[45] R. Doc. 531.