UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HANOVER INSURANCE COMPANY,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2375**<br>    **c/w 14-1930,**<br>    **14-1933, 16-2490** |
| **SUPERIOR LABOR SERVICES, INC., ET AL.,**<br>    Defendants | **SECTION: "E" (2)** |

*Applies to: 14-1933, 16-2490*

## ORDER AND REASONS

Before the Court is Lexington Insurance Company's ("Lexington") motion for summary judgment against Allied Shipyard, Inc. ("Allied").[1] Allied has filed an opposition,[2] and Lexington has filed a reply.[3] For the reasons that follow, the Court **DENIES** the motion.

## BACKGROUND

On January 23, 2017, Lexington filed two motions for partial summary judgment regarding its duty to defend Allied against the claims made in the underlying *St. Pierre* and *Adams* lawsuits as an additional insured under the 2000-2001 Lexington Policy and the 2008-2009 Lexington Policy, both issued to Masse Contracting, Inc. ("Masse").[4] On July 12, 2017, the Court granted the motions.[5] With respect to the 2000-2001 Lexington Policy, the Court found Lexington does not owe Allied any defense or indemnity in the

---

[1] R. Doc. 519 *as supplemented by* R. Doc. 529. Unless otherwise indicated, "R. Doc." refers to record documents in the consolidated matter, No. 11-2375.
[2] R. Doc. 538.
[3] R. Doc. 547.
[4] R. Docs. 443, 444.
[5] R. Doc. 509.

1

underlying state lawsuits.[6] With respect to the 2008-2009 Lexington Policy, the Court found that, although Allied qualified as an additional insured under that policy,[7] Lexington, as Allied's excess insurer, owes no duty to defend Allied until Allied has exhausted its available primary insurance.[8]

On July 12, 2017, the Court also granted State National Insurance Company's ("State National") motion for summary judgment on the issue of its duty to defend Allied as an additional insured under State National's policies issued to Masse (the "Masse Policies").[9] In its motion for summary judgment, State National argued Allied could not sustain its burden of proof in establishing additional insured status, pointing to the Masse Policies' "Additional Insured Endorsement," which requires a claimant to show, among other things, that Masse was obligated to include the claimant as an additional insured for the work performed by Masse pursuant to: (1) a "written contract"; (2) in effect during the policy period; and (3) executed prior to the "occurrence" of the "bodily injury" or "property damage."[10] State National argued the 1995 Master Work Contract between Masse and Allied, under which Allied claimed it should be afforded additional insured status, does not qualify as a "written contract" requiring Masse to name Allied as an additional insured because the 1995 Master Work Contract does not constitute a complete and enforceable agreement for Masse to perform work for Allied.[11]

---

[6] *Id.* at 24.
[7] *Id.* at 28.
[8] *Id.* at 35.
[9] R. Doc. 510.
[10] *Id.* at 20. *See* R. Doc. 242-4 at 25; R. Doc. 242-6 at 15. The Masse Policies define "your work" as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." R. Doc. 242-3 at 16; R. Doc. 242-5 at 16. "Your work" includes "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and (2) [t]he providing of or failure to provide warnings and instructions." *Id.*
[11] R. Doc. 466-1.

In opposition to State National's motion for summary judgment, Allied argued the 1995 Master Work Contract was sufficient evidence on its own to demonstrate its status as an additional insured under the Masse Policies, contending that, because "Allied did offer Masse work at the shipyard and Masse accepted, . . . the obligation in the Master Work Contract was fulfilled, becoming 'valid and enforceable.'"[12] Allied did not attach any evidence of purchase orders or other agreements, written or oral, to establish that work was actually completed by Masse during State National's policy periods.

Looking to the Masse Policies' terms, the Court held the 1995 Master Work Contract between Masse and Allied,

> do[es] not provide for any specific work or services to be performed, but refer[s] in general terms of a need by one party for labor, services or materials, and the desire on the part of the other to furnish the same. Specific services are later called for under the master services agreement by work orders, purchase orders or simply invoices.[13]

The Court concluded the 1995 Master Work Contract—standing alone—is not a binding contract between Masse and Allied.[14] Rather, the Master Work Contract only "sets forth [Masse and Allied's] agreement to abide by certain terms should they enter into contractual relations in the future."[15]

Because Allied failed to present summary-judgment evidence of purchase orders or other agreements to create a genuine factual dispute with respect to whether the "[a]s

---

[12] R. Doc. 452 at 4.
[13] R. Doc. 510 at 21 (quoting *Livings v. Service Truck Lines of Tex., Inc.*, 467 So. 2d 595, 600 (La. Ct. App. 3 Cir. 4/10/1985)).
[14] *Hebert v. Kerr-McGee Corp.*, 618 F. Supp. 767, 772–73 (W.D. La. Aug 22, 1985) ("[A] master service agreement does not itself bind the parties to perform any services. It merely sets forth their agreement to abide by certain terms should they contract to perform services in the future.").
[15] *Id* at 22; *see also Matte v. Zapata Offshore Co. v. Timco, Inc.*, 784 F.2d 628, 630 (5th Cir. 1986); *see also Page v. Gulf Oil Corp.*, 775 F.2d 1311 (5th Cir. 1985) (finding the master service agreement "merely sets out the rules of the game in the event that the parties decide to play ball"); *Moser v. Aminoil, U.S.A., Inc.*, 618 F. Supp. 774, 779 (W.D. La. Aug. 22, 1985). "At best, the master service agreement creates a contingent and speculative obligation that is subject to a purely potestative suspensive condition on the part of the obligee, which obligation does not become valid and enforceable until the condition is fulfilled." *Id.*

[r]equired by written contract" requirement in the Additional Insured Endorsement section of the Masse Policies was satisfied, the Court granted summary judgment in favor of State National.[16] Notably, Lexington did not raise this issue in its first motion for summary judgment with respect to the 2008-2009 Lexington Policy.[17]

On August 9, 2017, Allied sought reconsideration of the Court's order granting State National's motions for summary judgment.[18] In an effort to convince the Court to reconsider its granting of State National's motions, Allied attached checks from Allied to Masse and Superior, which Allied contended commemorate payment for work performed under the 1995, 2006, and 2007 Master Work Contracts.[19] The Court denied the motion to reconsider, however, noting that the checks were not attached to Allied's opposition to State National's motions for summary judgment, and Allied did not even attempt to argue that the checks were "newly discovered" and previously unavailable, such that the Court could consider them on the motion for reconsideration.[20] The Court denied Allied's motion for reconsideration, but left open the issue of whether evidence of an *oral* work order could transform a "blanket" Master Service Agreement into a complete and enforceable contract, thereby satisfying the Masse Policies' "written contract" requirement under the "Additional Insured Endorsement."[21]

On July 21, 2017, the Court ordered that:

> any party may file a motion for summary judgment with respect to Allied's status as an additional insured, but only if the insurance policy at issue contains an additional insured endorsement requiring the existence of a complete, enforceable written contract between the named insured and the

---

[16] R. Doc. 510 at 27.
[17] *See* R Doc. 444.
[18] R. Doc. 532.
[19] R. Doc. 532-4.
[20] R. Doc. 537 at 5; *see Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).
[21] R. Doc. 537 at 6–9 & nn.29, 35. Because Allied offered evidence of oral work orders only belatedly, the Court did not consider the evidence in its ruling. *Id.*

additional insured and there exists no evidence of purchase orders or other agreements necessary to make an enforceable contract.[22]

Pursuant to the Court's July 21, 2017 order, Lexington now seeks summary judgment on the issue of whether Allied can sustain its burden of proof in establishing insured status under the 2008-2009 Lexington Policy.

## LAW AND ANALYSIS

The 2008-2009 Lexington Policy, just as the Masse Policies at issue in State National's motion for summary judgment, requires additional insureds be established "by written contract."[23] Lexington now argues Allied cannot sustain its burden of proof in establishing additional insured status, pointing to the 2008-2009 Lexington Policy's "Additional Insured Endorsement," which requires a claimant to show, among other things, that Masse was obligated to include the claimant as an additional insured for the work performed by Masse pursuant to a "written contract."[24]

Allied points to the 1995 and 2007 Master Work Contracts between Masse and Allied as proof of its insured status. The Master Work Contracts provide Allied and Masse "desire to make an agreement whereby [Masse] would furnish labor, services, equipment, and/or materials . . . to [Allied's] customers."[25] The Master Work Contracts further provide "If at any time during the term hereof, [Allied] desires work to be performed for a particular job or project, [Allied] shall advise [Masse] of the particulars of the work and the location thereof . . . Nothing herein shall require that [Allied] use [Masse's] services, and [Masse] shall not be required to work for [Allied] hereunder."[26]

---

[22] R. Doc. 515.
[23] *Compare* R. Doc. 242-4 at 25; R. Doc. 242-6 at 15 *with* R. Doc. 529-4 at 36.
[24] R. Doc. 510 at 25–27.
[25] R. Docs. 533-4, 533-5.
[26] *Id.*

As the Court previously explained, the 1995 and 2007 Master Work Contracts—standing alone—are not binding contracts between Masse and Allied.[27] Rather, the Master Work Contracts at issue in this case are "blanket" agreements, as each contemplates future work orders.[28] As a result, to demonstrate the 1995 and 2007 Master Work Contracts constitute complete and enforceable written agreements, Allied must present evidence of purchase orders or other agreements to establish that work was actually completed during the 2008-2009 Lexington Policy period.[29]

Unlike its opposition to State National's motion for summary judgment, Allied now offers: (1) checks issued by Allied to Masse for work done during the 2008-2009 policy period;[30] (2) testimony from Gavin Callias, who states "[t]he work performed and services provided to Allied by Masse were pursuant to the Master Work Contracts entered into between Allied and Masse on June 30, 1995 . . . and on August 10, 2007";[31] and (3) deposition testimony from Antony Boudreaux, who, in response to the question of whether "the first document that is generated in terms of the work Masse[] performs

---

[27] R. Doc. 510 at 21 (quoting *Livings v. Service Truck Lines of Tex., Inc.*, 467 So. 2d 595, 600 (La. Ct. App. 3 Cir. 4/10/1985)); *see also Hebert v. Kerr-McGee Corp.*, 618 F. Supp. 767, 772–73 (W.D. La. Aug 22, 1985) ("[A] master service agreement does not itself bind the parties to perform any services. It merely sets forth their agreement to abide by certain terms should they contract to perform services in the future.").
[28] "[I]t is common practice for companies contracting for work in the oilfield to enter into contracts in two stages. Typically, they first sign a 'blanket contract' that may remain in place for an extended period of time. Later, they issue work orders for the performance of specific work, which usually incorporates the terms of the blanket contract . . . . [W]here a contract consists of two parts, a blanket 'contract followed by a later work order, the two must be interpreted together.'" *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 804 n.6 (5th Cir. 2009); *see also Domingue v. Ocean Drilling & Expl. Co.*, 923 F.2d 393, 396 (5th Cir. 1991) (stating that a court "must read [a] blanket agreement modified by the later work order together as the actual contract"); *Moser*, 618 F. Supp. at 779 (stating that a "master service agreement creates a contingent and speculative obligation that is subject to a purely potestative suspensive condition on the part of the obligee, which obligation does not become valid and enforceable until the condition is fulfilled.").
[29] R. Doc. 537 at 5.
[30] R. Doc. 533-2 at 3–32.
[31] R. Doc. 533-2 at 1–2.

under the Master Service Agreement would be the invoice once the work is performed," answered "That's correct."[32]

Having provided the evidence described above, Allied stands in a different posture in this case than it did against State National. Thus, the Court now addresses the issue left open in its previous ruling on Allied's motion for reconsideration: whether the work orders or other agreements necessary to transform the 1995 and 2007 Master Service Agreements into complete, binding "written" agreements may be made orally.[33]

As this action requires the interpretation of insurance policies issued in Louisiana, Louisiana's substantive law controls.[34] Under Louisiana law, an insurance policy "is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[35] The Louisiana Civil Code states "Interpretation of a contract is the determination of the common intent of the parties,"[36] and an insurance contract "shall be construed according to the entirety of its terms and conditions."[37]

Whether contract language is clear or ambiguous is a question of law.[38] The words of a contract "are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning."[39] When a contract's language is "clear and explicit and lead[s] to no absurd consequences, no further interpretation may be made in search of the parties' intent."[40] If the wording of the policy

---

[32] R. Doc. 533-6 at 2.
[33] *See Domingue*, 923 F.2d at 396 (stating that a court "must read [a] blanket agreement modified by the later work order together as the actual contract").
[34] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).
[35] *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).
[36] La. Civ. Code art. 2045.
[37] La. Rev. Stats. § 22:654.
[38] *Cadwallader*, 848 So.2d at 580.
[39] *Id.* (citing La. Civ. Code Ann. art. 2047).
[40] La. Civ. Code art. 2046.

7

is unambiguous, then the contract "must be enforced as written."[41] A contract is ambiguous, however, "when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction."[42]

Looking to the terms of the 1995 and 2007 Master Service Agreements, whether oral work orders are sufficient to create a valid and enforceable contract is ambiguous. The Master Work Contracts contain the following language:

> If at any time during the term hereof, [Allied] desires work to be performed for a particular job or project, Shipyard *shall advise* Contractor of the particulars of the work and the location thereof. Contractor agrees to perform the work covered thereby diligently, efficiently and in accordance with all of the provisions and specifications of this Contract. . . .
>
> [Allied] shall pay Contractor for the work performed at the rate and for the consideration provided for in [Allied's] purchase order *or through other agreement*. Payment of invoices will be made in accordance with the established [Allied] procedures following acceptance by [Allied] of work done by Contractor as being in full compliance with all terms, conditions and requirements of the Contract and the specific job or project undertaken.[43]

The contract does not state how Allied "shall advise" of work particulars and whether these "other agreements" or purchase orders may be oral or must be written.[44] Indeed, Allied offers evidence that the future work done pursuant to these Master Work Contracts was *always* initiated by oral instruction.[45] Because the 1995 and 2007 Master

---

[41] *Cadwallader*, 848 So.2d at 580.
[42] *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996).
[43] R. Docs. 533-4 (1995 Master Work Contract between Allied and Masse), 533-5 (2007 Master Work Contract between Allied and Masse).
[44] Indeed, within the Master Work Contracts, the parties frequently specified that certain things must be done "in writing," *see, e.g.*, R. Doc. 529-3 at ¶ IX, an instruction conspicuously absent from the contract's provisions regarding future work.
[45] R. Doc. 533-6 at 2.

8

Work Contracts are "susceptible to more than one reasonable meaning under the circumstances,"[46] the Court finds the contracts are ambiguous as to this issue.

When a contract is ambiguous, "the agreement shall be construed according to the intent of the parties."[47] "Intent is an issue of *fact* which is to be inferred from all of the surrounding circumstances."[48] "Consequently, when a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and judgment on the pleadings or summary judgment is improper."[49] Because in this case Allied has offered evidence to create a genuine issue of material fact as to whether oral work orders transformed the 1995 and 2007 Master Work Agreements into complete and enforceable contracts, the Court must deny Lexington's motion for summary judgment.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that Lexington Insurance Company's motion for summary judgment against Allied Shipyard, Inc. is **DENIED**.[50]

**New Orleans, Louisiana, this 21st day of February, 2018.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[46] *Lloyds of London*, 101 F.3d at 429.
[47] *Kuswa & Assocs., Inc. v. Thibaut Constr. Co.*, 463 So. 2d 1264, 1266 (La. 1985).
[48] *Id.* (emphasis added); *see also Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996) ("[A]mbiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties.").
[49] *Guidry v. Am. Pub. Life. Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007); s*ee also Investors Syndicate of Am., Inc. v. City of Indian Rocks Beach*, 434 F.2d 871, 877–78 (5th Cir. 1970) (finding that dismissal on the pleadings was error when the contract at issue was ambiguous); *Gertler v. City of New Orleans*, 881 So. 2d 792, 796 (La. Ct. App. 2004) ("If the language of [a contract] is ambiguous or susceptible to multiple interpretations, the intent of the parties must be determined and summary judgment is inappropriate."); *Sanders v. Ashland Oil, Inc.*, 696 So.2d 1031, 1035 (La. Ct. App. 1997) (stating that granting summary judgment on an ambiguous contract may be appropriate only in the very rare circumstance where "there is no issue of material fact concerning the pertinent intent" of the parties).
[50] R. Doc. 519 *as supplemented by* R. Doc. 529.